QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Kyle Batter (Bar No. 301803)
kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

David M. Elihu (Bar No. 303043)
davidelihu@quinnemanuel.com
Sarah Cork (Bar No. 330569)
sarahcork@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

Attorneys for Plaintiff Nektar Therapeutics

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>Plaintiff,<br><br>vs.<br><br>ELI LILLY & CO.,<br><br>Defendant. | CASE NO. 3:23-CV-03943-JD<br><br>**NEKTAR THERAPEUTICS' ANSWER TO ELI LILLY AND COMPANY'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES** |

Plaintiff Nektar Therapeutics ("Nektar") by and through its undersigned counsel, hereby submits its Answer to Defendant Eli Lilly and Company's ("Lilly") Counterclaims (ECF No. 54, "Counterclaim") and Affirmative Defenses. Nektar denies any and all allegations of wrongdoing and denies that Lilly is entitled to any relief. To the extent that the Counterclaims' headings or subheadings contain factual allegations, they are denied. Nektar further answers as follows:

**INTRODUCTION**

1. Nektar admits that it is a biopharmaceutical company and that REZPEG is an asset to Nektar. Nektar admits that, in or about 2023, Nektar learned that a Phase 2 trial of REZPEG in lupus patients did not meet its primary endpoint, and further states that this Phase 2 trial of REZPEG in lupus patients met a secondary endpoint (BICLA). Nektar denies the remaining allegations in Paragraph 1.

2. Nektar admits that, on or about July 23, 2017, Nektar entered into a license agreement with Lilly ("License Agreement"). Nektar admits that REZPEG has promise as a treatment for persons who have certain immunological conditions, and that Lilly recognized this promise in entering the License Agreement. Nektar admits that a Phase 2 trial of REZPEG in lupus patients was controlled and conducted by Lilly and further states that this Phase 2 trial met a secondary endpoint (BICLA). Nektar admits that, as with many if not most injectable drugs, some persons receiving REZPEG have experienced side effects, including ISRs. Nektar further states that many biologic drugs for autoimmune conditions achieve billions of dollars in annual sales despite some persons experiencing side effects, including ISRs, while being treated with such drugs, including drugs developed by Lilly. Paragraph 2 characterizes the contents of License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar admits that, in or about 2023, Nektar learned that a Phase 2 trial of REZPEG in lupus patients did not meet its primary endpoint. Nektar denies the remaining allegations in Paragraph 2.

3. Nektar admits that Lilly informed Nektar on or about February 17, 2023, that Lilly decided to discontinue REZPEG's development for treating lupus. Nektar admits that certain SEC filings state that Nektar's success is "highly dependent" on the success of drug candidates, including REZPEG. Nektar denies the remaining allegations in Paragraph 3.

4. Nektar admits that Nektar held an investor call on or about the same day that Nektar disclosed the results of the REZPEG Phase 2 clinical trial for lupus. Nektar denies the remaining allegations in Paragraph 4.

5. Nektar denies the allegations in Paragraph 5.

6. Nektar admits that Lilly terminated the License Agreement. Paragraph 6 characterizes the contents of License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar lacks knowledge or information sufficient to form a belief concerning the truth the allegations in Paragraph 6 about Lilly's research and development expenses and denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 6.

7. Nektar admits that Nektar held an investor call and issued a press release in August 2023. Nektar admits that, in an earnings call on or about August 8, 2023, Nektar stated that efficacy data generated by Lilly was incorrectly calculated. Nektar admits that the press release states that "Nektar discovered the EASI-related and Psoriasis Area and Severity Index (PASI)-related clinical efficacy endpoints were incorrectly calculated by Lilly after all rights to REZPEG were returned to Nektar and the raw data files from the REZPEG clinical studies were transferred to Nektar." Nektar denies the remaining allegations in Paragraph 7.

