# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Gabor Balassa, P.C.<br>To Call Writer Directly:<br>+1 312 862 2186<br>gabor.balassa@kirkland.com | 333 West Wolf Point Plaza<br>Chicago, IL 60654<br>United States<br><br>+1 312 862 2000<br><br>www.kirkland.com | Facsimile:<br>+1 312 862 2200 |

August 16, 2024

Honorable Judge James Donato
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

      Re:    *Nektar Therapeutics v. Eli Lilly and Company*, 23-cv-3943-JD (N.D. Cal.)

Dear Judge Donato,

      Just two months ago, Nektar asked this Court to add Lilly's CEO David Ricks and Lilly's SVP of Global Immunology Development Lotus Mallbris as custodians. At the June 20 hearing on that motion, however, Nektar abruptly abandoned its request because it had no support for its assertion that Lilly's senior executives were appropriate custodians.

      Nektar now makes the same request it made at the last hearing again. 8/8/2024 Nektar Letter Br. (ECF No. 87). All that has changed is that Nektar has searched Lilly's nearly 150,000 document, 1-million-page production for instances of these executives' names in an effort to justify its attempt to impose additional burden on Lilly. But Nektar only identifies ***three emails*** that Ricks sent or received during the six-year agreed time period, two of which ***predated Lilly's collaboration with Nektar***. Nektar also mischaracterizes other unremarkable documents in Lilly's production. As for Mallbris, Nektar continues to premise its request that she be a custodian based on her involvement in the development of a ***different drug*** (lebrikizumab). Nektar does not attempt to argue she has unique information on REZPEG, the compound issue in this case, that would not be covered by Lilly's existing document production or custodians. Nor could it, given Mallbris was responsible for Phase 3 clinical development for Lilly's drug candidates—which REZPEG never reached.

      Nektar's letter also leaves out the massive amount of discovery Lilly has already agreed to produce that provides everything Nektar needs to evaluate its claims. Lilly has collected hundreds of thousands of documents from the 15 employees with responsibility over REZPEG's development,[1] including multiple senior executives that it agreed to without objection. Nektar's request represents the latest in a litany of efforts to use the discovery process to unreasonably burden Lilly. Its request should be denied.

**I.    Nektar Provides No Justification for Adding Two Additional Custodians.**

      None of the documents Nektar cites show that either Ricks or Mallbris would have "unique, relevant documents that have not already been captured by the search of the identified custodians." *Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016). Instead, they confirm what Lilly has said all along—that Lilly's existing custodians were the Lilly employees directly involved

---

[1] This includes Lilly's Chief Scientific Officer/EVP; Head of Global Brand Dev., Immunology; seven VPs; two EDs; Director of Strategic Alliances; Distinguished Research Fellow; Sr. Research Advisor, Statistics; and Statistician.

and responsible for the development of REZPEG.

### A. David Ricks Is Not a Relevant Custodian.

As it has from day one of this litigation, Nektar strains to articulate Ricks's relevance to this case—beyond its transparent desire to rope him into the dispute as part of its maximalist discovery strategy. Nektar points to only *three* email chains that even include Ricks, and two of those predate the Nektar-Lilly collaboration. Otherwise, Nektar cites to emails that Ricks is not even on, further underscoring that he is not an appropriate custodian.

**Documents Sent or Received by Ricks.** Two documents merely reflect comments by Ricks about a scientific mechanism of action and REZPEG *before* the parties entered the collaboration. LLY00734705, LLY00914203. None of the allegations in Nektar's complaint have anything to do with the parties' pre-collaboration negotiations, and nothing in these emails relates in any way to the allegations in the complaint. Tellingly, Nektar does not argue otherwise.

The third document reflects Ricks's one-sentence feedback to the Chief Scientific Officer, Dan Skovronsky, and the Senior Vice President of Immunology, Ajay Nirula—both of whom had responsibility over REZPEG and are custodians—after a presentation on Lilly's entire immunological portfolio. LLY00935204. That Ricks, as CEO, received a periodic overview of Lilly's immunological pipeline is completely unremarkable. Nothing about this email suggests Ricks has unique discovery information. Regardless, as Lilly has said all along, any periodic "updates on REZPEG that Mr. Ricks received" will already be produced, because those updates "would have passed through . . . the other senior leaders" at Lilly with responsibility over REZPEG that are already custodians. 6/11/2024 Lilly Letter Br. (ECF No. 76), at 3. The document Nektar cites proves this point, as Ricks was responding to a presentation initiated by custodians Nirula and Skovronsky. LLY00935204.

**Documents That Do Not Include Ricks.** Nektar cites no other emails authored by or sent to Ricks. Instead, Nektar paradoxically argues that the existence of emails that Ricks is *not* included on somehow demonstrates Ricks possesses unique information in his email files. Under Nektar's view, if Ricks is on emails, he has relevant information, but if Ricks is not on emails, he also has relevant information that Nektar cannot get elsewhere. Nektar cannot have it both ways. Moreover, the suggestion that these documents somehow demonstrate Ricks's "intimate[]" involvement in REZPEG as Nektar claims, is contradicted by the documents themselves. Nektar Letter 2. Lilly addresses each of Nektar's citations below.

