```
                                                                    1
 1            IN THE UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3     ----------------------------------------

 4     IN RE MATTER OF:

 5     NEKTAR THERAPEUTICS,

 6              Plaintiff,          Case No.

 7        vs.                       3:23-CV-03943-JD

 8     ELI LILLY & CO.,

 9              Defendant.

10     ----------------------------------------

11

12

13            **** CONFIDENTIAL ****

14       VIDEOTAPED DEPOSITION OF MARK WILSON

15                 (Held Remotely)

16

17              Monday, May 5, 2025

18                3:00 p.m. (PT)

19

20

21

22

23     Stenographically Reported By:

24     Joan Ferrara, RMR, FCRR

25     Job No. 2025-982547
```

Case 3:23-cv-03943-JD   Document 187-5   Filed 05/15/25   Page 2 of 14
NEKTAR THERAPEUTICS v
ELI LILLY & CO.                     Confidential                     Mark Wilson
                                                                     May 05, 2025

114

1        MR. BATTER: We got one.

2        MR. MOORMAN: That was easy.

3   BY MR. MOORMAN:

4        Q.   When did you retain Quinn

5   Emanuel, Mr. Wilson? Just the date or

6   approximate date.

7        A.   I believe it was late June of

8   2023.

9        Q.   And then, Mr. Wilson, fair to say

10  you never update the subject matters that

11  documents -- strike that.

12            You never updated these three

13  bullets on Exhibit 1462 to cover broader

14  subjects than what's identified in the

15  bullets, right?

16       A.   There's not been an update to

17  this document.

18       Q.   Did you ever -- if you go -- I

19  think in Exhibit A it identifies

20  custodians. Scroll down a little bit.

21            MR. BATTER: Ryan, before you ask

22       that question, given the time we've

23       been going, maybe when you finish with

24       this document, it would be appropriate

25       time for a break.

139

1    discuss at the August 7th, 2023 meeting?
2         A.    Other than the litigation, I
3    don't -- I mean -- yeah, we didn't need
4    anyone, and I didn't want, and the
5    instruction was not to talk about the
6    Nektar litigation in the Microsoft Teams.
7    We didn't want them to talk about the
8    Nektar-Lilly relationship in the Microsoft
9    Teams.  These were matters that were
10   really for the lawyers.
11        Q.    Were there any other subjects you
12   directed Nektar employees not to discuss
13   at the August 7, 2023 meeting, other than
14   what you just answered?
15        A.    I think -- and I mentioned, you
16   know, if there were legal questions,
17   right, that that should be something
18   directed to me.
19        Q.    Anything else?
20        A.    I don't -- I don't recall
21   anything else.
22        Q.    And after the August 7, 2023
23   meeting, including the instructions you
24   provided, you left it to the employees of
25   Nektar to comply with the directions you

Case 3:23-cv-03943-JD   Document 187-5   Filed 05/15/25   Page 4 of 14

NEKTAR THERAPEUTICS v
ELI LILLY & CO.

Confidential

Mark Wilson
May 05, 2025

141

1  knowledgeable about what was going on in
2  realtime.  So at least in that regard, you
3  know, there was some basis to have a level
4  of monitoring.
5       Q.    Other than being a recipient of
6  Teams and occasionally receiving a message
7  from your employees to you, you left it to
8  your employees to ensure they were
9  following the directions you provided at
10 the August 7th meeting?
11           MR. BATTER:  Same objection.
12      A.    Yeah, and -- yes, and those
13 employees, I believe, understood their
14 obligations, and I think that was
15 reasonable.
16      Q.    So, Mr. -- let's change subjects,
17 Mr. Wilson.
18           Nektar issued its litigation hold
19 notice in June 2023, correct?
20      A.    Correct.
21      Q.    And that was shortly after you
22 retained Quinn Emanuel in this case,
23 correct?
24      A.    Correct.
25      Q.    In February 2023, Nektar and

Case 3:23-cv-03943-JD   Document 187-5   Filed 05/15/25   Page 5 of 14
NEKTAR THERAPEUTICS v
ELI LILLY & CO.                              Confidential

