QUINN EMANUEL URQUHART &
SULLIVAN, LLP
   Diane M. Doolittle (Bar No. 142046)
   dianedoolittle@quinnemanuel.com
   Yury Kapgan (Bar No. 218366)
   yurykapgan@quinnemanuel.com
   Suong Nguyen (Bar No. 237577)
   suongnguyen@quinnemanuel.com
   Kyle Batter (Bar No. 301803)
   kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

   David M. Elihu (Bar No. 303043)
   davidelihu@quinnemanuel.com
   Jimmy Bieber (Bar No. 301639)
   jimmybieber@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

*Attorneys for Plaintiff Nektar Therapeutics*

Mark C. Holscher, P.C. (SBN 139582)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
Email: mark.holscher@kirkland.com

Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

Diana M. Watral, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: diana.watral@kirkland.com
Email: gbalassa@kirkland.com
Email: ryan.moorman@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>    Plaintiff,<br><br>    v.<br><br>ELI LILLY & CO.,<br><br>    Defendant. | CASE NO. 3:23-CV-03943-JD<br><br>**JOINT SUBMISSION OF PROPOSED JURY INSTRUCTIONS**<br><br>Judge:    Hon. James Donato |

Pursuant to the Court's Standing Order for Civil Jury Trials Before Judge James Donato, the parties hereby submit the following set of stipulated and disputed jury instructions:

1

2

## STIPULATED INSTRUCTION NO. 1[1]

## RE DUTY OF JURY

3

4

Members of the jury, now that you have heard all the evidence and the arguments of attorneys, it is my duty to instruct you on the law that applies to this case.

5

6

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

7

8

9

10

11

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

12

13

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

14

15

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions, § 1.4.

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1] Lilly submits these proposed jury instructions in accordance with the Court's Standing Order for Civil Jury Trials. However, as explained in Lilly's motion for summary judgment (Dkt. 210-1; Dkt. 238-1), Lilly believes it is entitled to summary judgment on all of Plaintiff's claims.  Nektar disputes that Lilly is entitled to summary judgment on any of Nektar's claims.  Dkt. 228-1.

**DISPUTED INSTRUCTION NO. 2**

**RE CLAIMS AND DEFENSES**

**OFFERED BY NEKTAR**

To help you follow the evidence, I will give you a brief summary of the parties' positions.

The plaintiff is Nektar Therapeutics, referred to as "Nektar."  The defendant is Eli Lilly and Company, referred to as "Eli Lilly" or "Lilly."

Nektar alleges that Lilly breached a contract obligating Lilly to use "Commercially Reasonable Efforts" to develop Rezpeg, to follow Lilly's Good Research Practices in developing Rezpeg, and to transfer materials that relate exclusively to Rezpeg that are necessary or useful for the continued development of Rezpeg after the parties' contract was terminated.  Nektar also alleges that Lilly breached the implied covenant of good faith and fair dealing.  Nektar has the burden of proving these claims by a preponderance of the evidence.

Lilly denies Nektar's claims.


Source: Ninth Circuit Manual of Model Civil Jury Instructions, § 1.5 (adapted to fit parties, claims, and defenses).

**DISPUTED INSTRUCTION NO. 2**

**RE CLAIMS AND DEFENSES**

**OFFERED BY LILLY**

To help you follow the evidence, I will give you a brief summary of the parties' positions.

The plaintiff is Nektar Therapeutics, referred to as "Nektar."  The defendant is Eli Lilly and Company, referred to as "Eli Lilly" or "Lilly."

Nektar alleges that Lilly breached a contract obligating Lilly to use "Commercially Reasonable Efforts" to develop Rezpeg, to follow Lilly's Good Research Practices in developing Rezpeg, and to transfer materials that relate exclusively to Rezpeg that are necessary or useful for the continued development of Rezpeg after the parties' contract was terminated.  Nektar also alleges that Lilly breached the implied covenant of good faith and fair dealing.  Nektar has the burden of proving these claims by a preponderance of the evidence.

Lilly denies Nektar's claims.  Lilly contends that it developed Rezpeg using the efforts, resources, and expertise it used for comparable products it owned at similar stages of development for the treatment of the same conditions, in compliance with the "Commercially Reasonable Efforts" clause in the License Agreement.  Lilly denies that the Good Research Practices schedule imposed obligations on Lilly, as opposed to Nektar, and contends that Lilly followed Good Research Practices in developing Rezpeg.  Lilly contends that it transferred materials necessary or useful for the continued development of Rezpeg after the parties' contract was terminated, and acted consistent with the implied covenant of good faith and fair dealing.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, § 1.5 (adapted to fit parties, claims, and defenses); *see also Telesocial v. Orange*; No. 14-cv-3985-JD (N.D. Cal. July 21, 2017), ECF No. 349 (instructing the jury that "Orange denies that it violated the Computer Fraud and Abuse Act or the California Comprehensive Computer Data Access and Fraud Act. Orange denies that it hacked into Telesocial's servers. Orange denies that a contractual agreement was formed between any of Orange's employees and Telesocial regarding the Terms of Use…").

**NEKTAR'S POSITION**

Nektar's proposed instruction is a clearer and more understandable description of the case for the jury. By contrast, Lilly's proposed instruction includes an unnecessary and repetitive denial of each of Nektar's theories of breach. It also impermissibly seeks to define and interpret the "Commercially Reasonable Efforts" provision of the License Agreement in a manner favorable to Lilly. Lilly's additions should be rejected, and the Court should provide Nektar's instruction.

1    **LILLY'S POSITION**

2        Lilly's proposal more accurately reflects Lilly's responses to Nektar's various alleged

3    theories of breach.  If the jury will be instructed on each of the contractual breaches that Nektar

4    alleges, fairness requires that the jury also be instructed on Lilly's response to each, rather than the

5    generic denial in Nektar's proposed instruction.  That is the approach this Court took in *Telesocial*

6    *v. Orange*.  Amended Final Jury Instructions at 3, *Telesocial Inc. v. Orange S.A.*, No. 14-cv-3985-

7    JD (N.D. Cal. July 21, 2017) (Donato, J.), ECF No. 349 (instructing the jury that "Orange denies

8    that it violated the Computer Fraud and Abuse Act or the California Comprehensive Computer Data

9    Access and Fraud Act. Orange denies that it hacked into Telesocial's servers. Orange denies that a

10   contractual agreement was formed between any of Orange's employees and Telesocial regarding

11   the Terms of Use…").

