# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

333 West Wolf Point Plaza
Chicago, IL 60654
United States

Ryan J. Moorman, P.C.
To Call Writer Directly:
+1 312 862 3408
ryan.moorman@kirkland.com

+1 312 862 2000
www.kirkland.com

Facsimile:
+1 312 862 2200

February 19, 2026

Honorable Judge James Donato
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

> Re:     *Nektar Therapeutics v. Eli Lilly and Company*, 23-cv-3943-JD (N.D. Cal.)

Dear Judge Donato,

The Court can and should deny Nektar's Motion to Compel the production of documents about Lilly's November 2024 decision to end the Phase 2 clinical trial for CD200R, a comparator treatment Lilly was developing for eczema in parallel with Rezpeg.  ECF No. 302.  Lilly produced documents related to CD200R during discovery, dated both before and *after* Lilly terminated its collaboration agreement with Nektar in April 2023.  In response to Nektar's new request, Lilly offered to produce documents *if* Nektar withdrew its contradictory Motion *in Limine* No. 7, which aims to "preclude Lilly from introducing evidence or argument concerning its conduct in developing certain drugs *after* the parties' License Agreement terminated[.]"  ECF No. 264 at 3.  Nektar refused, filed this Motion to Compel, and Lilly has since produced everything Nektar requests.

Nektar's Motion to Compel seeks the same kind of post-collaboration comparator documents that it simultaneously moves to exclude at trial in its Motion *in Limine* No. 7.  But these documents cannot both be relevant (justifying its new document request) and irrelevant (the basis of its motion *in limine*).  Nektar does not explain how it justifies seeking post-termination comparator discovery while simultaneously asking the Court to exclude the same evidence at trial.  Instead, it waives off the inconsistency by citing cases stating that "discoverable information need not be admissible at the trial."  ECF No. 302 at 3.  But neither of the two cases Nektar cites involve a party that is moving to compel information after the close of fact discovery while also seeking to exclude the same information at trial, as Nektar does here.  Rather, the courts in both cases found the information sought was indeed admissible; Nektar has not cited any case where a court permitted discovery into materials it deemed inadmissible.  *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 286 (C.D. Cal. 1998); *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, 2007 WL 4166030, at *3 (N.D. Cal. Nov. 19, 2007).

Moreover, the court in *Oakes* permitted discovery into counter-defendants' finances because "one of the purposes behind the broad federal discovery rules is to facilitate settlement, and such financial information is valuable in assisting both sides in making a realistic appraisal of the case, and may lead to settlement and avoid protracted litigation."  *Oakes*, 179 F.R.D. at 286.  There is no such financial consideration here for the information Nektar seeks both to compel and exclude.  And in *Abbott*, the admissibility dispute centered on whether a settlement agreement was privileged under Rule 408 (the court ordered production with redactions), unlike Nektar's relevancy arguments in Motion *in Limine* No. 7.  *Abbott*, 2007 WL 4166030, at *4.  When a party moves to compel documents on the express basis that they are "highly relevant,"—and its adversary produces them in response—

it cannot turn around and claim the court should exclude the evidence on the basis that it is irrelevant. ECF No. 302 at 1.[1]

Independent of the failures in Nektar's arguments, Lilly has mooted the Motion to Compel by producing the materials Nektar requests. On February 19, 2026, Lilly produced: (1) the final Clinical Study Report containing data from CD200R's Phase 2 eczema study; (2) existing final presentations discussing the unblinded results of that trial, and minutes from the same meetings; and (3) custodial documents about the unblinded data from the three Lilly custodians Nektar requested. There is no more relief to grant.

\*      \*      \*

Nektar says "Lilly cannot rely on CD200R's Phase 2 trial to defend its conduct while hiding what happened in that trial." ECF No. 302 at 2. Lilly is not hiding anything. It has produced the documents Nektar requested, and if the Court does not grant Lilly's pending summary judgment motion, then Lilly should be allowed to rely on these documents at trial and give the jury the entire story about CD200R—a comparator treatment Nektar has placed at the center of its breach theory. Indeed, only Nektar's Motion *in Limine* No. 7 seeks to hide "what happened in that [clinical] trial."

Respectfully submitted,

*Ryan J. Moorman*

*Counsel for Defendant Eli Lilly and Company*

---

[1] Nektar's Motion to Compel further confirms the Court should deny its Motion *in Limine* No. 7 because—by Nektar's own admission—Lilly's development of comparator treatment CD200R after the termination of the parties' collaboration is relevant in evaluating whether Lilly used comparable efforts on Rezpeg. Nektar expressly admits in its Motion to Compel that "CD200R is a key comparator drug to Rezpeg," and the documents related to the termination of the drug's Phase 2 eczema study—long after Lilly terminated the agreement—are "highly probative" and "directly relevant" to Lilly's CRE defenses. ECF No. 302 at 1. Nektar has also acknowledged "Lilly's development of drugs for case-relevant diseases (eczema, psoriasis, and lupus) ***both before and after*** execution of the Agreement" are necessary "[t]o prove breach." ECF No. 66 at 2 (emphasis added). Nektar further argued that limiting evidence to "the period that the agreement was effective" was "improper," and that the Court "should not be permitted to exclude relevant [evidence] arbitrarily based on when the drugs were developed." *Id.* at 2. Nektar's own experts ███████████████████████████████████. ECF No. 201-2 (Robbins Rep.) ¶ 158(iv). And Nektar's exhibit list shows that it intends to introduce evidence of CD200R's development, including post-termination events, in support of its breach claims.