QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Diane M. Doolittle (Bar No. 142046)
  dianedoolittle@quinnemanuel.com
  Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
  Suong Nguyen (Bar No. 237557)
  suongnguyen@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000

  David M. Elihu (Bar No. 303043)
  davidelihu@quinnemanuel.com
  Jimmy Bieber (Bar No. 301639)
  jimmybieber@quinnemanuel.com
  Julia Choe (Bar No. 287038)
  juliachoe@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Plaintiff*
*Nektar Therapeutics*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>Plaintiff,<br><br>vs.<br><br>ELI LILLY & CO.,<br><br>Defendant. | CASE NO. 3:23-cv-03943-JD<br><br>**PLAINTIFF NEKTAR THERAPEUTICS' STATEMENT ON MILESTONE PAYMENTS**<br><br>Hon. James Donato |

Pursuant to the Court's March 18, 2026 Order, Nektar submits this statement on whether Lilly's "termination of the contract, at Nektar's urging, constitutes an intervening cause such that recovery of milestone payments as damages cannot be allowed under New York contract law." Dkt. 312.[1] As the Court's Order reflects, this is an alternative, independent theory of recovery for Nektar; the Court denied Lilly's motion for summary judgment on Nektar's "diminution in value" theory. *Id.*

For several reasons, the answer to the Court's question is no. ***First***, well-settled New York contract law holds that an intervening cause breaks the causal chain only when it is an independent act that is so attenuated from the defendant's conduct that responsibility for the injury should not be attributed to them. Here, Nektar urging Lilly to return Rezpeg once it became clear that Lilly was refusing to comply with its obligations was not independent of Lilly's breaches—it followed them and was their direct and foreseeable consequence. ***Second***, there is no evidence that Nektar compelled the License Agreement's termination, and under New York law, Lilly's own conduct cannot be an intervening cause. ***Third***, the License Agreement provides that termination does not extinguish remedies for pre-termination breaches. ***Fourth***, New York law confirms that Nektar may recover milestone payments notwithstanding Lilly's at-will termination. ***Finally***, summary judgment is inappropriate because, under New York law, causation disputes are reserved for the jury.

## I.    LEGAL STANDARD

Under New York law, "[o]ne who violates his contract with another is liable for all the direct and proximate damages which result from the violation." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004). To recover contract damages, "a plaintiff must prove that a defendant's breach" both "*directly and proximately caused* his or her damages." *Id.* To establish proximate cause, a plaintiff must demonstrate that the damages are not "so remote as not to be directly traceable to the breach" or "the result of other intervening causes." *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 2021 WL 1941878, at *17 (S.D.N.Y. May 14, 2021). "To state the inverse of this rule, liability *subsists* '[w]hen . . . the intervening act is a natural and foreseeable consequence of a

---

[1] Lilly did not move for summary judgment on the grounds that Nektar has not established proximate cause; it argued termination was an intervening cause that precludes recovery of milestone payments as an independent category of damages. Dkt. 210-1 ("Lilly MSJ") at 12-13.

circumstance created by [the] defendant.'" *Hain v. Jamison*, 28 N.Y.3d 524, 529 (2016) (emphasis in original). A plaintiff does not need to establish that the defendant's acts were the sole cause of its injury; rather, proximate cause is established "if the defendant's breach of duty was a 'substantial factor' in producing the damage." *Coastal Power Int'l, Ltd. v. Transcon. Cap. Corp.*, 10 F. Supp. 2d 345, 366 (S.D.N.Y. 1998); *see also Bank Midwest, N.A. v. Hypo Real Est. Cap. Corp.*, 2010 WL 4449366, at *4 (S.D.N.Y. Oct. 13, 2010) ("The existence of other potential causes does not negate a finding that [defendant's] actions were a proximate cause of [plaintiff's] injury.")

