Mark C. Holscher, P.C. (SBN 139582)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
Email: mark.holscher@kirkland.com

Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

Diana M. Watral, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: diana.watral@kirkland.com
Email: gbalassa@kirkland.com
Email: ryan.moorman@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>          Plaintiff,<br><br>     v.<br><br>ELI LILLY & CO.,<br><br>          Defendant. | CASE NO.  3:23-CV-03943-JD<br><br>**ELI LILLY AND COMPANY'S SUPPLEMENTAL STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:          Hon. James Donato<br>Hearing Date:  To be determined by the Court<br>Time:          To be determined by the Court<br>Courtroom:     11, 19th Floor |

Nektar's choice to urge Lilly to terminate the Agreement at-will was an "intervening cause" that precludes recovery of milestone payments and royalties that had not accrued at the time of termination. *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir. 2004).  Under New York law, when a plaintiff makes a choice it "knew or should have known" would have consequences, that choice— not the defendant's alleged conduct—is the "proximate cause" of any resulting harm.  *New Horizons Amusement Enters. v. Zullo*, 301 A.D.2d 825, 827 (N.Y. App. Div. 2003).  Here, Nektar concededly ████████████████████████████████████████████████████████████████████████████████. ECF 210-3, Robin Tr. 143:21-144:6, 151:20-152:5.  Nor could Nektar have thought anything else, because the Agreement's plain text cuts off unaccrued payment "obligations" upon termination and grants Lilly the right to terminate at-will—and, in exchange, gives Nektar full rights to REZPEG's economic upside, Lilly's $150 million threshold payment, and nine-figures' worth of research-and-development expenses. ECF 210-2, Agreement §§11.2, 11.4(b)(i), 11.6.

Indeed, binding New York law holds that ***any*** exercise of an at-will termination right (regardless of the reasons) bars recovery of unaccrued contractual payments.  *Chemimage Corp. v. Johnson & Johnson*, 2024 WL 3758814, at *5 (S.D.N.Y. Aug. 12, 2024) (collecting cases).  Because it is undisputed that no milestone was achieved before the at-will termination, the Court should hold that Nektar, having prompted Lilly to exercise its at-will termination right, is barred from seeking damages based on unaccrued milestones (or similar payments like royalties).

First, fundamental causation principles establish that Nektar's choice to repeatedly ███████████ ████████████████████████████████ means that Nektar cannot premise a damages claim on the consequence of the termination: the lack of milestone and royalty payments that might have come due if the Agreement had continued.  ECF 210-3, 151:20-152:5; *accord* ECF 210-39, LLY02042216 at 218-19. When a party to a contract makes a choice it "knew or should have known" would have consequences, that choice defeats "proximate cause" as a matter of law.  *New Horizons*, 301 A.D.2d at 827.  This rule applies even if the defendant has "failed to fully perform" its portion of the bargain, because "the plaintiff's own action" becomes "the direct cause of the claimed damages."  *E.g.*, *34-35th Corp. v. 1-10 Indus. Assoc., LLC*, 103 A.D.3d 709, 710-711 (N.Y. App. Div. 2013) (renter's choice to move into premises despite

landlord's "breach" of promise "to alleviate excessive moisture" was the "proximate[] cause[]" of damage to renter's property).

Applying these principles, courts in New York (and nationwide) hold that a plaintiff's decision to terminate a contract defeats proximate causation and thus prevents recovery of future payments the plaintiff might have received under the contract. *E.g.*, *ATC Healthcare Servs., Inc. v. Pers. Sols., Inc.*, 2006 WL 3758618, at *11 (E.D.N.Y. Dec. 19, 2006). In *ATC*, a franchisor terminated its contract with a franchisee due to the franchisee's "failure to comply with the terms of the Agreement," and then sued for damages including "the anticipated revenue stream lost as a result of the unexpired term of the Agreement." *Id.* at *2-3, *5. The court held that the franchisee's "breaches did ***not*** cause the lost royalty damages about which [the franchisor] complains." *Id.* at *11 (emphasis added). Rather, it was the franchisor's "cho[ice] to terminate the Agreement, thereby depriving itself of any future royalties from revenue that [the franchisee] would have generated under that Agreement," which "caused" the damages. *Id.* "[M]ultiple cases" in other courts agree that a plaintiff's decision to "terminate[]" a contract is what "proximately cause[s] the future losses" of potential earnings under the contract, "even when the breach was caused by the [defendant]." *Dunkin' Donuts, Inc. v. Arkay Donuts, LLC*, 2006 WL 2417241, at *5 (D.N.J. Aug. 21, 2006) (collecting cases).[1]

