Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
Patrick Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.hurst@kirkland.com
Email: gbalassa@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: patrick.weeks@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NEKTAR THERAPEUTICS,

Plaintiff,

v.

ELI LILLY & CO.,

Defendant.

CASE NO. 3:23-CV-03943-JD

**ELI LILLY AND COMPANY'S MOTION *IN LIMINE* NUMBER ONE TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING NEKTAR'S ALLEGED REPUTATIONAL HARM**

| | |
|---|---|
| Judge: | Hon. James Donato |
| Hearing Date: | August 6, 2026 |
| Time: | 1:30 p.m. PT |
| Courtroom: | 11, 19th Floor |

## INTRODUCTION

The Court should hold Nektar to the representation it made in open court—that it was "not going to seek any damages based on injury to [its] reputation"—and bar Nektar from introducing at trial any evidence or argument that Lilly's conduct harmed Nektar's reputation, or that prospective business partners declined to partner with Nektar due to the impact of Lilly's conduct. ECF No. 165 at 18:17-18. Allowing such evidence or argument is contrary to the law of the case and would be unfairly prejudicial to Lilly. The Court held that, "[b]ased on what counsel for Nektar is saying, there will be no claim for damages in this case for reputational injury to Nektar." *Id.* at 21:19-24. The Court accordingly denied as moot Lilly's request for discovery from these prospective business partners, which would have allowed Lilly to test the allegations of Nektar witnesses that those potential partners were affected by a "[redacted]." Ex. 1, J. Ruddock Dep. Tr. at 171:24-172:6. It is therefore the law of the case that Nektar cannot claim (a) damages arising from reputational harm, or (b) that such harm hampered its attempts to find new development partners. Any argument or evidence that prospective development partners were turned off by Lilly's conduct or reputational harm not only runs afoul of the Court's order but would be unfairly prejudicial to Lilly, who was deprived of discovery into those interactions based on Nektar's promise that it would not seek damages based on injury to its reputation.

Despite these representations to the Court, Nektar now intends to introduce evidence about reputational harm and lost business partners at trial. Nektar knows that's not allowed. During the parties' meet and confer over this Motion, Nektar acknowledged it cannot, and will not, seek damages "***for***" reputational harm, but said it will argue that it sustained damages "***due to***" reputational harm that made it harder to secure a new development partner. That is a nonsensical, semantic distinction without a difference, and it is directly contrary to Nektar's representation to the Court—and the Court's ruling—that precluded Lilly from discovery of Nektar's business partners to test these assertions. Lilly now moves *in limine* to preclude Nektar from arguing or presenting evidence at trial of reputational harm or blaming Lilly for Nektar's difficulty in finding new development partners.

## BACKGROUND

Nektar's complaint asserts that Lilly's alleged conduct "severely tarnished Rezpeg," thereby harming Rezpeg's prospects in the marketplace. ECF No. 61 ¶ 3. During discovery, Nektar's witnesses

baldly claimed that [redacted] *See, e.g.* Ex. 1, J. Ruddock Dep. Tr. at 171:24-172:6. For example, Jennifer Ruddock, Nektar's Chief Business Officer, testified that [redacted]. *Id.* at 172:7-16.

To combat these allegations, Lilly sought discovery asking Nektar to identify any "potential partner" Nektar had "contacted or engaged" regarding efforts to fund or develop Rezpeg. ECF No. 139 at 2. After initially denying it had contacted any potential partners, Nektar amended its interrogatory responses two minutes before the close of fact discovery to identify, for the first time, several potential partners with whom it had discussed potential partnerships. *Id.* When Lilly sought leave to subpoena these third parties, Nektar resisted that discovery based on representations (that the Court adopted) that Nektar would not present evidence at trial that other partners would not work with Nektar after Lilly terminated the agreement, and that it would not pursue reputational damages:

> THE COURT: If this goes to trial, who are you going to put on as witnesses who are going to say, "I would have done a deal with Nektar, but this thing happened with Lilly and I thought so poorly of the company, I just couldn't do it"?
>
> NEKTAR COUNSEL: We're not going to, Your Honor. And we have expert reports on damages. We don't have an expert report that has reputational harm as a measure of damages.

ECF No. 165 at 17:24-18:6. On this basis, the Court denied Lilly's request for discovery, reasoning "if it's the case that there's no damages based on harm to reputation, you do not need [discovery from] these 11 business[es]." *Id.* at 19:9-11.

