Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
Patrick Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.hurst@kirkland.com
Email: gbalassa@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: patrick.weeks@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY & CO.,<br><br>Defendant. | CASE NO. 3:23-CV-03943-JD<br><br>**ELI LILLY AND COMPANY'S MOTION *IN LIMINE* NUMBER THREE TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO MICROSOFT TEAMS CHATS PRODUCED BY LILLY**<br><br>Judge: Hon. James Donato<br>Hearing Date: August 6, 2026<br>Time: 1:30 p.m. PT<br>Courtroom: 11, 19th Floor |

## INTRODUCTION

Fundamental fairness requires that Nektar be barred from introducing Lilly's Microsoft Teams chats as exhibits at trial. Lilly preserved and produced relevant Teams chats in this litigation consistent with its obligations under this Court's and the Federal Rules. Nektar, on the other hand, admitted to this Court that for years after it anticipated (and then commenced) litigation against Lilly in 2023, Nektar continued to automatically delete Teams chats sent by all of its trial witnesses. ECF No. 185, Ex. 1 at 70:4-20. Nektar further admitted that it only disabled that autodeletion feature for Teams chats ***after the close of fact discovery*** in February 2025 and after Lilly was forced to seek relief from this Court for Nektar's disregard of its discovery obligations—all while its witnesses admitted they used Microsoft Teams to communicate about Rezpeg-related topics. *Id.* at 1. As a result, Nektar's conduct deprived Lilly of any discovery into: (i) Nektar Teams chats sent or received during the parties' collaboration to develop Rezpeg; and (ii) Nektar Teams chats related to Nektar's development of Rezpeg since termination.

Nektar's pre-trial exhibit list now makes clear that it intends to prominently feature ***Lilly's*** Teams chats in its trial presentation. Its current list includes at least 85 Lilly Teams chats—over 10 percent of Nektar's proposed exhibits. In other words, Nektar intends to rely extensively at trial on the very same types of documents from Lilly that Nektar failed to preserve. Lilly has already filed a pending Statement to the Court on this issue. ECF No. 184. In addition to any relief the Court may award, Lilly respectfully asks that Nektar not be rewarded for its misconduct that has deprived Lilly of reciprocal discovery into Nektar's Teams chats. The Court should "level [the] playing field" at trial by precluding Nektar from using Lilly's Teams chats, which are "unfairly prejudicial in light of [Nektar's] spoliation" under Federal Rule of Evidence 403. *Quaglietta v. Nissan Motor Co., Ltd.*, 2000 WL 1306791, at *2 (D.N.J. Aug. 16, 2000).

## BACKGROUND

Nektar deleted Teams chats long after litigation was foreseeable (and for over a year after it commenced), flouting both the Federal Rules and this Court's Standing Order governing discovery in civil cases. ECF No. 184. [redacted] ECF No. 185 at 8. [redacted]

[redacted] Nektar then filed suit based on the same allegations on August 7, 2023.

Nektar did not in fact preserve the materials it had a duty to preserve. Court-ordered discovery revealed that [redacted]. ECF No. 185, Ex. 1 at 70:4-20, 147:2-6. But [redacted] *Id.* at 9; *Id.*, Exs. 1 & 7. Although Nektar claimed its General Counsel delivered an "oral instruction" to employees at an August 7, 2023 meeting not to "discuss the lawsuit"—but they could discuss the relevant facts—in Teams chats, multiple Nektar custodians testified that they never heard that instruction until April 2025. *Id.*, Exs. 5 & 12. And, even after giving that supposed "oral instruction," Nektar did nothing to enforce it, allowing employees to "[redacted]" regarding their Teams chats—all while the permanent deletions continued ***for almost two years.*** *Id.*, Ex. 2 at 137:10-23, 140:14-141:4.

Nektar does not dispute all Teams chats created before the disabling of the autodeletion are gone. And multiple Nektar employees testified that they "[redacted]" throughout 2023, 2024, and 2025. *Id.*, Ex. 12 at 43:20-22, Ex. 16 at 21:12-15. Those same employees confirmed that they used Teams chats to discuss [redacted] *Id.*, Ex. 5 at 52:13-15, Ex. 12 at 44:3-9, Ex. 16 at 102:3-13. One employee even opened her Teams application during her April 2025 deposition and counted [redacted]—Nektar's internal code for Rezpeg—in his chat history from the two months after Nektar had disabled the autodeletion in February 2025 alone. *Id.*, Ex. 5 at 90:15-91:12.

Nektar now seeks to gain a strategic advantage at trial by affirmatively presenting Teams chats it procured ***from Lilly***—documents that are available to Nektar because Lilly complied with its discovery obligations. On September 5, 2025, Nektar sent Lilly an initial exhibit list containing at least 85 Microsoft Teams chats that Lilly properly preserved and produced—despite Nektar destroying every single Teams chat its own trial witnesses sent before February 2025.