8. Nektar admits that the efficacy data from two Phase 1 clinical trials of REZPEG was incorrectly calculated. Nektar further states that under the License Agreement, Lilly is liable for such miscalculations whether it caused the miscalculations or its contract research organization ("CRO") did. Nektar further states that Lilly either identified such miscalculations and failed to correct them or failed to identify such miscalculations. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 8 regarding a CRO "recommend[ation]" and denies those allegations on that basis. Nektar further states that Nektar never used the CRO Pharmaceutical Research Associates, Inc. ("PRA") to conduct biostatistical analysis, statistical programming, or data management. Nektar denies the remaining allegations in Paragraph 8.

9. Nektar admits that Nektar believes Lilly failed to carry out basic scientific tasks in multiple clinical trials of REZPEG. Nektar denies the remaining allegations in Paragraph 9.

10. Paragraph 10 characterizes the contents of License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies the remaining allegations in Paragraph 10.

11. Paragraph 11 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 11.

**PARTIES**

12. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 12 and denies those allegations on that basis.

13. Nektar admits the allegations in Paragraph 13.

**JURISDICTION AND VENUE**

14. Paragraph 14 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar admits that the Federal District Court for the Northern District of California has subject matter and personal jurisdiction over Nektar. Nektar denies any allegation that it engaged in improper conduct or that the claims asserted against it have merit.

15. Paragraph 15 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar admits that venue is proper in the Federal District Court for the Northern District of California. Nektar denies any allegation that it engaged in improper conduct or that the claims asserted against it have merit.

**STATEMENT OF FACTS**

**A. Lilly Acquires the Right to Develop, Commercialize, and Sell REZPEG.**

16. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 16 and denies those allegations on that basis.

17. Nektar admits that not all drug candidates obtain approval from the U.S. Food and Drug Administration. Nektar lacks knowledge or information sufficient to form a belief concerning

the truth of the allegations in Paragraph 17 about how "Lilly devotes" its resources and denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 17.

18. Nektar admits that it is a smaller biotechnology company than Lilly and that Lilly acquired a license to develop and commercialize one of Nektar's drug candidates. Nektar further states that Nektar incurred significant costs associated with REZPEG development, including during the partnership with Lilly, and assumed associated financial risks. To the extent Paragraph 18 characterizes the contents of the License Agreement, the License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar otherwise lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 18 and denies the remaining allegations on that basis.

19. Nektar admits that Nektar and Lilly entered into the License Agreement on or about July 2017 which, among other things, granted Lilly certain rights regarding REZPEG, and that REZPEG is a novel immunological therapy. To the extent Paragraph 19 characterizes the contents of the License Agreement, the License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies the remaining allegations in Paragraph 19.

20. Nektar admits that the first clinical trial for REZPEG began on or about March 2017. Nektar admits that REZPEG is a novel first-in-class regulatory T (Treg) cell stimulator and that REZPEG's mechanism of action may provide patients with an innovative option to treat certain immunological conditions, and that REZPEG has promise as a treatment for such conditions. Nektar admits that REZPEG works by targeting the IL-2 receptor complex and preferentially stimulating the proliferation of regulatory T cells without stimulating cytotoxic CD8+ T and CD4+ T cells, which drive autoimmune disease. Nektar admits that Lilly paid Nektar $150 million pursuant to the License Agreement and further states that, to Nektar's knowledge, Lilly has paid far more to acquire rights to other drugs, namely lebrikizumab. To the extent Paragraph 20 characterizes the contents of the License Agreement, the License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 20 about Lilly's interest or motivation for

agreeing to license REZPEG and denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 20.

**B. The License Agreement.**

21. Paragraph 21 excerpts and characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 21.

22. Paragraph 22 characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 22.

23. Paragraph 23 excerpts and characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar further states that Nektar did not have control over Lilly's activities concerning REZPEG development, and that Nektar's visibility into Lilly's activities concerning REZPEG development were limited by Lilly's willingness to share its plans and findings with Nektar. Nektar denies any remaining allegations in Paragraph 23.

24. Paragraph 24 characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar states that the Joint Steering Committee's dispute resolution process granted Lilly final authority over REZPEG clinical trials for which Lilly had responsibility, so invocation of such process by Nektar was futile and therefore not elected. Nektar denies the remaining allegations in Paragraph 24.