- **Authority to Approve Spending:** Nektar's assertion that Ricks had "'authority to spend on REZPEG clinical trials" says nothing about his involvement. Each Lilly employee has authority to approve up to a maximum amount of spending. When amounts exceed an SVP's or EVP's authority, the CEO must approve. Spending on certain REZPEG clinical trials exceeded these thresholds, so approval was routed to Ricks—like any other procurement agreement in that amount. Lilly has repeatedly explained that this reflects adherence to corporate governance. Nektar's insistence that they show Ricks's involvement in REZPEG lays bare the lack of real support for its request. LLY00730723, LLY00678921.

- **Pre-Collaboration, Non-Development Email:** Nektar cites a *pre-collaboration* email chain discussing edits to a REZPEG timeline. The email merely notes Ricks would review the timeline developed by other custodians with responsibility over REZPEG. Ricks is not on the email, and nothing suggests he provided input. LLY00914199.

- **Immunology Portfolio Updates:** These emails reflect other custodians drafting updates regarding Lilly's entire immunology portfolio for Ricks. The presentations are not REZPEG-specific at all. And the fact that REZPEG was included in the periodic updates Ricks receives about the company says nothing about his involvement in the development of REZPEG, which was managed by the existing custodians on these emails. LLY00934514; LLY00684475.

- **Off-Hand Comments:**  The suggestion that this email "confirms" Ricks is a "focal point" for REZPEG is disingenuous.  It has nothing to do with Ricks *at all*.  Two other custodians are doing an analysis of REZPEG and invoke Ricks's name to describe how they should scrutinize their analysis.  There is no suggestion that the presentation was prepared for Ricks.  LLY00694922.

Finally, Nektar asserts, without any support, that it is necessary to add Ricks as a custodian because Lilly has asserted a counterclaim for defamation.  Nektar Letter 3.  But Nektar cites to no caselaw or documents to support this contention and altogether fails to show how Ricks would be in possession of uniquely relevant information related to Lilly's counterclaims.

### B.  Lotus Mallbris Does Not Possess Unique, Noncumulative Documents.

Nektar also takes another run at Mallbris despite abandoning the request once already.  But it offers no additional support for her inclusion.  As with Ricks, Nektar cannot demonstrate that Mallbris would be in possession of unique documents, and the documents Nektar does cite simply confirm Mallbris was not involved in the relevant issues.  Nektar raises two perfunctory arguments.  Both fail.

*First*, Nektar primarily claims that Mallbris should be added as a custodian because she had "extensive involvement with a competitor Lilly drug, lebrikizumab."  Nektar Letter 3.  But Mallbris's work on lebrikizumab is beside the point, because Mallbris's decisions about lebrikizumab have nothing to do with Lilly's effort on REZPEG.  Nektar argues the "complaint specifically alleges that Lilly abandoned its contractual obligations to develop Rezpeg in favor of prioritizing lebrikizumab."  *Id*.  But documents showing that Lilly "abandoned . . . Rezpeg" (if they existed) would be in the files of people that worked on REZPEG.  *Id*.  Mallbris cannot "abandon" something she didn't develop.  And contrary to Nektar's assertion, Lilly has already agreed to search for documents related to decisions regarding REZPEG that were influenced (if at all) by lebrikizumab across the 15 custodians responsible for the development of REZPEG and using nearly 300 search terms to capture documents related to REZPEG and lebrikizumab.

*Second*, Nektar asserts Mallbris was included on four email chains about REZPEG, only two of which she authored.  Nektar argues these documents (out of the nearly 150,000 Lilly produced) "contradict Lilly's claim that Ms. Mallbris was not involved in Rezpeg development."  Nektar Letter 3.  Not so.  As Lilly has explained to Nektar, Mallbris has responsibility over Phase 3 and commercial development of Lilly's drug candidates, but REZPEG never reached Phase 3, so Mallbris never had responsibility over "Rezpeg development," and none of Nektar's allegations concern that development phase.  The employees who had responsibility over the Phase 1 and Phase 2 development decisions where Nektar alleges Lilly did not use reasonable efforts are already custodians.  That is why, as is the case with Ricks, to the extent that Mallbris was included on documents or communications, those materials would have passed through existing custodians.  The documents Nektar cites prove this point.  Nektar cannot make a credible case that Mallbris is in possession of relevant material they will not receive from other custodians.

\*\*\*

Nektar cannot credibly dispute that Lilly's 15 custodians—ranging from its Chief Scientific Officer through to its junior researchers and statisticians—cover every aspect of REZPEG development.  Indeed, Nektar has not identified one gap in Lilly's nearly 150,000-document production.  Nor has Nektar identified any documents credibly suggesting Ricks or Mallbris were involved in communications regarding REZPEG not already captured by Lilly's custodians.

There is also real burden from countenancing Nektar's request.  Even though Ricks and Mallbris were not involved in the relevant issues, making them custodians will require Lilly to collect their entire email inboxes and run agreed search terms over hundreds of thousands of additional documents.  That process would yield many false positives, requiring manual review of thousands of documents, eating up time and money that could be focused on advancing this litigation instead of unnecessary discovery disputes.  Lilly respectfully asks the Court to deny this request.

Respectfully submitted,
*Gabor Balassa, P.C.*
*Counsel for Defendant Eli Lilly and Company*