Mark Wilson
May 05, 2025

195

1   But I believe those two have.
2        Q.   Okay.  Other than those two, you
3   can't remember the identity or role of
4   anyone who has sent you a Teams chat, as
5   you sit here today, fair?
6           MR. BATTER:  Objection.
7        A.   Yeah, I don't -- I don't
8   recollection of specific other people.
9           MR. MOORMAN:  Okay.  I have no
10      further questions.
11  EXAMINATION BY
12  MR. BATTER:
13       Q.   All right, Mr. Wilson, thank you
14  very much for being with us today.  I
15  probably have 10 or fewer minutes of
16  questions for you, okay.
17       A.   Okay.
18       Q.   I'd like to start by something
19  some of the expertise and experience with
20  document preservation in litigation.
21           At the time Nektar filed suit
22  against Lilly, how large was Nektar's
23  legal department?
24       A.   We had two attorneys.
25       Q.   And who were the two attorneys?

```
 1        A.    Myself and Elizabeth Zhang.
 2        Q.    And that was the totality of
 3   Nektar's legal department?
 4        A.    Yeah, those were the lawyers in
 5   the legal department, yes.  We have one
 6   paralegal.
 7        Q.    Are there any lawyers on Nektar's
 8   legal team dedicated to litigation?
 9        A.    No.
10        Q.    Has Nektar ever had a litigation
11   department?
12        A.    No.
13        Q.    How many years have you been at
14   Nektar?
15        A.    In total, 23, about 23.
16        Q.    And during that entire time
17   period -- excuse me, let me start that
18   over.
19              For that entire period of time,
20   are your answers the same, that there have
21   been no Nektar lawyers dedicated to
22   litigation?
23        A.    Correct.  In the 23 years I've
24   been here, there have been no litigation
25   specialists, no litigation lawyers.
```

1   Q.   Is your background in litigation?

2   A.   No.

3   Q.   What is your background in?

4   A.   Intellectual property, patents --

5   Q.   Sorry, go ahead.  I cut you off.

6   A.   Intellectual property, patents

7   primarily.

8   Q.   But not patent litigation?

9   A.   Correct.  Patent prosecution and

10  preparation in prosecution for patents.

11  Q.   What about Gil Labrucherie,

12  L-A-B-R-U-C-H-E-R-I-E, Nektar's former

13  general counsel, did he have a litigation

14  background?

15  A.   No.

16  Q.   And what was his background in?

17  A.   He was corporate governance,

18  financings.  That is what his focus was,

19  practice was.

20  Q.   Is Nektar often involved in

21  litigation?

22  A.   No.

23  Q.   And in the instances where Nektar

24  is involved in litigation, is it typically

25  the case that a partner is leading that

1  litigation, Nektar is not?

2      A.    Yes, and I mentioned earlier, you

3  know, we're often pulled in as a necessary

4  party, if it's a Nektar patent or Nektar

5  inventors and it's the partner that really

6  leads the litigation.

7      Q.    Other than in this case against

8  Eli Lilly, how many cases has Nektar been

9  involved in where it is the plaintiff?

10     A.    I am aware of an arbitration for,

11 I don't know, maybe about 8, 10 years ago

12 where we would have been a plaintiff.  But

13 in terms of, you know, litigation, I think

14 this is the only one, at least that I'm

15 aware of.

16     Q.    How many employees does Nektar

17 currently have?

18     A.    About 60.

19     Q.    In the last five years, have you

20 issued many litigation hold notices?

21     A.    No, no, not at all.

22     Q.    Any other hold notices in 2021,

23 '22, '23, '24, '25, other than the Lilly

24 hold notice in 2023?

25     A.    Other than the Lilly litigation

199

```
 1   hold notice in '23, nothing in '21 or any
 2   since.
 3        Q.   Was Teams chats or preservation
 4   of Teams chats ever at issue in any other
 5   litigation in which Nektar has been
 6   involved?
 7        A.   No.
 8        Q.   Has Nektar ever previously been
 9   criticized for preservation or lack
10   thereof of Teams chats?
11        A.   No.
12        Q.   Earlier you testified about the
13   August 30th -- excuse me, let me start
14   that over.
15             Earlier you testified about the
16   August 7, 2023 meeting where you
17   instructed employees on the appropriate
18   use of Teams chats.
19             Do you recall that?
20        A.   I do.
21        Q.   How many people from Nektar
22   attended that meeting?
23        A.   I think it was everyone who
24   reported to JZ, and so that's probably two
25   dozen, maybe even close to 30.
```