12       Additionally, as Lilly has argued on summary judgment, the License Agreement expressly

13   does not impose Good Research Practices obligations on Lilly, only on Nektar.  ECF 210-2 §4.8;

14   *see also* ECF 210 at 23; ECF 237 at 13.  Lilly requests that all allegations related to the Good

15   Research Practices schedule be struck from all relevant instructions to avoid confusing and

16   misleading the jury.  Lilly submits its proposed instruction addressing Nektar's Good Research

17   Practices claim only in the event the Court denies summary judgment on this claim.

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 3**

**RE BURDEN OF PROOF -- PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, § 1.6.

1

2

**STIPULATED INSTRUCTION NO. 4**

**RE CORPORATIONS -- FAIR TREATMENT**

3

4

The parties in this case are corporations. All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

5

6

7

8

9

10

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of their authority. An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.

11

12

13

<u>Source</u>: Final Jury Instructions at 6, *In Re Google Play Store Antitrust Litigation*; No. 20-cv-05671-JD (N.D. Cal. Dec. 6, 2023), ECF No. 592.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 5**

**RE WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.


Source: Ninth Circuit Manual of Model Civil Jury Instructions, § 1.9.

**STIPULATED INSTRUCTION NO. 6**

**RE WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.

3.    Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, § 1.10.

**STIPULATED INSTRUCTION NO. 7**

**RE DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, § 1.12.

1

## STIPULATED INSTRUCTION NO. 8

2

## RE RULING ON OBJECTIONS

3       There are rules of evidence that control what can be received into evidence.  When a lawyer

4   asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it

5   was not permitted by the rules of evidence, that lawyer objected.  If I overruled the objection, the

6   question was answered, or the exhibit received.  If I sustained the objection, the question was not

7   answered, or the exhibit was not received.  Whenever I sustained an objection to a question, you

8   must ignore the question and must not guess what the answer might have been.

9       Sometimes I ordered that evidence be stricken from the record and that you disregard or

10  ignore that evidence.  That means that when you are deciding the case, you must not consider the

11  stricken evidence for any purpose.

12

13  <u>Source</u>: Final Jury Instructions at 10, *In Re Google Play Store Antitrust Litigation*; No. 20-cv-05671-
    JD (N.D. Cal. Dec. 6, 2023), ECF No. 592; Ninth Circuit Manual of Model Civil Jury Instructions,
14  § 1.13 (modified).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**STIPULATED INSTRUCTION NO. 9**

2

**RE DEPOSITION IN LIEU OF LIVE TESTIMONY**

3    During the trial, you heard testimony by witnesses in the form of previously recorded

4    deposition testimony, rather than live here in court.  A deposition is the sworn testimony of a witness

5    taken before trial.  The witness was placed under oath to tell the truth, and lawyers for each side

6    asked questions.  The questions and answers were recorded.

7    Insofar as possible, you should consider deposition testimony presented to you in court in

8    lieu of live testimony, in the same way as if the witnesses had been present to testify.

9

10    <u>Source</u>: Final Jury Instructions at 11, *In Re Google Play Store Antitrust Litigation*; No. 20-cv-05671-
      JD (N.D. Cal. Dec. 6, 2023), ECF No. 592; Ninth Circuit Manual of Model Civil Jury Instructions,
11    § 2.4 (modified).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 10**

**RE CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory;

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case, if any;

5.    the witness's bias or prejudice, if any;

6.    whether other evidence contradicted the witness's testimony;

7.    the reasonableness of the witness's testimony in light of all the evidence; and

8.    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions, § 1.14.

1

**STIPULATED INSTRUCTION NO. 11**

2

**RE EXPERT OPINION**

3      You have heard testimony from expert witnesses who testified to opinions and the reasons

4 for their opinions.  This opinion testimony was allowed because of the education or experience of

5 the expert witness.

6      Such opinion testimony should be judged like any other testimony.  You may accept it, reject

7 it, or give it as much weight as you think it deserves, considering the witness's education and

8 experience, the reasons given for the opinion, and all the other evidence in the case.

9

10 <u>Source</u>: Final Jury Instructions at 13, *In Re Google Play Store Antitrust Litigation*; No. 20-cv-05671-

11 JD (N.D. Cal. Dec. 6, 2023), ECF No. 592; Ninth Circuit Manual of Model Civil Jury Instructions,
§ 2.13 (modified).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 12**

**RE CHARTS AND SUMMARIES**

During trial, certain charts and summaries were shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Some of those charts or summaries may have been admitted into evidence, while others were not.

Charts and summaries are only as good as the evidence that supports them. You should, therefore, give them only such weight as you think the evidence supporting them deserves.

Source: Final Jury Instructions at 14, *Erica Frasco, et al. v. Flo Health Inc., et al.*; No. 3:21-cv-00757-JD (N.D. Cal. July 31, 2025), ECF No. 744.

**DISPUTED INSTRUCTION NO. 13**

**RE BREACH OF CONTRACT – ELEMENTS**

**OFFERED BY NEKTAR**

The parties' License Agreement is a legal contract.  Sometimes in my instructions I call it the License Agreement, sometimes I refer to it as a contract.  They mean the same thing for your purposes.

Nektar claims that Lilly breached the contract by failing to use "Commercially Reasonable Efforts" to develop and commercialize Rezpeg, by not following Lilly's Good Research Practices in developing Rezpeg, and by not by not transferring materials that relate exclusively to Rezpeg that are necessary or useful for Rezpeg's development after the contract was terminated.  Lilly denies Nektar's claims.

Nektar has the burden of proving, by a preponderance of the evidence, that Lilly breached the contract, and that Nektar sustained damages because of Lilly's breach.

If you decide that Lilly breached the contract, you will find for Nektar on its breach of contract claim and you will go on to consider Nektar's damages.  If you decide that Lilly did not breach the contract, you will find for Lilly on Nektar's breach of contract claim and you will not consider damages.

Source: New York Pattern Civil Jury Instructions, § 4.1 (adapted to fit parties, claims, and stipulated facts).

# DISPUTED INSTRUCTION NO. 13

## RE BREACH OF CONTRACT – ELEMENTS

### OFFERED BY LILLY

The parties' License Agreement is a legal contract.  Sometimes in my instructions I call it the License Agreement, sometimes I refer to it as a contract.  They mean the same thing for your purposes.