"An intervening act by a third party does not necessarily break the causal connection between the defendant's [breach] and a plaintiff's injury." *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 395 (E.D.N.Y. 2004). "It is only where the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, that it may possibly break the causal nexus." *Hain*, 28 N.Y.3d at 529 (cleaned up); *see also NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 2016 WL 3098842, at *6 (S.D.N.Y. June 1, 2016) ("To break the legal chain, the intervening act must have been of such an extraordinary nature or so attenuated from the defendants' conduct that responsibility for the injury should not reasonably be attributed to them."); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at *14 (S.D.N.Y. Aug. 31, 2016) (same). "An act is not an intervening cause if it 'is a natural and foreseeable consequence of a circumstance created by defendant.'" *Optima Media Grp.*, 2021 WL 1941878, at *21. Further, where the intervening act "consists of conduct by the plaintiff, that conduct must [also] be . . . blameworthy in some way." *Royal Park Invs.*, 2016 WL 4613390, at *14.

## II.   ARGUMENT

### A.   Nektar Urging Lilly to Return Rezpeg Was Not an Intervening Cause

To establish that Nektar urging Lilly to return Rezpeg was an intervening cause, Lilly must show that any such "urging" was "independent" from its breaches or "extraordinary under the circumstances," and "blameworthy" in some respect. *Hain*, 28 N.Y.3d at 529; *Royal Park Invs.*, 2016 WL 4613390, at *14; *NAF Holdings*, 2016 WL 3098842, at *6. Lilly cannot make this showing because Nektar's urging was inescapably intertwined with Lilly's breaches and foreseeable under the circumstances. *Hain*, 28 N.Y.3d at 529.

The record confirms this point. Nektar's urging for Rezpeg's return came after a host of suspect and detrimental development decisions that Lilly applied to Rezpeg and no other drug, as well as Lilly's repudiation of the contract. For example, Nektar's urging came on the heels of Lilly spending at most a few hours in deciding to terminate Rezpeg's lupus development—a determination that typically takes Lilly "████." Dkt. 228-1 ("Nektar MSJ Opp.") at 10. It did so despite Rezpeg demonstrating market-leading efficacy in the ████████████████. *Id*. at 9. Nektar's urging came 19 months after Lilly declared that Rezpeg had established "████████" in its Phase 1 atopic dermatitis trial, a success that should have meant a swift advancement to a phase 2 trial, which Lilly never commenced. *Id.* at 4. This was ████; privately, Lilly ████████████ and admitted that its pretextual Phase 2 study design changes were really meant to "████████████████" and cause "████████████████." *Id*. at 5. And Nektar's urging came after Lilly informed Nektar that it would only proceed with Rezpeg's Phase 2 atopic dermatitis trial if ████████, directly contradicting Lilly's obligations. Dkt. 210-44 at 28; *see also* Dkt. 210-2 ("License Agreement") at § 4.11(a)(ii) (obligating Lilly to ████████████████).

These breaches caused Nektar's termination request. As Nektar's Chief Executive Officer Howard Robin explained, Nektar asked Lilly to return Rezpeg because Nektar was "very disappointed in the way [Lilly] . . . performed under the contract" and believed Lilly was "intentionally slowing [Rezpeg] down for anti-competitive reasons." Dkt. 210-3 at 139:4-140:19; *see also id*. at 140:20-24 (Nektar urged Lilly to return Rezpeg so Nektar "could develop it properly"). Nektar's "urging" was a response to a breach, not independent of it.

Lilly also has not identified any evidence, or even argued, that Nektar urging Lilly to terminate was improper or blameworthy. To the contrary, it was an understandable reaction to Lilly's misconduct. *Cf. Nat'l Mkt. Share*, 392 F.3d at 524, 528 (intervening cause where plaintiff's principal took funds meant for plaintiff and "deposited the check into his own personal bank account" in order "to pay off various corporate and personal debts"); *Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 446 (S.D.N.Y. 2018) (boxer precluded from recovering for canceled fight where boxer's positive drug test constituted intervening cause).