These principles foreclose Nektar's argument that the termination is irrelevant because Lilly's alleged breaches "took place long before the termination." ECF 228-1, Nektar MSJ Opp. at 24. That is the argument the courts in *ATC*, *34-35th Corp.*, and *National Market Share* rejected. In each case, the defendant's breach preceded the plaintiff's decision, yet the court still held that the plaintiff's subsequent

---

[1] A handful of cases have held, under different circumstances, that a plaintiff's decision to terminate ***for cause*** does not always sever its right to collect payments it expected to earn. *E.g.*, *Radisson Hotels Int'l, Inc. v. Majestic Towers, Inc.*, 488 F. Supp. 2d 953, 961-63 (C.D. Cal. 2007) (explaining that "a specific contractual provision" made the defendant "liable for [plaintiff's] lost future profits resulting from [plaintiff's] decision to terminate"). To the extent these cases are legally sound, they are irrelevant here for three reasons. First, Nektar did not terminate the contract for cause; it asked Lilly to exercise its right to terminate at will. Second, the specific language of ***this*** Agreement provides that termination (whether at will or for cause) cuts off future payments. *Infra* 3-4; *In re Worldcom, Inc.*, 424 F. App'x 32, 33 (2d Cir. 2011) (explaining that a plaintiff's termination precluded future payments under the contract's text). Third, even if a for-cause termination might sometimes allow a plaintiff to seek payments it expected to earn, New York law is exceptionally clear that an ***at-will*** termination severs any claim to future payments. *Infra* 4-6.

choice—not the earlier breach—was the proximate cause of the asserted damages. *See ATC*, 2006 WL 3758618, at *2, *11 ("plaintiff terminated the Agreement due to defendants' failure to comply with the terms of the Agreement"); *Nat'l Mkt. Share*, 392 F.3d at 523-24, 528-29 (plaintiff's corporate representative deprived the company of additional funds after the defendant breached by not advancing funds); *34-35th Corp.*, 103 A.D.3d at 711 (plaintiff decided to move equipment onto premises despite landlord's breach of agreement to remediate moisture). Indeed, the whole premise of the intervening-cause doctrine is that a plaintiff's subsequent choices—despite a purported earlier breach—means that the ultimate damages are not "directly and proximately caused by [the] defendant's breach." *Nat'l Mkt. Share*, 392 F.3d at 526-27 (brackets omitted).

Here, Nektar indisputably "knew or should have known" that termination would sever any claim to milestones and royalties given the plain text of the Agreement. *New Horizons*, 301 A.D.2d at 827. The Agreement repeatedly explains that termination cuts off future payments no matter the reason for termination (at-will or for-cause) or who precipitated it (Lilly or Nektar). For example, §11.4(b)(i) provides that upon "Termination by Nektar for Cause or by Lilly At Will," "all … rights and *obligations* of the Parties under this Agreement *shall terminate* … except as expressly provided." ECF 210-2 (emphases added). That extinguishing language applies to the milestone *and* royalty provisions,[2] which are not identified as surviving obligations. *Id.* §§6.2-6.4. Moreover, §11.6—entitled "Accrued and Surviving Obligations"—repeatedly illustrates that "termination of this Agreement" eliminates any duty to make contractual payments. *Id.* This section, again, does not identify the milestone and royalty provisions as surviving obligations. And it even says that "[§§]6.8 through 6.11"—which address mechanisms for the making of such payments—survive only "with respect to amounts that *become due prior to the effective date of expiration or termination*," thus confirming that there would be no payments for milestones that had not occurred as of the "date of … termination." *Id.* (emphasis added).

Given this express language, Nektar's choice to demand termination—even if supposedly due to Nektar's belief that Lilly had breached—caused Nektar to miss out on potential future payments. Nektar

---

[2] Although the Court's minute entry addresses Nektar's claim for milestone payments, the at-will termination provision also cuts off any claim to royalties, which could not accrue until commercial sales (which did not occur before termination). ECF 210-1, Lilly MSJ at 12-13 ("Nektar Cannot Recover Additional Milestone Or Royalty Payments.").

cannot eviscerate the plain text of the Agreement by seeking a termination that would textually foreclose its right to receive milestone "obligations," *id.* §11.4(b)(i), and then turn around and seek damages based on unreceived milestones.