## ARGUMENT

Based on Nektar's representations that it was ***not*** presenting evidence of reputational harm and that it did not have an expert witness to quantify reputational harm damages, this Court ruled "there will be no claim for damages in this case for reputational injury to Nektar." *Id.* at 21:20-22. This Court's order, which is the law of the case, is dispositive for this Motion because it bars Nektar from introducing evidence or argument that its reputation was harmed by Lilly's alleged conduct, or that Nektar is entitled to recover anything as a result of that harm. "[I]ssues that a district court determines during pretrial

motions become the law of the case" to "maintain consistency during the course of [the] lawsuit." *Hardine v. Off. & Pro. Emps. Int'l Union*, 2010 WL 11506596, at *7 (C.D. Cal. Sept. 22, 2010) (collecting cases). Independently, judicial estoppel "preclude[s Nektar] from taking inconsistent positions" by arguing now for damages ***due to*** rather than ***for*** reputational harm—a distinction without a difference. *Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 600, 605 (9th Cir. 1996) (explaining that a party cannot "gain[] an advantage by taking one position, and then seeking a second advantage by taking an incompatible position"). Nektar made its choices, and the Court should enforce its prior decision.

Allowing Nektar to argue at trial that its reputation was harmed or that it lost business partnerships due to Lilly's conduct would unfairly prejudice Lilly. Lilly does not have the evidence needed to rebut these arguments—that prospective partners declined to work with Nektar for reasons unrelated to Lilly—because of Nektar's representation about reputational evidence. "[P]rohibiting [Lilly] from pursuing these avenues of inquiry during discovery," only to ultimately allow Nektar to tell a one-sided, incomplete story, "would be unfair to [Lilly]." *Sundby v. Marquee Funding Grp. Inc.*, 2020 WL 3433073, at *8 (S.D. Cal. June 23, 2020). Having "effectively deprived [Lilly] of the tools necessary to challenge the underlying assumptions" in its reputational harm theory, "the only way to restore both parties to equal footing" is "to preclude [Nektar] from" introducing such evidence at trial. *Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 682 (N.D. Cal. 2015).

Moreover, "delving into [Nektar's reputation] needlessly risks creating an irrelevant sideshow and wasting the jury's valuable time," because Nektar is "no longer . . . seeking damages for" reputational harm. *Radecki v. Dahl*, 2023 WL 4231017, at *3 (W.D. Wis. June 28, 2023). Any evidence related to Nektar's reputation would distract from the issues remaining in the case. Having dropped its assertions of reputational harm and foreclosed Lilly from discovery necessary to rebut those assertions, Nektar should be precluded from presenting any argument or evidence about alleged harm to its reputation.

## CONCLUSION

Lilly respectfully requests that the Court grant Lilly's Motion *in Limine* Number One and preclude Nektar from introducing at trial any evidence or argument that Nektar's reputation was harmed or that prospective business partners declined to partner with Nektar due to Lilly's conduct.

DATED: July 23, 2026

Respectfully submitted,

*/s/ Ryan J. Moorman, P.C.*

Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
Patrick Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.hurst@kirkland.com
Email: gbalassa@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: patrick.weeks@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Suong Nguyen (Bar No. 237577)
suongnguyen@quinnemanuel.com
Kyle Batter (Bar No. 301803)
kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

David M. Elihu (Bar No. 303043)
davidelihu@quinnemanuel.com
Jimmy Bieber (Bar No. 301639)
jimmybieber@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

Attorneys for Plaintiff Nektar Therapeutics

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NEKTAR THERAPEUTICS,

Plaintiff,

vs.

ELI LILLY & CO.,

Defendant.

CASE NO. 3:23-cv-03943-JD

**PLAINTIFF NEKTAR THERAPEUTICS' OPPOSITION TO DEFENDANT ELI LILLY & CO.'S MOTION IN LIMINE NO. 1**

Hon. James Donato
Hearing Date: August 6, 2026
Hearing Time: 1:30 p.m.

## INTRODUCTION

Based on a mischaracterization of this Court's March 27, 2025 oral Order, Lilly's Motion in Limine No. 1 ("Motion") seeks to preclude Nektar from introducing at trial any evidence or argument that, as a result of Lilly's conduct, (1) Nektar's reputation was impacted or (2) prospective business partners declined to partner with Nektar. But Nektar is not intending to offer evidence or argument on reputational damages, consistent with its representations to the Court. And the Court's Order explicitly declined to preclude testimony that Lilly's conduct has tainted Nektar's reputation or made it more difficult to find a partner. The Court should deny Lilly's Motion.

## BACKGROUND

To set the record straight, this dispute began when Lilly sought to subpoena 11 third party potential business partners of Nektar after the close of fact discovery. Nektar resisted those efforts because, among other things, Lilly had full access to information about those parties months before discovery closed but failed to act, Lilly could not justify upending the case schedule or burdening the non-parties, and Lilly's true purpose appears to have been to use the subpoenas to cause irreparable harm to Nektar's legitimate business relationships. *See* ECF No. 150. In fact, Lilly successfully subpoenaed three other potential partners from Nektar's document productions before the close of fact discovery, *id.*, and some of those parties' documents even appear on Lilly's initial trial exhibit list. Declaration of Jimmy Bieber ISO MIL Opps. ("Bieber Dec.") ¶ 3.