**ARGUMENT**

District courts have "broad" discretion to address spoliation, including by "giving the jury an

adverse inference instruction [and] precluding evidence." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015). Where a party deletes relevant instant messages such as Teams chats, it is "well within [the court's] discretion" to impose a fairness remedy. *In re Google Play Store Antitrust Litig.*, 2024 WL 3302068, at *15 (N.D. Cal. July 3, 2024) (Donato, J.).

In addition to any relief the Court orders in response to Lilly's pending statement, one appropriate remedy here is to bar Nektar from using Lilly's Teams chats, which have become "unfairly prejudicial in light of [Nektar's] spoliation" under Rule 403. *Quaglietta*, 2000 WL 1306791, at *2. Allowing Nektar to use the chats when Lilly was denied reciprocal discovery would create an unfair imbalance at trial. Nektar employees used Teams chats daily to communicate about Rezpeg, at least some of which were certainly adverse to Nektar, as evidenced by Nektar's intent to introduce 85 of Lilly's Teams chats at trial. Nektar has access to those chats because Lilly complied with its discovery obligations. Without intervention by this Court, Nektar will present dozens of internal Lilly communications about Rezpeg to the jury while shielding its own from scrutiny through spoliation. Seeing Lilly's Teams chats will naturally lead the jury to wonder about Nektar's chats, and they may wrongfully infer that those chats are unfavorable to Lilly (and that Lilly's case is weaker) because Lilly does not introduce them. "[T]he only way to restore both parties to equal footing with respect to the [Teams chats] is to exclude them." *Brown v. Wal-Mart Store, Inc.*, 2018 WL 2011935, at *5 (N.D. Cal. Apr. 27, 2018).

In other spoliation cases, courts have excluded entire categories of evidence "to level the evidentiary playing field." *State Farm Fire & Cas. Co. v. Broan Mfg. Co., Inc.*, 523 F. Supp. 2d 992, 998 (D. Ariz. 2007). Moreover, in *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 52 (S.D.N.Y. 2020), the Court similarly precluded the spoliating party from introducing evidence regarding emails it had failed to preserve. And, in *Broan Mfg.*, the Court precluded both parties from introducing evidence regarding their inspection of the scene of a fire, where the plaintiff had destroyed the scene after inspecting it. Here too, Nektar should not be allowed to benefit from its discovery abuses.

## CONCLUSION

Lilly respectfully requests that the Court grant Lilly's Motion *in Limine* Number Three and preclude Nektar from introducing evidence or argument related to Lilly's Microsoft Teams chats.

DATED: July 23, 2026

Respectfully submitted,

*/s/ Ryan J. Moorman, P.C.*

Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
Patrick Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.hurst@kirkland.com
Email: gbalassa@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: patrick.weeks@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Suong Nguyen (Bar No. 237577)
suongnguyen@quinnemanuel.com
Kyle Batter (Bar No. 301803)
kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

David M. Elihu (Bar No. 303043)
davidelihu@quinnemanuel.com
Jimmy Bieber (Bar No. 301639)
jimmybieber@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

Attorneys for Plaintiff Nektar Therapeutics

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>Plaintiff,<br><br>vs.<br><br>ELI LILLY & CO.,<br><br>Defendant. | CASE NO. 3:23-cv-03943-JD<br><br>**PLAINTIFF NEKTAR THERAPEUTICS' OPPOSITION TO DEFENDANT ELI LILLY & CO.'S MOTION IN LIMINE NO. 3**<br><br>Hon. James Donato<br>Hearing Date: August 6, 2026<br>Hearing Time: 1:30 p.m. |

## INTRODUCTION

Lilly's Motion in Limine No. 3 ("Motion") seeks an extraordinary sanction: excluding its own highly damaging internal chats sent between Lilly employees during the period of the License Agreement because it says Nektar did not preserve different, irrelevant chats created ***after*** the License Agreement was terminated. Mot. at 2-3.[1] While Lilly deleted or withheld its own Teams chats throughout discovery (Dkt. 189 at 7-8), it now seeks to weaponize discovery rules to hide critical evidence—a devastating paper trail showing it spent years using Teams to coordinate its breach of the License Agreement. This is not about fairness or reciprocity; it is about concealing proof of Lilly's strategy to delay Rezpeg while "[redacted]" to "[redacted]."

The Teams chats at issue are fundamentally different. Lilly's chats from 2017 to 2023 directly evidence its breach of Commercially Reasonable Efforts during the License Agreement Period. In contrast, Nektar's chats from mid-2023 to 2025—created ***after*** termination—have zero relevance to whether Lilly breached its obligations years earlier. Lilly's draconian request is unsupported by fact or law and should be denied.