25. Nektar admits that Lilly was responsible for certain activities under the License Agreement. Paragraph 25 characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations in Paragraph 25 and denies those allegations on that basis.

26. Paragraph 26 excerpts and characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 26.

27. Paragraph 27 excerpts and characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 27.

28. Paragraph 28 characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 28.

29. Paragraph 29 excerpts and characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 29.

### C. The Parties Make Lupus the "Lead" Indication and Begin Phase 1 Trials on Three Indications.

30. Nektar admits that the License Agreement was executed in 2017. Nektar admits that lupus, psoriasis, and atopic dermatitis were evaluated as indications for REZPEG. Nektar denies the remaining allegations in Paragraph 30.

31. Nektar admits that obtaining regulatory approval for a drug candidate in the United States generally involves three phases of clinical trials. Nektar admits that, on October 4, 2017, lupus was identified as an indication for REZPEG. Nektar denies the remaining allegations in Paragraph 31.

32. Nektar admits that 21 CFR § 312.21(a) states Phase 1 clinical trials "include[] the initial introduction of an investigational new drug into humans" and are "designed to determine the metabolism and pharmacologic actions of the drug in humans, the side effects associated with increasing doses, and, if possible, to gain early evidence of effectiveness." Nektar denies the remaining allegations in Paragraph 32.

33. Nektar admits that the excerpted quoted language is present in 21 CFR § 312.21(b) and further states that the number of subjects enrolled in a Phase 2 clinical study may depend on various considerations. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations in Paragraph 33 regarding Phase 2 "trials" unrelated to REZPEG and their "typical[]" enrollment, and denies those allegations on that basis.

34. Nektar admits that 21 CFR § 312.21(c) states Phase 3 clinical trials are "performed after preliminary evidence suggesting effectiveness of the drug has been obtained, and are intended to gather the additional information about effectiveness and safety that is needed to evaluate the overall benefit-risk relationship of the drug and to provide an adequate basis for physician labeling." Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations in Paragraph 34, and therefore denies those allegations on that basis.

35. Nektar admits that endpoints for some clinical trials include both safety and efficacy criteria. Nektar further states that Lilly's approval—not Nektar's—was required for the selection of endpoints for REZPEG clinical trials for which Lilly had responsibility. Nektar lacks knowledge or information sufficient to form a belief concerning activities of "pharmaceutical manufacturers" in Paragraph 35, and therefore denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 35.

36. Nektar admits that it has hired companies, including PRA, to work as third-party contract research organizations ("CRO") on a clinical trial of REZPEG, and further states that Nektar never used PRA to conduct biostatistical analysis, statistical programming, or data management. Nektar further states that Lilly controlled the final selection of CROs for REZPEG clinical trials for which Lilly had responsibility. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 36 about "common practices" and ICON plc's acquisition of PRA and denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 36.

37. Nektar admits that PRA was engaged as a CRO for assisting with the management of administering drug in a Phase 1 clinical trial of REZPEG in lupus, and that the trial began on or about April 2018. Nektar admits that PRA was engaged as a CRO for the Phase 1 atopic dermatitis and psoriasis trials of REZPEG. Nektar admits that the Phase 1 study for REZPEG in atopic dermatitis began on or about September 2019, and that the Phase 1 study for REZPEG in psoriasis began on or about November 2019. Nektar admits that those Phase 1 trials evaluated REZPEG's safety compared to a placebo. Nektar denies the remaining allegations in Paragraph 37.

**D. Injection Site Reactions Severely Dampen REZPEG's Commercial Upside.**

38. Nektar admits that ISRs are reactions associated with treatments administered via injection of therapeutics including, but not limited to, REZPEG. Nektar further states that persons receiving placebo injection may also experience ISRs. Nektar admits that, for some persons, ISRs (whether caused by administration of a therapeutic or placebo by injection) may include pain, swelling, rash, bleeding, and/or redness at the site of an injection. Nektar denies the remaining allegations in Paragraph 38.

39. Nektar admits that ISRs in some subjects have been observed in clinical trials of REZPEG, and that some subjects who received REZPEG and some subjects who received placebo reported experiencing redness, pain, and itching. Nektar denies the remaining allegations in Paragraph 39.