200

1      Q.    So is your best estimate 24 to 30
2   people?
3      A.    Yeah, I think that's about right.
4      Q.    At that August 7th meeting after
5   you gave your instruction on appropriate
6   chat usage, did you ask employees to come
7   to you if they had any questions, if they
8   didn't understand your instruction or had
9   issues complying with your instruction?
10     A.    I believe I already said --
11  answered that question, but yes.
12     Q.    Did anyone ever come to you to
13  say they had a question or concern about
14  your instruction?
15     A.    No.
16     Q.    It sounds like, based upon your
17  own personal experience as well as looking
18  at some of the recent chats Nektar began
19  preserving and produced, it seems
20  employees followed your instruction, is
21  that fair?
22           MR. MOORMAN:  Objection.
23     Objection.  Leading.
24     A.    I mean, yes.  My review and my
25  experience is that people have followed

Case 3:23-cv-03943-JD   Document 187-5   Filed 05/15/25   Page 11 of 14
NEKTAR THERAPEUTICS v
ELI LILLY & CO.                    Confidential

Mark Wilson
May 05, 2025

201

1   the guidance.
2        Q.    And what is your -- given
3   counsel's objection to my question being
4   leading -- what is the basis of your
5   testimony that people who received your
6   instruction have been abiding by it?
7             MR. MOORMAN:  Objection.
8        Leading.  You can't lead the witness
9        and then just ask another question.
10       Q.    You can answer.
11       A.    So, and again, I think we covered
12  this, but I've said that my own experience
13  of being, receiving these chats, they're
14  very consistent with my expectation of the
15  guidance.  I believe that when we have the
16  chats that were embedded, they were also
17  of a nature that is consistent with the
18  guidance, and the recent chats that we've
19  collected also proves that out.
20       Q.    With respect to your August 7th
21  instruction, were you leaving it up to
22  Nektar employees to decide whether
23  documents and emails were being preserved?
24       A.    No.  Again, the document -- I'm
25  sorry, did you say the document notice or

Case 3:23-cv-03943-JD   Document 187-5   Filed 05/15/25   Page 12 of 14
NEKTAR THERAPEUTICS v
ELI LILLY & CO.
Confidential
Mark Wilson
May 05, 2025

202

1  the August 7th?
2       Q.    No, I wanted to differentiate
3  between chats on the one hand and
4  documents and emails.
5            So with that understanding, I'd
6  like to ask first about documents and
7  emails, not about chats.
8            So with respect to your August
9  7th instruction, were you leaving it up to
10 Nektar employees to decide whether to
11 preserve emails and documents?
12      A.    No.  The practice was that those
13 were preserved and preserved indefinitely
14 documents and emails.
15      Q.    So with respect to documents and
16 emails, employees had no discretion as to
17 whether they were preserved, is that fair?
18      A.    Correct.
19      Q.    Now I'd like to ask a similar
20 question about Teams chats.
21           With respect to your August 7th
22 instruction regarding chats, did you leave
23 it up to employees to decide whether they
24 would abide by your instruction not to use
25 Teams chats to discuss Lilly or the

1  lawsuit?
2      A.   So for the Teams chats, we have,
3  you know, the guidance, first of all, that
4  I believe everyone is following and should
5  follow because that's the directive.
6           And secondly, the practice that
7  folks followed are non-substantive and so
8  they are not chatting about the lawsuit or
9  the relationship.  And given the nature of
10 the platform itself, it just doesn't lend
11 itself to, you know, substantive
12 discussions.
13     Q.   Did you give employees discretion
14 as to whether to follow your instruction?
15     A.   No.
16          MR. BATTER:  No further
17     questions.
18 FURTHER EXAMINATION
19 BY MR. MOORMAN:
20     Q.   When you say you didn't give
21 employees discretion to follow your
22 instruction, first, what instruction are
23 you referring to?
24     A.   The instructions in the August
25 7th meeting.  I think we've talked about

Case 3:23-cv-03943-JD   Document 187-5   Filed 05/15/25   Page 14 of 14
NEKTAR THERAPEUTICS v
ELI LILLY & CO.                         Confidential                         Mark Wilson
                                                                             May 05, 2025

207

```
1            REPORTER CERTIFICATE

2

3        I, JOAN FERRARA, do hereby

4   certify:

5        That said proceedings were taken

6   at the time and place herein named;

7   and that the transcript is a true

8   record of the testimony as reported by

9   me, a disinterested person, and was

10  thereafter transcribed.

11       I further certify that I am not

12  interested in the outcome of the said

13  action, nor connected with, nor

14  related to any of the parties in said

15  action, nor to their respective

16  counsel.

17       IN WITNESS WHEREOF, I have

18  hereunto set my hand this 6th day of

19  May, 2025.

20

21

22       _____

23          JOAN FERRARA, RMR, FCRR

24

25
```