Nektar claims that Lilly breached the contract by failing to use "Commercially Reasonable Efforts" to develop and commercialize Rezpeg, by not following Lilly's Good Research Practices in developing Rezpeg, and by not transferring materials that relate exclusively to Rezpeg that are necessary or useful for Rezpeg's development after the contract was terminated.  Lilly denies Nektar's claims. Lilly contends that it developed Rezpeg using the efforts, resources, and expertise it used for comparable products it owned at similar stages of development for the treatment of the same conditions, in compliance with the "Commercially Reasonable Efforts" clause in the License Agreement.  Lilly denies that the Good Research Practices schedule imposed obligations on Lilly, as opposed to Nektar, and contends that Lilly followed Good Research Practices in developing Rezpeg.  Lilly contends that it transferred materials necessary or useful for the continued development of Rezpeg after the parties' contract was terminated.

Nektar has the burden of proving, by a preponderance of the evidence, that Lilly breached the contract, and that Nektar sustained damages because of Lilly's breach.

If you decide that Lilly breached the contract, you will find for Nektar on its breach of contract claim and you will go on to consider Nektar's damages.  If you decide that Lilly did not breach the contract, you will find for Lilly on Nektar's breach of contract claim and you will not consider damages.


Source: New York Pattern Civil Jury Instructions, § 4.1 (adapted to fit parties, claims, and stipulated facts).

**NEKTAR'S POSITION**

Nektar's proposed instruction judiciously follows the New York Civil Pattern Jury Instructions and concisely sets forth the parties' positions. Lilly's proposed instruction, by contrast, includes an unnecessary and repetitive denial of each of Nektar's theories of breach (as does its instruction on the statement of the case). It also impermissibly seeks to define and interpret the "Commercially Reasonable Efforts" provision of the License Agreement in a manner favorable to Lilly. Lilly's additions may confuse and mislead the jury; they should be rejected and the Court should provide Nektar's instruction instead.

**LILLY'S POSITION**

The Court should adopt Lilly's proposed version of New York Pattern Civil Jury Instructions, § 4.1, because it more accurately states the claims and defenses at-issue.

Lilly's proposal more accurately reflects Lilly's responses to Nektar's various alleged theories of breach, as the New York Pattern Instructions call for and as this Court allowed defendant to do in *Telesocial v. Orange*.  *See* New York Pattern Civil Jury Instructions, § 4.1 ("state defendant's claims and the factual contentions on which they are based, such as … (he, she, it) did what (his, her, its) was required to do under the contract"); Amended Final Jury Instructions at 3, *Telesocial v. Orange*; No. 14-cv-3985-JD (N.D. Cal. July 21, 2017), ECF No. 349 (instructing the jury that "Orange denies that it violated the Computer Fraud and Abuse Act or the California Comprehensive Computer Data Access and Fraud Act. Orange denies that it hacked into Telesocial's servers. Orange denies that a contractual agreement was formed between any of Orange's employees and Telesocial regarding the Terms of Use…").  Because the jury will be instructed on Nektar's allegations regarding each of its breach of contract theories, fairness requires that the jury also be instructed on Lilly's response to each claim, rather than Nektar's proposed non-specific statement that "Lilly denies Nektar's claims."

1

2

**STIPULATED INSTRUCTION NO. 14**

**RE INTERPRETATION OF CONTRACT**

3      The parties dispute the meaning of certain terms contained in the License Agreement.  When

4   the meaning of a contract is plain and clear, it must be enforced according to its terms.  All parts of

5   a contract must be read in harmony to determine its meaning.  The contract should be construed to

6   give full meaning and effect to all material provisions.  Where there is inconsistency between a

7   general provision and a specific provision, the specific provision controls.  The contract document

8   should be read as a whole to ensure that excessive emphasis is not placed upon particular words or

9   phrases.  The use of different terms in the same agreement strongly implies that the words are to be

10  accorded different meanings.  An interpretation of a contract that would leave one of its clauses

11  without meaning or effect should be avoided.

12

13  <u>Source</u>: Final Jury Instructions at 93, *Viasat, Inc. v. Space Sys./Loral, LLC,* No. 3:12-cv-00260-H-

14  WVG (S.D. Cal. April 10, 2014), ECF No. 973 (adapted to fit name of agreement); N.Y. Civil
    Pattern Jury Instructions, § 4:1 VI. A.3.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DISPUTED INSTRUCTION NO. 15

## RE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – ELEMENTS

### OFFERED BY NEKTAR

In addition to breach of the License Agreement, Nektar seeks to recover damages for breach of the implied covenant of good faith and fair dealing.

All contracts imply a covenant of good faith and fair dealing in the course of performance. The implied covenant embraces a pledge that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

A breach of the covenant is a breach of the agreement or contract itself. Even if a party is not in breach of its express contractual obligations, it may be in breach of its implied duty of good faith and fair dealing when it exercises a contractual right as part of a scheme to deprive the other party of the benefit of its bargain. Where the contract contemplates the exercise of discretion, the implied covenant includes a promise not to act arbitrarily, irrationally or in bad faith in exercising that discretion.

The obligations imposed by an implied covenant of good faith and fair dealing are limited to obligations in aid and furtherance of the explicit terms of the parties' agreement. The covenant cannot be construed so broadly as to nullify the express terms of a contract, or to create independent contractual rights. No obligation can be implied that would be inconsistent with other terms of the contract.

To establish a breach of the implied covenant of good faith and fair dealing, Nektar must prove the following by a preponderance of the evidence:

1. That Nektar entered into a contract with Lilly;

2. That Lilly acted in a manner that deprived Nektar of the benefits of the contract; and

3. That Nektar was harmed by Lilly's conduct.

Source: N.Y. Civil Pattern Jury Instructions, § 4:1 (adapted to fit parties and claims), VII. Z.

1

## DISPUTED INSTRUCTION NO. 15[2]

2

## RE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – ELEMENTS

3

## OFFERED BY LILLY

4      The implied covenant of good faith and fair dealing means that each party will not do

5 anything to unfairly interfere with the right of any other party to receive the benefits of the contract;

6 however, the implied promise of good faith and fair dealing is not without limits and cannot create

7 obligations that are inconsistent with the terms of the contract.