Beyond being an understandable response to Lilly's misconduct, Nektar had an obligation to take reasonable steps to mitigate its damages, including by seeking Rezpeg's return to Nektar so it could be "properly" developed. Dkt. 210-3 at 140:20-24; *see Alta Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 159–60 (2d Cir. 2026) ("Under New York law, a plaintiff has a duty to take reasonable steps to mitigate its damages . . . . A duty to mitigate damages arises when (1) a contract is breached and (2) it appears that the breaching party has abandoned or repudiated his obligations under the contract."). Indeed, upon the drug's return, Nektar has continued with Rezpeg's development, albeit on a significantly delayed timeframe due to Lilly's misconduct and breaches.

Nektar's request that Lilly return Rezpeg so Nektar could take over its development was therefore not "extraordinary" or "attenuated" from Lilly's conduct. Nor was it "blameworthy." It was a "natural and foreseeable reaction" to circumstances created by Lilly. It cannot be an intervening cause. *Optima Media Grp.*, 2021 WL 1941878, at *21; *see also Venture Grp. Enters., Inc. v. Vonage Bus. Inc.*, 2024 WL 4502995, at *12 (S.D.N.Y. Oct. 16, 2024); *Zahrey v. City of New York*, 2009 WL 54495, at *23-24 (S.D.N.Y. Jan. 7, 2009) (endorsing argument that plaintiff's postponement of bail hearing was not an intervening cause because it "was a result of Defendants' improper conduct"); *Hain*, 28 N.Y.3d at 529 (proximal cause chain is not broken if "the intervening act is a natural and foreseeable consequence of a circumstance created by defendant").

**National Market Share v. Sterling Is Easily Distinguishable.** *Nat'l Mkt. Share* does not compel a different result. In *Nat'l Mkt. Share*, the plaintiff company was indebted to the defendant bank, was waiting on a $1.75 million receivable from a third-party, and went out of business around one week after the defendant declined to fund the plaintiff's payroll checks. 392 F.3d at 523-24. One day after the defendant dishonored the plaintiff's checks, the plaintiff's principal received the $1.75 million receivable—which the defendant bank had a security interest in—and embezzled the funds, secretly depositing them into his personal account and using them to pay personal debts. *Id*. at 524.

The District Court held that the defendant breached the implied covenant of good faith by dishonoring the plaintiff's payroll checks but only awarded nominal damages, finding that the plaintiff's principal's actions were an independent wrongful act that broke the causal chain and led to the plaintiff going out of business. *Id*. at 524-25. Had the plaintiff's principal informed the defendant

that it had received the $1.75 million receivable and deposited it with the defendant, the District Court found that the plaintiff "in all likelihood, would have survived." *Id*. at 528. The Second Circuit affirmed, holding that both findings were supported by the record and "common sense." *Id*. at 529.

The contrast with this case could not be sharper. In *Nat'l Mkt. Share*, the intervening cause was an independent, wrongful act of embezzlement that was unconnected to the defendant's breach. *Id*. at 524-525. Here, Nektar urging Lilly to terminate was not wrongful, and as Mr. Robin explained, was a direct and foreseeable response to years of Lilly's breaches. Further, unlike the defendant's breach in *Nat'l Mkt. Share*, Lilly's breaches were not curable at the time of the alleged intervening act. *Id*. at 528. By the time Nektar urged Lilly to terminate, Lilly had irreparably damaged Rezpeg and had significantly delayed Rezpeg's development. Nektar MSJ Opp. at 19 (Lilly's pre-termination breaches delayed Rezpeg's development by ████████).

### B.    Lilly's Own Conduct Cannot Be an Intervening Cause

Nothing in the record suggests Nektar's "urging" somehow overbore Lilly's will or compelled Lilly to terminate. Indeed, Lilly has emphasized that the termination was within Lilly's "unilateral power" (Dkt. 210-1 ("Lilly MSJ") at 1) and a decision "Lilly was entitled to make" (Dkt. 238-1 ("Lilly MSJ Reply") at 2) and did after "assessing REZPEG's treatment potential" (Dkt. 054 ("Lilly Counterclaims") ¶ 69). Lilly offers no evidence of duress or coercion, and its letter terminating the License Agreement does not mention Nektar requesting that Lilly return Rezpeg.