The Second Circuit's decision in *In re Worldcom, Inc.*, underscores that similar contractual language cutting off future payments means that a plaintiff's decision to terminate—and not the purported breaches motivating the termination—is the operative cause of lost future payments. 424 F. App'x at 33.[3] There, the contract explained that upon termination "for any reason, each Party shall remain liable for those obligations that accrued prior to the date of such termination." *Id.* Thus, when the plaintiff "deci[ded] to terminate the agreement" based on a supposed "material breach" by the defendant, the Court held that the plaintiff could not recover damages "for the anticipated term of the contract" that might have accrued "absent [the] early termination." *Id.* The plaintiff's "decision to terminate" was "fatal to its claims." *Id.*

So too here. Given the text of the Agreement, Nektar knew that termination—even if due to Nektar's alleged dissatisfaction with Lilly's performance—would sever any claim to future payments. That eliminates proximate causation as a matter of law.[4]

Second, the ***at-will*** termination here forecloses any additional contractual payments under hornbook New York law—even beyond the plain-text consequences of termination, and even if Lilly decided to terminate the Agreement at-will on its own. As explained above, this Agreement's termination clause granted Lilly full power to terminate until REZPEG reached the point of ███████████

_____

[3] *Worldcom* involved Arizona law, but the Second Circuit performed a "plain language" analysis mirroring New York law. *Compare* 424 F. App'x at 33, *with Fritzsch v. Cnty. of Chenango*, 198 A.D.2d 650, 651 (N.Y. App. Div. 1993) ("[U]nambiguous provisions must be given their plain and ordinary meaning.").

[4] Although the plain text of the Agreement dictates the consequences of termination and thus is dispositive as a matter of law, Nektar also conceded in discovery that it knew termination meant Lilly would no longer be developing REZPEG and would no longer share in any future successes, as needed to trigger milestones and royalties. ECF 210-2, §§6.2-6.4. When Nektar demanded ███████████ that was because it ███████████ ECF 210-3, 140:20-141:22, 143:4-144:6. Nektar ███████████ ███████████ *Id.* 144:2-6. Nektar repeatedly ███████████ and ███████████ *Id.* 151:20-152:5; *accord* ECF 210-39 at 218-19 (Nektar email seeking outright "termination" without further development by Lilly); ECF 210-40, LLY00736684 at 686-87 (same). Indeed, having convinced Lilly to terminate, Nektar sought to "waive[] the 90 day notice period" for an at-will termination and "*accelerate the timeline for termination*." ECF 210-41, LLY01347305 at 309 (emphasis added).

§11.2—which indisputably did not happen here, as REZPEG had not even entered Phase 3 trials.  ECF 210-6, Buthusiem Rep. ¶¶81-82.  Such a clause creates "an absolute, unqualified right to terminate."  *A.J. Temple Marble & Tile, Inc. v. Long Island R.R.*, 256 A.D.2d 526, 527 (N.Y. App. Div. 1998).  And New York courts consistently explain that a defendant's at-will termination—no matter the reasons—destroys a plaintiff's ability to seek contractual payments that might have been achieved in an alternative world.

The recent motion-to-dismiss decision in *Chemimage* (a case involving Nektar's law firm) could not be clearer on that point.  There, the defendant was "permitted to terminate ***without cause*** upon 120 days' notice and [a] payment of $40 million."  *Chemimage*, 2024 WL 3758814, at *2.  The court held that, if the defendant's termination was indeed without cause (the defendant asserted for-cause), the plaintiff's "damages would be limited to the $40 million termination fee … and any direct damages that it would have incurred in the 120-day period."  *Id.* at *5.  "That doom[ed] the vast majority of [the] requested damages," including "more than $140 million in ***milestone payments*** and $1.5 billion or more in ***royalty payments***"—the same damages Nektar seeks here—that would not "have been earned in the 120-day notice period."  *Id.* (emphases added).  The court explained that "the parties were far from commercializing any product"—thus "rul[ing] out the $1.5 billion or more in royalty payments."  *Id.* Similarly, the termination "rule[d] out milestone payments that [the plaintiff did] not allege it would have earned during the 120-day period after [the notice]."  *Id.*

Under this settled law, Nektar cannot recover any milestones or royalties unless they accrued ***before*** the effective date of the termination, and the undisputed record confirms that no milestones were due by July 22, 2023, which was 90 days after the April 23 termination.  *See* ECF 210-2, §11.2 (allowing at-will termination upon 90-days' notice).[5]  The first possible payment would have been a milestone due upon the "[f]irst patient treated … in a Phase III [s]tudy for a [p]roduct," and Nektar concedes that no Phase 3 trial for either indication (lupus and AtD) occurred—or could have occurred—by July 22, 2023.