At the hearing on Lilly's discovery motion, Nektar's counsel explained that "our expert is not relying on any reputation damages." *Id.*, Ex. 1 (Mar. 27, 2025 Hrng. Tr.), 21:9-10. Based on this representation, the Court ruled as follows:

> THE COURT: Well, here's what we're going to do. Based on what counsel for Nektar is saying, **there will be no claim for damages in this case for reputational injury to Nektar**, and any -- any claims about business deal terms can be based only on materials that were actually produced to defendant. Okay?
>
> [LILLY COUNSEL]: Can I ask for one clarification? In addition to the damages, Your Honor, **we would ask that any testimony that Lilly's conduct has tainted Nektar's reputation and has made it more difficult to find a partner also be excluded at trial**.

> THE COURT: **No, I can't – I'll do that on a case-by-case basis. There could be a situation where that's not unreasonable**, but -- I understand what you're saying. You can preserve that objection. Okay.

*Id.*, 21:19-22:9.

**ARGUMENT**

Lilly's primary argument for preclusion is that "the law of the case [is] that Nektar cannot claim (a) damages arising from reputational harm, or (b) that such harm hampered its attempts to find new development partners." Motion at 1. ***First***, there is no dispute over (a) damages arising from reputational harm—Nektar is not seeking damages for harm to its reputation, nor do its expert reports on damages include reputational harm as a measure of damages. Ex. 1, 18:4-6, 21:9-10. The Court should deny as moot Lilly's motion with respect to reputational damages. *United States v. Villagomez*, 2022 WL 715155, at *2 (N.D. Cal. Mar. 10, 2022) (denying motion in limine "as moot given the government's concession that it does not seek to introduce [the] testimony").

***Second***, as to (b), the Court did ***not*** rule that Nektar could not offer testimony about its difficulty finding development partners as a result of Lilly's conduct. It ruled the opposite, recognizing that it is not "unreasonable" for Nektar to offer such testimony. *Id.*, 21:19-22:9. The Court should not deviate from its Order.

***Third***, Lilly mischaracterizes Nektar's counsel statements to the Court as a purported representation that "Nektar would not present evidence at trial that other partners would not work with Nektar after Lilly terminated the agreement." Motion at 2. What Nektar's counsel actually said was only that Nektar would not put on any *third parties* to testify about their reasons for not partnering with Nektar, in response to a query from the Court:

> THE COURT: If this goes to trial, who are you going to put on as witnesses who are going to say, "I would have done a deal with Nektar, but this thing happened with Lilly and I thought so poorly of the company, I just couldn't do it"?
>
> [NEKTAR COUNSEL]: We're not going to, Your Honor. And we have expert reports on damages. We don't have an expert report that has reputational harm as a measure of damages.

Ex. 1, 17:24-18:6. Nektar's counsel never disclaimed the relevance of Nektar's post-agreement partnering efforts to issues like mitigation or non-reputational damages. As Lilly's counsel

recognized, "I don't think they're committing not to put on a damages case that depends upon assumptions regarding the deal Nektar can strike with potential partners." *Id.*, 20:2-4.

***Fourth***, Lilly's argument that it would be prejudiced from not having evidence to rebut Nektar's testimony is merely a rehashing of its failed discovery motion. Motion at 3. Lilly had information from which it could have subpoenaed the 11 third parties months before fact discovery closed, but failed to act. *See* ECF No. 150. Lilly, not Nektar, is responsible for its lack of evidence now. Further, Lilly's supposed prejudice is belied by the facts—it obtained discovery from multiple third parties with whom Nektar discussed a partnership, *id.* at 1, put some of their documents on its trial exhibit list, and asked questions of Nektar witnesses at depositions about those documents. *See* Bieber Dec. Exs. 2, 3. In short, Lilly gleaned very little from those third parties, namely, that none of them partnered with Nektar, a fact to which Nektar witnesses were and remain willing to testify.

Moreover, if any party faces prejudice here, it is Nektar. For example, Lilly's damages rebuttal expert, Dr. Laurentius Marais, offers opinions that "[redacted]," including because [redacted]. *Id.*, Ex. 2 (Marais Dep. Tr.), 195:11-197:13. Lilly should not be permitted to argue that Nektar did not reach an agreement with a potential partner because they were "[redacted]," while at the same time precluding Nektar from rebutting such speculative testimony with evidence about its efforts to find partners. Precluding Nektar's witnesses from responding to these assertions prejudices Nektar because the jury will receive a one-sided, inaccurate version of events that will leave them wondering why Nektar did not reach an agreement with a partner.

***Finally***, that Nektar is not seeking reputational-harm damages does not mean testimony about Lilly's tainting of Rezpeg is an "irrelevant sideshow." Motion at 3. To the contrary, as discussed above, it is relevant to assumptions Nektar's damages expert makes when calculating the diminution in Rezpeg's net present value. *See, e.g.*, Ex. 3 (Rao Dep. Tr.), 196:25-197:21, 246:5-248:11.

## CONCLUSION

For the foregoing reasons, Nektar respectfully requests that the Court deny Lilly's Motion.

DATED: July 23, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Yury Kapgan*
Yury Kapgan

*Attorney for Plaintiff Nektar Therapeutics*