## ARGUMENT

### I. Nektar Did Not Use Teams Chats to Discuss the Lawsuit or Lilly's Work

Lilly falsely claims that Nektar "admitted to this Court" that it deleted its Teams chats relevant to this case, thereby warranting Lilly's request to hide its own damming chats from the jury. But as Nektar has demonstrated through extensive discovery: (1) Nektar employees perform their substantive work in email and documents like Word, not Teams chats, and such documents are preserved ***forever***; (2) Nektar typically uses Teams chats for logistical communications like, "are you able to talk"; (3) the day Nektar filed suit, its General Counsel directed nearly three dozen employees not to discuss the lawsuit or Lilly's work under the License Agreement, including through Teams chats; and (4) Nektar employees faithfully complied. Dkt. 189 at 1-3.

[1] Nektar *did* produce thousands of Teams chats. They are consistent with Nektar's representations that employees typically use chats for logistical communications, not substantive ones, and that, after filing suit, Nektar employees did not chat about Lilly's historical work, the parties' License Agreement, or the lawsuit. *See* Dkt. 189 at 1-5.

Nektar has produced all Teams chats in its possession for its custodians, without applying search terms and regardless of their relevance to this dispute. *Id.* Significantly—and consistent with Nektar's representations—not a single one of those 1,317 chats references Lilly's historical work, the parties' Agreement, or the lawsuit. *Id.* at 2-5. Lilly does not argue otherwise. Nor does Lilly even attempt to explain how Nektar Teams chats from 2024 and 2025 bear on whether Lilly exercised Commercially Reasonable Efforts in developing Rezpeg from July 2017 to April 2023.

## II. Lilly's Teams Chats Constitute Direct Admissions of Breach

Lilly's Teams chats are not merely relevant—they constitute direct admissions of breach. While Nektar was using Teams chats for messages like, "Are you able to talk?" Dkt. 189 at 2, Lilly was using Teams chats to discuss Rezpeg's demise.

For example, Lilly employee [redacted] wrote his colleagues that Lilly would [redacted] Declaration of Jimmy Bieber ISO MIL Opps. ("Bieber Dec."), Exs. 6, 7. He conceded that he was [redacted] about the unwarranted delay, but that it was [redacted] and Lilly could use the strategy to [redacted] *Id.*, Ex. 8.

[redacted] further confided that Lilly's actions didn't [redacted] *Id.*, Ex. 9. If Nektar [redacted]. *Id.*, Ex. 10. His conclusion was telling: [redacted] *Id.*

Lilly now claims that its scheme to delay Rezpeg was appropriate due to concerns with drug efficacy. But that, too, is roundly rebutted by Lilly's internal messages. For example, just one month before exposing Lilly's [redacted] solutions to delay Rezpeg, [redacted] conceded that Rezpeg [redacted] and Rezpeg's efficacy data was [redacted] *Id.*, Exs. 11, 12.

These communications are fatal to Lilly's case. They should not be concealed from the jury.

### III. Lilly's Draconian Request Is Unprecedented and Unsupported

Lilly fails to identify ***a single case*** where a court granted the unprecedented relief that Lilly seeks. Lilly's cases stand for the proposition that a plaintiff cannot rely on evidence that it improperly destroyed or withheld, which is not at issue here. In *Quaglietta v. Nissan Motor Co.*, the court barred the plaintiff from introducing evidence regarding "the post-accident condition of [his] truck" because the plaintiff "discarded the truck before filing suit." 2000 WL 1306791, at *1, 3, 4 (D.N.J. Aug. 16, 2000). Likewise, in *State Farm Fire & Cas. Co. v. Broan Mfg. Co.*, the court ordered dismissal because the plaintiff destroyed the fire scene after inspecting it, making it impossible for the defendant to defend itself. 523 F. Supp. 2d 992, 998 (D. Ariz. 2007). Here, Lilly does not seek to preclude Nektar from relying on evidence Nektar allegedly destroyed. Rather, Lilly wants to bar Nektar from relying on unrelated, highly relevant evidence produced by Lilly, simply because that evidence was generated using the *same software tool* as the evidence Lilly erroneously claims Nektar failed to preserve.

Several other cases Lilly cites are equally inapposite. *See Brown v. Wal-Mart Store, Inc.*, 2018 WL 2011935 (N.D. Cal. Apr. 27, 2018) (barring defendant from relying on information it wrongfully withheld); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 52 (S.D.N.Y. 2020) (defendant could not rely on emails he deleted). Lilly's remaining cases, including *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012), concern jury instructions—not exclusion of unrelated evidence as a spoliation sanction.

Finally, Lilly's proposed evidentiary sanction is not "reciprocal," as Lilly claims. Lilly seeks to exclude all of its own internal chats, including those generated prior to June 2023, as a sanction for Nektar purportedly not preserving unrelated Teams chats from after June 2023. But Nektar had no preservation obligations before litigation became likely in June 2023. Any absence of Nektar Teams chats from April 2017 to June 2023 is not a violation of any duty to preserve documents and cannot serve as the basis for evidentiary sanctions.

## CONCLUSION

For the foregoing reasons, Nektar respectfully requests that the Court deny Lilly's Motion.

DATED: July 23, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Yury Kapgan*
Yury Kapgan

*Attorney for Plaintiff Nektar Therapeutics*