40. Nektar admits that ISRs were reported in Phase 3 clinical trials of Dupixent® in atopic dermatitis. Nektar admits that ISRs in some persons have been observed in clinical trials of REZPEG. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 40 about "other injectable therapies," and denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 40.

41. Nektar admits that Dupixent® has been approved by the FDA and may result in different side effects than treatment with REZPEG. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 41 about healthcare providers and denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 41.

42. Nektar admits that, on or about April 2, 2021, a PowerPoint was presented to the Joint Product Team. Nektar further states that the PowerPoint speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar admits that ten Nektar employees attended a JPT meeting on April 2, 2021, including Jonathan Zalevsky and Brian Kotzin. Nektar denies the remaining allegations in Paragraph 42.

43. Nektar admits that, on or about April 2, 2021, the Joint Product Team endorsed the design and cost of a PK/ISR Study for REZPEG. Nektar admits that on April 2, 2021, the Joint

Steering Committee unanimously approved a "PK/ISR study design for REZPEG and a maximum budget of $5 million. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 43 about Lilly's expenditures and denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 43.

44. Nektar admits that, on or about November 19, 2021, a PowerPoint titled was presented to the Joint Product Team that includes a chart stating that all subjects in a trial in which ISRs were solicited reported experiencing skin redness and some reported experiencing itching and/or pain. Nektar further states that the PowerPoint speaks for itself. Nektar further states that ISRs were solicited in that trial and not scored as adverse events. Nektar admits that Nektar employees, including Jonathan Zalevsky, attended the meeting. Nektar denies the remaining allegations in Paragraph 44.

45. Nektar admits that at a Joint Product Team meeting held on or about September 8, 2021, Nektar was informed that Lilly would conduct market research and did not object at that meeting to Lilly conducting market research. Nektar further states that Nektar was unaware at that time that Lilly intended to conduct marketing research focused on ISRs associated with REZPEG use. Nektar denies the remaining allegations in Paragraph 45.

46. Nektar admits that Dupixent® was approved by the FDA and marketed in the U.S. in or about the fall of 2021. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations in Paragraph 46, and denies those allegations on that basis.

47. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 47 about the Link Group's methodology, and denies those allegations on that basis. Nektar denies the remaining allegations in Paragraph 47.

48. Nektar lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 48 about the Link Group's methodology and denies those allegations on that basis. Nektar further states that, to the extent Lilly's market research included information regarding REZPEG efficacy against atopic dermatitis and psoriasis, that information was miscalculated. Nektar denies the allegations in Paragraph 48.

49. Nektar denies the allegations in Paragraph 49.

50. Nektar denies the allegations in Paragraph 50.

51. Nektar admits that Phase 1 clinical trials for REZPEG in lupus, psoriasis, and atopic dermatitis were completed. Nektar admits that Phase 1 trials for REZPEG met their endpoints in lupus and atopic dermatitis. Nektar admits that Lilly agreed to proceed with a Phase 2 trial for REZPEG in lupus and designed a Phase 2 trial for REZPEG in atopic dermatitis. Nektar denies the remaining allegations in Paragraph 51.

**E. REZPEG's Lupus Phase 2 Clinical Trial Misses Endpoints.**

52. Nektar admits that a Phase 2 lupus trial for REZPEG began on or about August 2020 and completed on or about February 2023. Nektar admits that, in or about 2019, SLEDAI-2K was used as a metric to measure and stratify the severity of lupus. Nektar denies the remaining allegations in Paragraph 52.

53. Nektar admits that the primary endpoint was not met in the Phase 2 trial of REZPEG in lupus. Nektar denies the remaining allegations in Paragraph 53.

54. Nektar admits that on or about February 17, 2023, Lilly informed Nektar that it would no longer pursue lupus as an indication for REZPEG. Nektar denies the remaining allegations in Paragraph 54.

55. Nektar admits that an *ad hoc* Joint Steering Committee meeting was held on or about February 20, 2023, and that the Phase 2 lupus trial results were discussed at that meeting. Nektar denies the remaining allegations in Paragraph 55.