8      To establish breach of the implied covenant of good faith and fair dealing, Nektar must prove

9 the following by a preponderance of the evidence:

10      1. That Nektar and Lilly entered into a contract;

11      2. That Lilly unfairly interfered with Nektar's right to receive the benefits of the contract;

12 and

13      3. That Nektar was harmed by Lilly's conduct.

14

15

16 Source: Amended Final Jury Instructions at 63, *Telesocial v. Orange*; No. 14-cv-3985-JD (N.D. Cal.

17 July 21, 2017), ECF No. 349 (adapted to fit parties and N.Y. Law); N.Y. Civil Pattern Jury
Instructions, § 4:1 (adapted to fit parties and claims), VII. Z. ("In New York, all contracts imply a

18 covenant of good faith and fair dealing in the course of performance," "The covenant of good faith
and fair dealing is breached when a party acts in a manner that deprives the other party of the benefits

19 of the agreement," "The implied covenant of good faith and fair dealing is not without limits, and
no obligation can be implied that would be inconsistent with other terms of the contract," "A cause

20 of action for breach of the implied covenant requires a contractual obligation between plaintiff and
defendant.").

21

22

23

24

25

26

27   [2]  For the reasons explained in Lilly's motion for summary judgment, Lilly objects to the inclusion of any instruction
on the implied covenant of good faith and fair dealing, including because it is duplicative of the CRE breach of

28   contract claim, and will confuse the jury.  Lilly submits this alternative instruction only if an instruction on the
implied covenant is given.

**NEKTAR'S POSITION**

Nektar's proposed instruction hews more closely to the New York Civil Pattern Jury Instructions, which includes substantial context on the purpose and meaning of this claim. By contrast, Lilly's proposed instruction excises (without rhyme or reason) necessary background from the New York Civil Pattern Jury Instructions, while adding language that was used in a different case applying <u>California</u> law, not New York law. *See Telesocial v. Orange*; No. 14-cv-3985-JD (N.D. Cal. July 21, 2017), ECF No. 349 (citing CACI instructions). Nektar's version should control.

The additional language from the New York Civil Pattern Jury Instructions is crucial here, because it clarifies key issues including: 1) how the implied covenant tempers a party's discretion when a contract, like the parties' License Agreement, contemplates the exercise of discretion; 2) that a party may act in accordance with the express terms of the contract but nevertheless breach the implied covenant; and 3) that a breach of the implied covenant is a breach of the underlying contract. Each of these clarifications is necessary, because the jury will likely grapple with the issue of discretion, and may be confused as to the difference between the implied covenant claim and the breach of contract claim. Lilly's proposed instruction omits all of this guidance.

Further, Lilly's proposed instruction includes incorrect direction, because it implies that there is no manner in which the implied covenant can be breached without a breach of the express terms of the contract. That statement is contradicted by the plain text of the Pattern Jury Instructions. *See* N.Y. Pattern Jury Instr.--Civil 4:1 § Z ("Even if a party is not in breach of its express contractual obligations, it may be in breach of its implied duty of good faith and fair dealing when it exercises a contractual right as part of a scheme to realize gains that the contract explicitly denies or to deprive the other party of the benefit of its bargain.") Accordingly, the Court should reject Lilly's narrow and incorrect version, and instruct the jury using Nektar's instruction.

1    **LILLY'S POSITION**

2        The New York pattern instructions do not include a model instruction on the implied

3    covenant of good faith and fair dealing.  As a result, the parties have taken different approaches to

4    preparing a proposed instruction.  Nektar cites no case that has ever given its proposed instruction.

5    Instead, Nektar's proposed instruction is a confusing, repetitive, and cherrypicked conglomeration

6    of comments to the New York pattern instructions.    This type of "repetitive instruction[] that

7    place[s] undue emphasis on a certain aspect of a party's case" is improper.  *Celador Int'l Ltd. v.*

8    *Walt Disney Co.*, 2010 WL 11505709, at *28 (C.D. Cal. Dec. 21, 2010), *aff'd sub nom. Celador*

9    *Int'l, Inc. v. Am. Broad. Companies, Inc.*, 499 F. App'x 721 (9th Cir. 2012) (internal quotation marks

10   omitted).

11       Lilly's instruction is clear, concise, and nearly identical to the one this Court gave in

12   *Telesocial v. Orange*, with only minor adaptations to: 1) account for the parties, and 2) align the

13   language with New York Law.  Amended Final Jury Instruction No. 53, *Telesocial v. Orange*; No.

14   14-cv-3985-JD (N.D. Cal. July 21, 2017), ECF No. 349 (adapted to fit parties and N.Y. Law).

15

16

17

18

19

20

21

22

23

24

25

26

> **JURY INSTRUCTION NO. 53.**
> **RE:  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—**
> **ESSENTIAL FACTUAL ELEMENTS**
>
> In every contract or agreement there is an implied promise of good faith and fair dealing.
> This means that each party will not do anything to unfairly interfere with the right of any other
> party to receive the benefits of the contract; however, the implied promise of good faith and fair
> dealing cannot create obligations that are inconsistent with the terms of the contract.
>
> Telesocial claims that Orange violated the duty to act fairly and in good faith.  To establish
> this claim, Telesocial must prove the following by a preponderance of the evidence:
>
> 1.    That Telesocial and Orange entered into a contract;
> 2.    That Telesocial did all, or substantially all of the significant things that the contract
>       required it to do;
> 3.    That Orange unfairly interfered with Telesocial's right to receive the benefits of the
>       contract; and
> 4.    That Telesocial was harmed by Orange's conduct.

27       As slightly modified by Lilly to fit New York (rather than California) contract law, the

28   Court's instruction in *Telesocial* correctly and succinctly explains the elements of an implied

1    covenant claim.  N.Y. Civil Pattern Jury Instructions, § 4:1, VII. Z Comments ("In New York, all

2    contracts imply a covenant of good faith and fair dealing in the course of performance," "The

3    covenant of good faith and fair dealing is breached when a party acts in a manner that deprives the

4    other party of the benefits of the agreement," "The implied covenant of good faith and fair dealing

5    is not without limits, and no obligation can be implied that would be inconsistent with other terms

6    of the contract," "A cause of action for breach of the implied covenant requires a contractual

7    obligation between plaintiff and defendant.").  For these reasons, Lilly submits that the Court should

8    adopt Lilly's proposed instruction on the implied covenant of good faith and fair dealing.