That should end the inquiry—Lilly terminating the License Agreement on its own accord cannot be an intervening cause because a defendant's conduct definitionally cannot be "independent of or far removed from the defendant's conduct." *Hain*, 28 N.Y.3d at 529; *Royal Park Invs.*, 2016 WL 4613390, at *14. Both case law and treatises contemplate that the "intervening cause" that severs a defendant's liability for a contractual breach is conduct from a third party or a plaintiff—not the defendant itself. *See, e.g.*, *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980) ("Where *the acts of a third person* intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed.") (emphasis added); § 22:6. Causation, 28A N.Y. Prac., Contract Law § 22:6 ("The proximate cause test for an award of breach of contract damages, however, might still be met even when *the acts of a third party* intervene between

defendant's action and plaintiff's injury[.]") (emphasis added); Restatement (Second) of Torts § 440 (1965) ("A superseding cause *is an act of a third person or other force*[.]") (emphasis added).

Nektar has yet to identify (nor has Lilly) any cases where a *defendant's* conduct constituted an "intervening cause" that shielded *the same defendant* from liability. And for good reason—allowing a party to manufacture their own, prophylactic "intervening cause" would create a perverse incentive for defendants to scheme their way out of their own misconduct.

**C.    The License Agreement Expressly Allows Post-Termination Remedies**

Even if the License Agreement's termination at Nektar's urging could, in the abstract, constitute an intervening cause, the License Agreement's terms foreclose that possibility:

- **Section 10.6** includes a limitation-of-liability section that says nothing about Lilly's termination rights eliminating Nektar's right to seek milestone payments lost due to Lilly's breaches. *See* License Agreement § 10.6.

- **Section 11.3** allows Nektar to terminate the License Agreement in the event of a material breach by Lilly. *Id*. § 11.3(a).

- **Section 11.5** provides that "whether or not termination is effected, all other remedies will **remain available** except as the Parties have expressly agreed to otherwise herein." *Id*. § 11.5 (emphasis added).

- **Section 11.6** states that "termination by either Party for any reason **will not release either Party from any obligation that accrued prior** to the effective date of . . . **termination**." *Id*. § 11.6 (emphasis added).

Together, these provisions refute any argument that termination eliminates Nektar's right to seek damages for pre-termination breaches—damages which "accrued prior to the effective date of . . . termination." *See id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) ("New York courts are clear that breach of contract damages are to be measured from the date of the breach."). Termination thus cannot be an "intervening cause" because the License Agreement contemplates that claims survive it. Lilly also has identified no principled basis for why Nektar can seek pre-termination damages following a material breach if Nektar terminates, License Agreement §§ 11.3, 11.5, but somehow loses that right should Lilly terminate first (even at Nektar's urging).

Lilly's argument that the License Agreement's termination precludes recovery of lost milestone payments (and royalties) for pre-termination breaches impermissibly rewrites the License

Agreement and nullifies these provisions. *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 125 (2d Cir. 2001) (New York law) ("We refuse to interpret a contractual term in such a way as to nullify other provisions."); *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956) ("The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract[.]"). It also renders Lilly's obligation to use commercially reasonable efforts meaningless. Under Lilly's reading, Lilly could have spent *no* effort on Rezpeg, mothballed the drug for years until Nektar got wise, then invoked its at-will termination provision before achieving a milestone and "walk[ed] away . . . without incurring any additional obligations." Lilly MSJ at 12. That cannot be what the License Agreement provides or New York law permits.