---

[5] Because the 90-day notice period is irrelevant here (due to lack of milestone payments achieved in this window), Lilly assumes solely for present purposes that the Agreement would require payment of milestones achieved in this window.  But, in reality, Nektar sought to "waive[] the 90 day notice period" and demanded that Lilly stop work as soon as possible "to accelerate the timeline for termination."  ECF 210-41 at 309.  Additionally, a proper construction of the termination clause shows that the 90 days was just intended for "wind[ing] down" the Agreement and did not contemplate Lilly accruing new obligations for ***advancing*** REZPEG in that time.  ECF 210-2, §11.2.  Lilly also assumes solely for present purposes that any 90-day clock began to run on April 23, 2023.

*Id.* §6.2(b). The Phase 2 lupus results came back in ███████████ ECF 228-4, Ex. 80, Rao Rep. ¶30, and Nektar has not argued that Lilly was obliged to start a Phase 3 trial before August 2023. To the contrary, Nektar *admits* that Lilly was entitled to take "six months to a year" to analyze the February 2023 lupus results before deciding whether to start Phase 3. ECF 228-1 at 9-10. Nektar also concedes that a Phase 3 AtD trial would not have started until even later: a hypothetical world *without* █████ supposedly would have seen ███████████████████████████████████ ECF 228-4, Ex. 80, ¶¶86, 90. This case falls comfortably within *Chemimage*'s explanation that at-will termination "rules out milestone payments" and "royalty payments" because none were "earned during the [90]-day period after [termination]." 2024 WL 3758814, at *5.

Other "[c]ourts in New York and elsewhere" agree that at-will termination severs any right to unachieved contractual payments. *TNT USA Inc. v. DHL Exp. (USA), Inc.*, 2012 WL 601452, at *7 (E.D.N.Y. Feb. 23, 2012) (collecting cases). For example, *TNT* held that when a party's "conduct had the effect of" terminating a contract which granted that party "an unconditional right to terminate the Agreement without cause," the "damages [were] limited to the notice period." *Id.* at *7-8. And *Bitterman v. Gluck* held that when "defendants had an absolute right [to terminate] on thirty days' notice," damages "were limited to the thirty days following [termination]." 256 A.D. 336, 337 (N.Y. App. Div. 1939); *see also Gilsey v. Wm. Hengerer Co.*, 1 A.D.2d 758, 758 (N.Y. App. Div. 1955) (rejecting payment obligation when contract "could be cancelled on thirty days' notice of termination").

*            *            *

Nektar knew the consequences of at-will termination—as confirmed by both settled law and the terms of this very Agreement—and thus severed any claim to future payments. The Court should grant summary judgment against any effort by Nektar to seek damages based on milestones and royalty payments Nektar would have expected to receive but for Lilly's alleged breaches.

DATED:  April 6, 2026                    Respectfully submitted,


                                         *s/ Ryan Moorman*
                                         ───────────────────────────
                                           Mark C. Holscher, P.C. (SBN 139582)
                                           KIRKLAND & ELLIS LLP
                                           555 South Flower Street, Suite 3700
                                           Los Angeles, CA 90071
                                           Telephone: (213) 680-8400
                                           Facsimile: (213) 680-8500
                                           Email: mark.holscher@kirkland.com

                                           Emma Scott (SBN 352078)
                                           KIRKLAND & ELLIS LLP
                                           555 California Street, Suite 2700
                                           San Francisco, CA 94104
                                           Telephone: (415) 439-1400
                                           Facsimile: (415) 439-1500
                                           Email: emma.scott@kirkland.com

                                           Diana M. Watral, P.C. (admitted *pro hac vice*)
                                           Gabor Balassa, P.C. (admitted *pro hac vice*)
                                           Ryan J. Moorman, P.C. (admitted *pro hac vice*)
                                           KIRKLAND & ELLIS LLP
                                           333 West Wolf Point Plaza
                                           Chicago, IL 60654
                                           Telephone: (312) 862-2000
                                           Facsimile: (312) 862-2200
                                           Email: diana.watral@kirkland.com
                                           Email: gbalassa@kirkland.com
                                           Email: ryan.moorman@kirkland.com

                                         *Counsel for Defendant Eli Lilly and Company*