**F. Nektar Panics Amid Fallout from REZPEG's Phase 2 Failure.**

56. Nektar admits that, in or about 2022, NKTR-214 did not meet efficacy thresholds in two clinical trials. Nektar admits that, in or about 2018, Nektar and Bristol Myers Squibb entered into a global strategic development and commercialization collaboration for NKTR-214. Nektar denies the remaining allegations in paragraph 56.

57. Nektar admits that, in a SEC filing dated on or about November 4, 2022, Nektar stated that Nektar is "highly dependent on the success of rezpegaldesleukin (previously referred to as NKTR-358) and NKTR-255 and our business will be significantly harmed if either

rezpegaldesleukin or NKTR-255 do not continue to advance in clinical studies." Nektar admits that, in the same filing, Nektar referred to REZPEG as Nektar's lead drug candidate. Nektar denies any remaining allegations in Paragraph 57.

58. Nektar denies the allegations in Paragraph 58.

59. Nektar denies the allegations in Paragraph 59.

60. Nektar admits that, on or about February 21, 2023, Nektar sent Lilly a slide deck, draft press release, and draft Q&A script. Nektar denies the remaining allegations in Paragraph 60.

61. Nektar admits that, on or about February 23, 2023, Nektar and Lilly communicated about a slide deck, press release, and Q&A. Nektar further states that those communications speak for themselves, and Nektar denies any allegations inconsistent with them. Nektar denies the remaining allegations in Paragraph 61.

62. Nektar states that the Joint Steering Committee's dispute resolution process granted Lilly final authority over REZPEG clinical trials for which Lilly had responsibility, so invocation of such process by Nektar was futile and therefore not elected. Nektar denies the remaining allegations in Paragraph 62.

63. Nektar admits that, on or about February 23, 2023, Nektar issued a press release and presented a slide deck during an investor call. To the extent Paragraph 63 summarizes the press release and slide deck, those documents speak for themselves, and Nektar denies any allegations inconsistent with them. Nektar denies the remaining allegations in Paragraph 63.

64. Nektar denies the allegations in Paragraph 64.

65. Paragraph 65 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 65.

66. Nektar admits that, on or about February 2021, a stockholder derivative complaint was filed against Nektar and certain current and former Nektar personnel, and that the lawsuit was later dismissed. Paragraph 66 characterizes allegations in the complaint, which is publicly available and speaks for itself. Nektar denies any characterizations of the allegations in the complaint that

are inconsistent with what was actually alleged and denies that the complaint had merit. Nektar denies any remaining allegations in Paragraph 66

67. Nektar admits that, on or about February 2021, a stockholder derivative complaint was filed against Nektar and certain current and former Nektar personnel, and that the lawsuit was later dismissed. Paragraph 67 characterizes allegations in the complaint, which is publicly available and speaks for itself. Nektar denies any characterizations of the allegations in the complaint that are inconsistent with what was actually alleged and denies that the complaint had merit. Nektar denies any remaining allegations in Paragraph 67.

**G. Nektar Pushes Lilly to Terminate the Agreement and Continues Its PR Campaign.**

68. Nektar admits that, in an email dated on or about April 1, 2023 to Lilly's Dan Skovronsky, Nektar's Howard Robin requested that Lilly return REZPEG to Nektar. Paragraph 68 characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 68.

69. Nektar admits that, on or about April 4, 2023, Dan Skovronsky told Howard Robin that he supported negotiating a mutual termination of the License Agreement. Nektar denies the remaining allegations in Paragraph 69.

70. Nektar admits that, on or about April 2023, Nektar announced that it reduced the size of its San Francisco-based workforce by around 60%. Nektar denies the remaining allegations in Paragraph 70.

71. Nektar admits that Lebrikizumab was initially developed by Dermira, Inc., which Lilly acquired on or about January 2020. Paragraph 71 characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. The remaining allegations in Paragraph 71 characterize Lilly's claims or state legal conclusions, and therefore do not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the remaining allegations in Paragraph 71.