1

2

3

**DISPUTED INSTRUCTION NO. 16**

**RE PERMISSIVE ADVERSE INFERENCE**

**OFFERED BY LILLY**

4

5

6

7

You have heard evidence that Nektar's communications using Microsoft Teams were deleted after Nektar had an obligation to preserve those communications, and with intent to prevent their use in litigation. You may infer that the deleted communications contained evidence that would have been unfavorable to Nektar in this case.

8

9

10

11

12

13

14

Source: Final Jury Instructions at 1517, *In Re Google Play Store Antitrust Litigation*; No. 20-cv-05671-JD (N.D. Cal. Dec. 6, 2023), ECF No. 592 (modified); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("a trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior.") (citing *Akiona v. United States*, 938 F.2d 158 (9th Cir.1991)); *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, * 6 (N.D. Cal. 2004) ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.") (citations omitted); *see Wawanesa General Insurance Company v. Applica Consumer Products Inc. et al.,* 2008 WL 5529438 (S.D. Cal.) (providing permissive inference instruction).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LILLY'S POSITION**

The Court should provide a permissive adverse inference to remedy Nektar's extensive spoliation of evidence. Lilly's pending court-ordered submission (ECF No. 185) detailed how Nektar's witnesses intentionally deleted Teams Chats sent by its trial witnesses for years after it anticipated litigation. ECF No. 185, Ex. 1 at 70:4-20. Nektar witnesses ████████████ ████████████████████████████████ throughout 2023, 2024, and 2025—potentially thousands of conversations. *Id.* Ex. 12 at 43:20-22, Ex. 16 at 21:12-15. These chats included conversations related to their ████████████████████████████████ *Id.*, Ex. 5 at 52:13-15, Ex. 12 at 44:3-9; *see also, Id.,* Ex. 16 at 102:3-13. And they contained highly relevant evidence to this case.

Nektar's Chief Legal Officer and corporate representative knew that Teams Chats at Nektar automatically deleted for years during this litigation, and still chose not to preserve those communications even after issuing a legal hold covering Teams Chats. ECF No. 185 at 1. Nektar now claims its employees "faithfully complied" with a directive "not to discuss the lawsuit or Lilly's work under the License Agreement." As detailed in Lilly's submission, however, Nektar's directive only instructed employees not to talk about the "lawsuit" using Teams. They continued to create responsive Teams Chats about other relevant subjects, including their "work on REPZEG," that Nektar destroyed—and several witnesses testified they never heard the directive at all. *Id.* at 5-6.

Nektar's deletion of these documents it had an obligation to preserve constitutes spoliation. Based on similar conduct in *Apple Inc. v. Samsung Elecs. Co. Ltd.*, the Court gave an even stricter, more elaborate adverse inference when Samsung failed to suspend its automatic deletion of certain custodians' emails. 881 F. Supp 2d 1132, 1151 (N.D. Cal. 2012) ("Samsung has failed to prevent the destruction of relevant evidence for Apple's use in this litigation. This is known as the 'spoliation of evidence.' … You also may presume that Apple has met its burden of proving the following two elements by a preponderance of the evidence: first, that relevant evidence was destroyed after the duty to preserve arose. … and second, the lost evidence was favorable to Apple.").

This Court has also given an adverse inference instruction where Google failed to preserve Chats communications of its employees:

> You have seen evidence that Google Chat communications were deleted with the intent to prevent their use in litigation. You may infer that the deleted Chat messages contained evidence that would have been unfavorable to Google in this case.

Final Jury Instructions at 17, *In Re Google Play Store Antitrust Litigation*; No. 20-cv-05671-JD (N.D. Cal. Dec. 6, 2023) (Donato, J.), ECF No. 592 (modified).

Other courts in this circuit regularly hold that "spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, *6 (N.D. Cal. Aug. 17, 2004); *see Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 422 (9th Cir. 2011) (finding no abuse of discretion where an "instruction would 'creat[e] a presumption in favor of [defendant] that the spoliated evidence was unfavorable to" plaintiff).

Lilly seeks a relatively modest remedy that falls well within the Court's broad discretion to address the categorical destruction of relevant communications.  The proposed instruction permits (and does not require) the jury to draw an adverse inference, a less drastic sanction than other alternatives, and one the Court has "broad discretionary power to permit."  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (citing *Akiona v. United States*, 938 F.2d 158 (9th Cir.1991)); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012) ("sanctions for spoliation of evidence may be imposed under the court's inherent powers to manage its own affairs"); *see Wawanesa Gen. Ins. Co. v. Applica Consumer Prods. Inc. et al.*, 2008 WL 5529438 (S.D. Cal.) (providing permissive inference instruction).

Failing to give this instruction would prejudice Lilly.  Nektar has included over 80 Teams chats from Lilly's witnesses that it intends to parade in front of the jury throughout trial.  Failing to tell the jury why Lilly has not introduced any Nektar Teams chats will give the misimpression that those messages do not contain unfavorable information when the real reason is Nektar's failure to preserve the documents.

**NEKTAR'S POSITION**

Lilly's instruction is improper. It should be rejected in full.

*First*, there is no basis for this type of instruction. The Court has not imposed any sanctions—much less an adverse inference—on Nektar, nor should it. *See* Dkt. 185-2. As Nektar explained in its response letter (Dkt. 188-3), the extensive discovery Lilly conducted on this issue revealed that Lilly was not prejudiced, because: (1) Nektar employees perform their substantive work in email and documents like Word, not Teams chats, and such documents are preserved forever; (2) Nektar typically uses Teams chats for logistical communications like, "are you able to talk"; (3) the day Nektar filed suit, its General Counsel directed nearly three dozen employees not to discuss the lawsuit or Lilly's work under the License Agreement, including through Teams chats; and (4) Nektar employees faithfully complied. Dkt. 188-3 at 1-3. The Teams Chat messages that Lilly suggests have been improperly deleted would have been generated months after the operative events in this litigation. *See id.* at 7.