Lilly's related argument that allowing recovery of milestones that Lilly failed to achieve prior to termination would "nullify" its termination rights is nonsensical. Nektar is not seeking to overturn the termination. It seeks damages for pre-termination breaches. Lilly's termination rights are not a "get-out-of-breach-free" card that allows Lilly to avoid damages for misconduct by simply terminating before it achieved any milestones. Lilly got exactly what it bargained for: the ability to walk away from its obligation to continue performing under the License Agreement.

**D.     New York Law Allows Recovery of Milestones Notwithstanding Termination**

Lilly's argument that terminating the License Agreement before a milestone was achieved precludes recovery of milestones as damages for pre-termination breaches is inconsistent with New York law. New York courts routinely find that a contract's lawful termination does not bar the recovery of future license payments or constitute an intervening cause if the defendant breached the contract during its lifespan. *See, e.g.*, *Optima Media Grp.*, 2021 WL 1941878, at *21-22 (collecting cases and holding under "principles of causation under New York law" that counter-defendant's "material breach of the Agreement was the direct and proximate cause of [counter-claimant's] loss of future license fee payments"); *Matter of Arb. between Cole Pub. Co. v. John Wiley & Sons, Inc.*, 1994 WL 532898, at *1-3 (S.D.N.Y. Sept. 29, 1994) (affirming award of lost profits under sales contract based on sales projection even though defendant "unilaterally terminated" the contract); *In re Indesco Int'l, Inc.*, 451 B.R. 274, 317-19 & n.222 (Bankr. S.D.N.Y. 2011). Courts in other jurisdictions are in accord. *See, e.g.*, *Johnson & Johnson v. Fortis Advisors LLC*, 2026 WL 89452, at *5-11, *22-23 (Del.

Jan. 12, 2026) (affirming award of milestone payments as damages for breaches of commercially reasonable efforts obligation that occurred from 2019-2020, even though milestones were not achieved before the defendant "shelved" the project in 2021) .

*Gilsey v. Wm. Hengerer Co.*, 147 N.Y.S.2d 210 (1955)—the only case Lilly cites to support its argument—is inapposite. This one-paragraph decision from 1955 involved a claim against a decedent's employer for a prospective, discretionary bonus under his employment contract. *Id*. The court held that because the decedent's employment contract was terminable at-will, there was no guarantee the bonus would have been paid had he not died. *Id*. The case did not involve pre-termination breaches, and the employer was not obligated to exercise CRE to attain the bonus. *Id*. No court has relied on or cited this case in the 70 years since it was decided. To the extent Lilly invokes additional employment or similar cases involving discretionary payments, they suffer from the same flaw: none involves a defendant's obligation to use CRE to obtain the at-issue payments.

### E. Proximate Cause Is a Jury Question

There is no basis to conclude that Nektar "urging" Lilly to return Rezpeg is an intervening cause, but at a minimum, the issue is one for the jury. New York courts are clear: "Proximate cause is left to the factfinder unless 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men' to find for the plaintiff on that issue." *NAF Holdings*, 2016 WL 3098842, at *6; *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 148 (S.D.N.Y. 2023); *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 101-02 (2d Cir. 2025) (reversing finding that intervening act was unforeseeable).

Nektar will prove at trial that Lilly's failure to develop Rezpeg with reasonable effort was a "substantial factor" in preventing Rezpeg from hitting developmental milestones and triggering earnout payments to Nektar. The theory is straightforward: if Lilly had functioned as a diligent, committed development partner, Rezpeg would have achieved the License Agreement's milestones. To the extent that Lilly contends otherwise, it is welcome to present its opposing case to the jury.

### III. CONCLUSION

For the foregoing reasons, Nektar respectfully request that the Court deny Lilly's motion for summary judgment on the recovery of milestone payments.

DATED:  April 6, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP

By:  /s/ Yury Kapgan
     Yury Kapgan
     Diane Doolittle
     David Elihu
     Suong Nguyen
     Jimmy Bieber
     Julia Choe

     *Attorneys for Plaintiff Nektar
     Therapeutics*