72. Nektar denies the allegations in Paragraph 72.

73. Paragraph 73 excerpts and characterizes the contents of the License Agreement. The Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 73.

74. Nektar admits that Lilly completed certain Phase 1 and Phase 2 trials for REZPEG. Nektar admits that Nektar requested that Lilly return REZPEG to Nektar. Nektar denies the remaining allegations in Paragraph 74.

75. Nektar admits that, on or about April 17, 2023, Lilly objected to Nektar's proposed press release. Nektar further states that Lilly's communication with Nektar speaks for itself. Nektar denies any remaining allegations in Paragraph 75.

76. Nektar admits that, on or about April 17, 2023, notwithstanding inaccuracies in Lilly's email objecting to Nektar's proposed press release, Nektar sent revisions to Nektar's proposed press release to Lilly. Nektar admits that Nektar issued a press release on April 17, 2023 stating that REZPEG had generated strong data in clinical trials and was set to move quickly into a Phase 2b study. The remaining allegations in Paragraph 76 characterize Lilly's claims or state legal conclusions, and therefore do not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the remaining allegations in Paragraph 76.

77. Nektar admits that Lilly communicated with Nektar on or about April 19, 2023 regarding Nektar's press release. Nektar further states that Lilly's communication with Nektar speaks for itself. Nektar denies any remaining allegations in Paragraph 77.

**H. Nektar's Campaign Escalates to Falsely Accusing Lilly of Clinical Trial Errors.**

78. Nektar denies the allegations in Paragraph 78.

79. Nektar admits that Nektar issued a press release on or about August 7, 2023 that contained promising new and corrected data from REZPEG's Phase 1 psoriasis and atopic dermatitis trials. Nektar admits that Nektar had identified and discussed the erroneous calculations with Lilly before issuing the press release. Nektar denies the remaining allegations in Paragraph 79.

80. Nektar admits that its press release on or about August 7, 2023, which was issued publicly, includes the phrases "efficacy data previously generated by Eli Lilly & Company for rezpegaldesleukin (REZPEG) . . . were incorrectly calculated by Lilly," "[t]he erroneous data is from two Phase 1b studies for REZPEG that were conducted by Lilly," and "Nektar discovered the EASI-related and Psoriasis Area and Severity Index (PASI)-related clinical efficacy endpoints were incorrectly calculated by Lilly after all rights to REZPEG were returned to Nektar and the raw data files from the REZPEG clinical studies were transferred to Nektar." Nektar denies the remaining allegations in Paragraph 80.

81. Nektar admits that, in an earnings call on or about August 8, 2023, Nektar stated that efficacy data generated by Lilly was incorrectly calculated. Nektar denies the remaining allegations in Paragraph 81.

82. Nektar admits that protocols for REZPEG's Phase 1 atopic dermatitis and psoriasis trials describe the Eczema Area and Severity Index and the Psoriasis Area and Severity Index. Nektar denies the remaining allegations in Paragraph 82.

83. Nektar admits that Lilly conducted a Phase 2 trial of REZPEG in lupus and designed a Phase 2 trial of REZPEG in atopic dermatitis. Nektar denies the remaining allegations in Paragraph 83.

84. Paragraph 84 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 84.

85. Nektar denies the allegations in Paragraph 85.

**FIRST CAUSE OF ACTION**

**(Breach of License Agreement)**

86. Nektar repeats and incorporates by reference each and every response set forth in this Answer as if fully set forth herein.

87. Nektar admits that Nektar was a party to the License Agreement.

88. Nektar denies the allegations in Paragraph 88.

89. Paragraph 89 excerpts and characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 89.

90. Paragraph 90 excerpts and characterizes the contents of the License Agreement. The License Agreement speaks for itself, and Nektar denies any allegations inconsistent with it. Nektar denies any remaining allegations in Paragraph 90.

91. Paragraph 91 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 91, including to the extent that additional or separate allegations are contained within the three roman numeral subparagraphs.

92. Paragraph 92 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 92, including to the extent that additional or separate allegations are contained within the three roman numeral subparagraphs.