*Second*, the requirements for this type of instruction are not met, because Lilly has failed to show that Nektar "acted with the intent to deprive [Lilly] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Intent, in the Rule 37(e)(2) context, "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). "Relevant considerations" for assessing intent "include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id.* Lilly's request for sanctions fails on all fronts. As its own letter concedes, Nektar's alleged conduct amounted to "Fail[ing] to Disable the 24-Hour Deletion Configuration for Teams Chat." Dkt. 185-2 at 4. But that deletion policy had been in place *since 2021*, long before litigation was reasonably foreseeable. *Id.* at 2. Nektar did not intentionally delete messages—it simply kept its existing policy in place. This maintenance of the status quo did not constitute "affirmative steps taken to delete evidence." *Jones*, 95 F.4th at 735; *see also Sinsukthaworn*, 2025 WL 1433821, at *14 (finding "no evidence" of "affirmative steps to destroy the evidence" where ESI was deleted "pursuant to the [Defendant's] three-year data retention policy"). In this situation, giving an adverse inference

1  instruction would constitute reversible error.  *See Gregory v. State of Montana*, 118 F.4th 1069,

2  1078-79 (9th Cir. 2024) (holding courts cannot impose adverse inferences under "inherent

3  authority" but must find Rule 37(e)(2)'s "demanding standard" is satisfied).[3]

4      *Third*, Nektar also objects generally to the presentation of evidence or argument on the

5  preservation of ESI, as contemplated in Lilly's proposed instruction.  The Court has not imposed

6  any sanctions on Nektar and such evidence or argument is irrelevant to the underlying claims and

7  defenses.

8      *Fourth*, Nektar identified multiple instances where Lilly itself appears to have deleted Teams

9  Chats after it argues litigation became reasonably foreseeable.  *See* Dkt. 188-3 at 7-8, Exs. M-R.

10 But Nektar is not seeking an adverse inference instruction against Lilly on this basis, because the

11 jury should not be forced to wade into discovery issues or decide whether either party should have

12 preserved its documents better.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3]    All of Lilly's cited sources pre-date this controlling precedent.

**DISPUTED INSTRUCTION NO. 17**

**RE DAMAGES**

**OFFERED BY NEKTAR**

My charge to you on the law of damages must not be taken as a suggestion that you should find for Nektar.  It is for you to decide on the evidence presented and the rules of law I have given you whether Nektar is entitled to recover from Lilly.  If you decide Nektar is not entitled to recover, you need not consider damages.  Only if you decide that Nektar is entitled to recover will you consider damages.

It is Nektar's burden to establish damages.  Damages cannot be merely speculative, possible, or imaginary.

To recover, Nektar must establish with reasonable certainty that damages were caused by the breach, and must provide a stable foundation for a reasonable estimate of the amount of its damages.  Nektar does not need to establish the amount of its damages with mathematical certainty.

Source: N.Y. Civil Pattern Jury Instructions, § 4:20 (adapted to fit parties); Ninth Circuit Manual of Model Civil Jury Instructions, § 5.1.

**DISPUTED INSTRUCTION NO. 17**

**RE DAMAGES**

**OFFERED BY LILLY**

My charge to you on the law of damages must not be taken as a suggestion that you should find for Nektar.  It is for you to decide on the evidence presented and the rules of law I have given you whether Nektar is entitled to recover from Lilly.  If you decide Nektar is not entitled to recover, you need not consider damages.  Only if you decide that Nektar is entitled to recover will you consider damages.

It is Nektar's burden to establish damages.  Damages cannot be merely speculative, possible, or imaginary.

To recover, Nektar must prove by a preponderance of the evidence that the breach of contract caused the damages.  Nektar must also establish the existence of damages with reasonable certainty and provide a stable foundation for a reasonable estimate of the amount of its damages.

Nektar does not need to establish the amount of its damages with mathematical certainty. In determining the amount of damages, if any, to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in the evidence. You may not award damages based on sympathy, speculation or guesswork.

Source: N.Y. Civil Pattern Jury Instructions, § 4:20 (adapted to fit parties); Ninth Circuit Manual of Model Civil Jury Instructions, § 5.1; Amended Final Jury Instructions at 61, *Telesocial v. Orange*; No. 14-cv-3985-JD (N.D. Cal. July 21, 2017), ECF No. 349 ("In determining the amount of damages, if any, to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in the evidence. You may not award damages based on sympathy, speculation or guesswork.").

1    **NEKTAR'S POSITION**

2         Each sentence in Nektar's proposed instruction is drawn directly from the New York Civil

3    Pattern Jury Instructions or Ninth Circuit model instructions.  By contrast, the last paragraph of

4    Lilly's version adds (without citation) language that is found in neither of Lilly's cited sources,

5    including extraneous references to  "dispassionate common sense," "sound discretion," "reasonable

6    inferences," and "sympathy."  *See* Donato, J. Standing Order on Civ. Cases ¶ 23 ("All case citations

7    and factual statements must be completely accurate. A citation to a case, statute or other authority

8    is counsel's representation to the Court that the authority stands for the proposition asserted and is

9    good law.")   There is no need for this additional language, which either deviates from or

10   unnecessarily repeats the model language.  The Court should reject these additions and give Nektar's

11   proposed instruction instead.

**LILLY'S POSITION**

The Court should adopt Lilly's proposed jury instruction regarding damages because it better aligns with the Ninth Circuit Pattern Instructions and instructions that this Court has provided in the past.

*First*, Nektar struck three sentences from Lilly's proposed instruction that this Court has given—verbatim—in a prior case. Amended Final Jury Instructions at 61, *Telesocial v. Orange*; No. 14-cv-3985-JD (N.D. Cal. July 21, 2017), ECF No. 349 ("In determining the amount of damages, if any, to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in the evidence. You may not award damages based on sympathy, speculation or guesswork."). The Court should include these sentences, since they correctly instruct the jury on factors they may and may not consider when determining damages and are similar to that provided in the Ninth Circuit pattern instructions. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 5.1 ("It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.").

*Second*, Lilly's proposed instruction, unlike Nektar's, instructs the jury that Nektar must prove damages by a preponderance of the evidence. Such an instruction is critical to prevent juror confusion regarding Nektar's burden to prove damages given that the instruction also references different standards related to damages as well (such as "reasonable certainty"). It is important that the jury understand and hold Nektar to its burden of proof on damages, as this Court has instructed in the past. *See* Final Jury Instructions at 18, *Monahan Pacific Corp. v. Travelers Prop. Cas. Co. of Am.*; No. 22-cv-3593-JD (N.D. Cal. Sept. 26, 2024) (Donato, J.), ECF No. 74 ("Plaintiffs have the burden of proving damages by a preponderance of the evidence."); Ninth Circuit Manual of Model Civil Jury Instructions, § 5.1 (same).