93. Paragraph 93 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 93.

**SECOND CAUSE OF ACTION**

**(Defamation)**

94. Nektar repeats and incorporates by reference each and every response set forth in this Answer as if fully set forth herein.

95. Paragraph 95 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 95.

96. Paragraph 96 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims

have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 96, including to the extent that additional or separate allegations are contained within the three roman numeral subparagraphs.

97. Paragraph 97 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar admits that in an August 7, 2023 press release, Nektar stated publicly that certain REZPEG efficacy data had been incorrectly calculated by Lilly. Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in this Paragraph. Nektar denies the remaining allegations in Paragraph 97.

98. Paragraph 98 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies the allegations in Paragraph 98.

99. Paragraph 99 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies the allegations in Paragraph 99.

100. Paragraph 100 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 100.

101. Paragraph 101 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 101.

102. Paragraph 102 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 102.

103. Paragraph 103 characterizes Lilly's claims or states legal conclusions, and therefore does not require a response. To the extent a response is required, Nektar denies that Lilly's claims have merit, denies that Lilly is entitled to any relief, and denies the allegations in Paragraph 103.

**PRAYER FOR RELIEF**

The Prayer for Relief characterizes Lilly's demand for judgment, and therefore does not require a response. To the extent a response is required, Nektar denies the allegations in the Prayer for Relief, and denies that any of the requested relief should be granted.

**JURY DEMAND**

Nektar admits that Lilly purports to demand a trial by jury. To the extent Lilly purports to state a conclusion of law, no response is required.

**GENERAL DENIAL AND DEFENSES**

Discovery and investigation may reveal that any one or more of the following defenses should be available to Nektar in this matter. Upon completion of discovery, and if the facts warrant, Nektar may withdraw any of these defenses as may be appropriate. Nektar has not knowingly or intentionally waived any applicable defenses, counterclaims, or other claims or defenses, and reserves the right to assert and rely on such other applicable defenses and claims as may become available or apparent during discovery in these proceedings. Further answering and by way of additional defense, Nektar states the following:

**FIRST AFFIRMATIVE DEFENSE**

The defamation claims in the Counterclaim are barred, in whole or in part, by the defense of truth and/or substantial truth, at least insofar as Lilly was responsible for miscalculating efficacy data and decided not to proceed with REZPEG development for lupus based on the results of the Phase 2 clinical trial for lupus.

**SECOND AFFIRMATIVE DEFENSE**

The defamation claims in the Counterclaim are barred, in whole or in part, by the common interest privilege, at least insofar as they are based on statements made in the context of an earnings call or presentation.

**THIRD AFFIRMATIVE DEFENSE**

The defamation claims in the Counterclaim are barred, in whole or in part, at least because the allegedly defamatory statements constitute non-actionable opinion.

**FOURTH AFFIRMATIVE DEFENSE**

The defamation claims in the Counterclaim are barred, in whole or in part, by First Amendment protection from liability, at least insofar as Nektar laid out the factual bases for its statements.

**FIFTH AFFIRMATIVE DEFENSE**

The defamation claims in the Counterclaim are barred, in whole or in part, by Lilly's consent, at least insofar as the License Agreement obliged Lilly to be liable for all acts and omissions of any subcontractor it hired and allowed Nektar to make public statements to comply with applicable governmental regulations.

**SIXTH AFFIRMATIVE DEFENSE**

The defamation and breach of contract claims in the Counterclaim are barred, in whole or in part, by Lilly's failure to mitigate any claimed harm, at least insofar as Lilly does not allege any specific loss related to its alleged reputational harm and so does not allege any remedial measures it took to mitigate loss.

**SEVENTH AFFIRMATIVE DEFENSE**

The breach of contract claims in the Counterclaim are barred, in whole or in part, by the equitable doctrine of unclean hands, at least insofar as Lilly also made "external communications" without seeking or receiving approval to do so from the Joint Steering Committee.

DATED: July 12, 2024

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *[/s/ Yury Kapgan]*
Yury Kapgan
Diane M. Doolittle
Kyle Batter
David Elihu
Sarah Cork

Attorneys for Plaintiff Nektar Therapeutics