**DISPUTED INSTRUCTION NO. 18**

**RE REPUTATIONAL DAMAGES**

**OFFERED BY LILLY**

You may not award Nektar damages to compensate Nektar for any alleged injury to its reputation.


Source: 2025.03.27 Hearing Transcript at 21:20-22 (The Court: "Based on what counsel for Nektar is saying, there will be no claim for damages in this case for reputational injury to Nektar.").

1  **LILLY'S POSITION**

2      Lilly's proposed instruction on Reputational Damages is necessary to hold Nektar to its

3  representation in court that it was "not going to seek any damages based on injury to [its] reputation."

4  ECF 165 at 18:17-18.  Subsequent to this representation, the Court held that "based on what counsel

5  for Nektar is saying, there will be no claim for damages in this case for reputational injury to

6  Nektar."  *Id.* at 21:19-24.  Based on this Order, Lilly was denied discovery related to the alleged

7  prospective partners who declined to work with Nektar.  *Id.*  It is important that the jury understand

8  what types of damages may be awarded when it determines what (if anything) it should award

9  Nektar for damages.

10      Even if the Court grants Lilly's Motion in Limine No. 1, this instruction is still important to

11  ensure that the jury does not award damages for any perceived harm to Nektar's reputation, even if

12  counsel stops short of directly arguing such harm.  For example, it would be improper for the jury

13  to assume that Nektar's lack of a current development partner for Rezpeg was a harm caused by

14  Lilly.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **NEKTAR'S POSITION**

2         Lilly's proposed instruction is unnecessary, because Nektar will not seek reputational

3    damages at trial, nor do its experts incorporate reputational harm in their damages models.  *See*

4    3/27/25 Hearing Tr. at 18:4-6, 21:9-10.  Accordingly, it is not necessary and potentially confusing

5    for the jury to instruct the jury to disregard and/or reject a claim for damages that is not being made.

6    To the extent that there is any confusion about what reputation-related evidence will be introduced

7    at trial, such disputes should be resolved via evidentiary objections, not jury instructions.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DISPUTED INSTRUCTION NO. 19

## RE LIMITATION ON LIABILITY

## OFFERED BY LILLY

You may not award remote, speculative, punitive, or special damages, including lost profits. Under the License Agreement, Nektar agreed that it could not recover these damages.

<u>Source</u>: License Agreement § 10.6.

**LILLY'S POSITION**

The Court should instruct the jury that it may not award damages that are inconsistent with the parties' limitation of liability provision. Without such an instruction, there is a substantial risk that the jury could find such damages are recoverable when they are not. Under the License Agreement, Lilly and Nektar agreed that, except in cases of gross negligence or willful misconduct, "in no event shall either Nektar or Lilly be liable for remote, speculative, punitive or exemplary, or other special damages, ***including lost profits***." ECF 206-2 (License Agreement) § 10.6 (emphasis added). Nektar concedes that this limitation of liability provision is enforceable under New York Law, *see* ECF 227 at 22-23, and courts regularly find that similar provisions bar claims for lost profits and other remote, speculative, punitive, or special damages. *That's What She Said, Inc. v. Gutter Games Ltd.*, 2024 WL 3678473, at *18 (S.D.N.Y. Aug. 5, 2024) (granting summary judgment and holding limitation enforceable, where license agreement stated "in no event will either party be liable for any ... consequential damages, including but not limited to ... lost profits or revenue"); *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 423 (S.D.N.Y. 2004) (similar).

Through their opposition to this proposed instruction, Nektar attempts to evade the parties' contractual agreement to limit recoverable damages. Nektar plainly intends to make harm to Rezpeg's future profits a central part of its damages case. As Nektar's expert explained, Nektar's approach seeks to ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████ ECF 210, Ex. 3, ¶76. Whether Nektar calls this measurement "lost profits" or diminution of "an income-producing asset," both are remote, speculative, and "[s]pecial or consequential damages," all of which are foreclosed under the Agreement. *Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d Cir. 2000) (internal quotations omitted). Thus, instructing the jury on damages without noting the parties' limitation of liability provision risks the jury believing it may award non-recoverable damages.

There is no basis for instructing the jury on an exception to this liability limitation (for "gross

1  negligence" or "willful misconduct") that plainly does not apply.  *See* ECF 237 (Lilly's MSJ Reply)

2  at 6-7.  Nektar forfeited such an argument by failing to identify a single fact in support of its

3  allegation of "gross negligence or willful misconduct" in Opposition to Lilly's Motion for Summary

4  Judgment.  ECF 228 at 22-23.  There is no evidence that Nektar could meet this high standard, where

5  even a "deliberate abandonment of a contractual obligation" does not qualify.  *Metro. Life Ins. Co.*

6  *v. Noble Lowndes Int'l, Inc.*, 600 N.Y.S.2d 212, 216 (1993), *aff'd*, 84 N.Y.2d 430, 643 N.E.2d 504

7  (1994).  Accordingly, Lilly respectfully requests that the Court provide Lilly's proposed instruction

8  on limitation of liability.

1    **NEKTAR'S POSITION**

2          Lilly's proposed instruction is improper, inaccurate and unnecessary.  As a preliminary

3    matter, there is already an instruction on damages, that is drawn directly from model jury

4    instructions, and which adequately instructs the jury as to the types of damages they may award.

5          Further, Lilly's proposed instruction is improper and factually incorrect.  The provision of

6    the parties' License Agreement that Lilly selectively excerpts *does* permit the recovery of

7    "REMOTE, SPECULATIVE, PUNITIVE OR EXEMPLARY, OR OTHER SPECIAL

8    DAMAGES, INCLUDING LOST PROFITS" when such damages "ARIS[E] OUT OF THE

9    GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE LIABLE PARTY."  Dkt. 33-2

10   (License Agreement) § 10.6.  Whether Lilly engaged in gross negligence or willful misconduct is

11   an issue of fact for the jury.  *See* Dkt. 227 at 22-23.  Lilly cannot preemptively foreclose categories

12   of damages based on a misleading excerpt of a disputed contract provision.

13         Lilly's instruction also risks confusing the jury.  As Nektar has explained (and case law

14   confirms), the damages Nektar is seeking for diminution of value to Rezpeg are not lost profits or

15   special damages, but general damages, which are not included under this liability limitation.  *See*

16   Dkt. 227 at 20-22.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**DISPUTED INSTRUCTION NO. 20**

**GROSS NEGLIGENCE OR WILLFUL MISCONDUCT**

**OFFERED BY NEKTAR**

4        Gross negligence or willful misconduct is conduct that smacks of intentional wrongdoing or

5    evidences a reckless indifference to the rights of others.

6

7        Source:  *Deutsche Lufthansa AG v. Boeing Co.*, 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2,

8    2007) (adapted to fit parties and claims); *Smithkline Beecham Corp. v. Abbott Labs*, 2011 WL

3903190, at *6 (N.D. Cal. Sept. 6, 2011).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **NEKTAR'S POSITION**

2        This proposed instruction is necessary, because Lilly will argue Nektar's damages are

3    precluded under the License Agreement's provision that bars recovery of "REMOTE,

4    SPECULATIVE, PUNITIVE OR EXEMPLARY, OR OTHER SPECIAL DAMAGES,

5    INCLUDING LOST PROFITS." Dkt. 33-2 (License Agreement) § 10.6. Nektar's general damages

6    for lost asset value do not fall under this provision (*see* Dkt. 227 at 20-22). But even if they did, the

7    provision Lilly intends to invoke allows recovery when such damages "ARIS[E] OUT OF THE

8    GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE LIABLE PARTY." Absent an

9    instruction on what the last clause means, the jury will be left to speculate on whether the standard

10   is met. To assist the jury, therefore, Nektar's proposed instruction is drawn directly from New York

11   case law, and offers a simple, easily understandable explanation of the License Agreement's

12   language.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **LILLY'S POSITION**

2          Lilly opposes Nektar's proposed instruction on Gross Negligence or Willful Misconduct as

3    unnecessary and irrelevant.  Such an instruction should not be given, as it would only be relevant if

4    the jury could find that the exception to the limitation of liability provision of the Agreement applies.

5    As explained in Lilly's Position Statement re Disputed Instruction re Limitation on Liability, there

6    is no basis for instructing the jury on this exception; it plainly does not apply.  *See also* ECF 237

7    (Lilly's MSJ Reply) at 6-7.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STIPULATED INSTRUCTION NO. 21

2

### RE DOUBLE RECOVERY

3    Nektar seeks damages from Lilly under more than one legal theory.  However, each item of

4  damages may be awarded only once, regardless of the number of legal theories alleged.  If Nektar's

5  breach of contract and implied covenant claims result in a damage award to compensate Nektar for

6  the same loss or injury, only one award can be made.

7

8  <u>Source</u>: *Ostano Commerzanstalt v. Telewide Systs., Inc.*, 880 F.2d 642, 649 (2d Cir. 1989) (double
recovery impermissible); CACI (2025), § 3934 (adapted to fit parties and claims).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**STIPULATED INSTRUCTION NO. 22**

2

**RE DUTY TO DELIBERATE**

3    Before you begin your deliberations, elect one member of the jury as your presiding juror.

4 The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in

5 court.

6    You shall diligently strive to reach agreement with all of the other jurors if you can do so.

7 Your verdict must be unanimous.

8    Each of you must decide the case for yourself, but you should do so only after you have

9 considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

10    It is important that you attempt to reach a unanimous verdict but, of course, only if each of

11 you can do so after having made your own conscientious decision.  Do not be unwilling to change

12 your opinion if the discussion persuades you that you should.  But do not come to a decision simply

13 because other jurors think it is right or change an honest belief about the weight and effect of the

14 evidence simply to reach a verdict.

15

16 Source: Ninth Circuit Manual of Model Civil Jury Instructions, § 3.1.

17

18

19

20

21

22

23

24

25

26

27

28

# STIPULATED INSTRUCTION NO. 23

## RE CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, § 3.2.

1

2

**STIPULATED INSTRUCTION NO. 24**

**RE USE OF NOTES**

3

4

5

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

6

7

8

<u>Source</u>: Final Jury Instructions at 22, *Erica Frasco, et al. v. Flo Health Inc., et al.*; No. 3:21-cv-00757-JD (N.D. Cal. July 31, 2025), ECF No. 744.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**STIPULATED INSTRUCTION NO. 25**

2

**RE COMMUNICATION WITH COURT**

3      If it becomes necessary during your deliberations to communicate with me, you may send a

4   note through Ms. Clark, signed by any one or more of you.  No member of the jury should ever

5   attempt to communicate with me except by a signed writing, and I will respond to the jury

6   concerning the case only in writing or here in open court.  If you send out a question, I will consult

7   with the lawyers before answering it, which may take some time.  You may continue your

8   deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone

9   -- including me or Ms. Clark -- how the jury stands, numerically or otherwise, on any question

10  submitted to you, including the questions of Lilly's liability or Nektar's liability, until after you have

11  reached a unanimous verdict or have been discharged.

12

13  <u>Source</u>: Final Jury Instructions at 23, *Erica Frasco, et al. v. Flo Health Inc., et al.*; No. 3:21-cv-
14  00757-JD (N.D. Cal. July 31, 2025), ECF No. 744 (adapted to fit parties).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STIPULATED INSTRUCTION NO. 26

2

### RE RETURN OF VERDICT

3      A verdict form has been prepared for you.  After you have reached unanimous agreement on

4  a verdict, your presiding juror should complete the verdict form according to your deliberations,

5  sign and date it, and advise Ms. Clark that you are ready to return to the courtroom.

6

7  Source: Final Jury Instructions at 24, *Erica Frasco, et al. v. Flo Health Inc., et al.*; No. 3:21-cv-
8  00757-JD (N.D. Cal. July 31, 2025), ECF No. 744.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    DATED:  September 25, 2025              Respectfully submitted,

2                                           QUINN EMANUEL URQUHART & SULLIVAN, LLP

3

4                                            _s/ Yury Kapgan_____

5                                             Yury Kapgan

6                                            _Counsel for Plaintiff Nektar Therapeutics_

7

8    DATED:  September 25, 2025              Respectfully submitted,

9                                           KIRKLAND & ELLIS, LLP

10

11                                           _s/ Ryan Moorman_____

12                                             Ryan Moorman

13                                           _Counsel for Defendant Eli Lilly and Company_

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)</u>

I, John ("Mickey") McCauley, am the ECF user whose user ID and password are being used to file this document. I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

<u>/s/ John McCauley</u>
John McCauley