Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
Patrick Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.hurst@kirkland.com
Email: gbalassa@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: patrick.weeks@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY & CO.,<br><br>Defendant. | CASE NO. 3:23-CV-03943-JD<br><br>**ELI LILLY AND COMPANY'S MOTION *IN LIMINE* NUMBER FOUR TO EXCLUDE SUPPOSED THOUGHT LEADERS' STATEMENTS REGARDING REZPEG**<br><br>Judge: Hon. James Donato<br>Hearing Date: August 6, 2026<br>Time: 1:30 p.m. PT<br>Courtroom: 11, 19th Floor |

**INTRODUCTION**

Lilly moves *in limine* to preclude Nektar from introducing out-of-court statements of doctors who will not testify at trial. Nektar claims that these doctors, touted by Nektar as "[redacted]," twice met with Nektar in September 2023—six months after termination of the parties' License Agreement—and expressed a view that Rezpeg "[redacted]. Ex. 4, J. Zalevsky Dep. Tr. (Jan. 17, 2025) at 389:23-390:1; Ex. 5, H. Robin Dep. Tr. at 83:16-25. Nektar did not disclose any of these supposed thought leaders as testifying experts under Rule 26(a)(2) or include them on its trial witness list. Yet Nektar confirmed during the parties' meet and confer that (1) its percipient witnesses intend to tell the jury what the doctors said about Rezpeg's "potential," and (2) it will also use its expert witnesses to get the doctors' statements in front of the jury.[1] Summaries of these doctors' statements also appear in documents on Nektar's trial exhibit list. Lilly moves under Federal Rules of Evidence 801 and 403 to exclude all testimony or evidence relaying or about what the supposed thought leaders said, believed, or opined about Rezpeg, as impermissible hearsay.

**BACKGROUND**

After Rezpeg failed to meet the agreed-upon endpoints for its Phase 2 lupus trial and Lilly terminated the License Agreement, Nektar conducted its own post-hoc re-analysis of the Phase 2 data using a different method. Nektar's Chief Research and Development Officer, Dr. Zalevsky, testified under questioning from *Nektar's* lawyers that Nektar [redacted] Ex. 4 J. Zalevsky Dep. Tr. at 392:2-7, [redacted], *id.* at 392:8-15, 395:8-19, 396:1-3. Nektar's CEO, Howard Robin, also testified about what these [redacted] regarding Rezpeg's development for lupus. Ex. 5, H. Robin Dep. Tr. at 83:16-25.

Nektar's expert witnesses also feature the physicians' testimony in their expert reports. For example, Nektar's clinical expert's report claims without citation that these doctors "[redacted]

---

[1] Nektar's impermissible attempt to smuggle this hearsay testimony in through its experts is the subject of separate Rule 702 motions. *See* ECF Nos. 201-1, 204-1.

[redacted]" but the gratuitous inclusion of these references is not tied to any opinion or supporting methodology in the report. ECF No. 204-2 ¶ 147. Instead, Nektar manufactured this record citation for no reason other than to allow its expert to relay the out-of-court hearsay statements.

Nektar did not disclose the opinions of these doctors as experts under Rule 26, nor did it include them on its initial disclosures or witness list. Nevertheless, Nektar stated its intention during the meet and confer to somehow introduce the out-of-court statements of these doctors to the jury, presumably as evidence that Lilly failed to use Commercially Reasonable Efforts when it terminated Rezpeg's development after the unsuccessful Phase 2 lupus trial.

## ARGUMENT

The out-of-court statements by Nektar's supposed thought leaders are paradigmatic hearsay under Rule 801 because they were "made by an out-of-court declarant" and will be "offered at trial to prove the truth of the matter asserted." *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019). There is no dispute that these doctors made their statements about Rezpeg's efficacy and its prospects for further development at an out-of-court meeting with Dr. Zalevsky. Ex. 4, J. Zalevsky Dep. Tr. at 391:19-392:7. Thus, Nektar cannot offer these statements to prove the truth of the matter asserted in them—namely, that Rezpeg should have advanced to Phase 3 trials in lupus or that it otherwise had a favorable profile, or that doctors or thought-leaders thought so.

Nektar has suggested that non-hearsay uses of this evidence may exist, but could not identify them during the parties' meet and confer. That is because none exists. There is no reason for Nektar to introduce evidence of the purported thought leaders' views about Rezpeg other than for their truth. These doctors did not participate in Rezpeg's Phase 2 lupus trial, were not part of the decision to cease developing Rezpeg for lupus, and did not review the Phase 2 lupus trial data until *after* Lilly terminated the License Agreement. Their remarks therefore cannot establish impact, knowledge, or any other non-hearsay purpose because they were made *long after* the conduct challenged by Nektar—Lilly's decision to "[redacted]," which Nektar alleges was improper. ECF No. 198-2, Rao Rep. ¶ 75. Because there is no relevant non-hearsay purpose for which Nektar could admit the purported thoughts leaders' statements and no hearsay exception applies, they should be excluded. *Mims v. Fed. Express*

*Corp.*, 2015 WL 12711651, at *12 & n.11 (C.D. Cal. Jan. 15, 2015) (excluding "classic hearsay" testimony where the "testimony is only relevant if the underlying hearsay statements were true"); *Hill v. Novartis Pharms. Corp.*, 944 F. Supp. 2d 943, 948-49 (E.D. Cal. 2013) (excluding evidence of non-testifying doctors' statements and impressions about a draft white paper as inadmissible hearsay).

Nektar also argued during the parties' meet and confer that this evidence is permissible because its expert witnesses are entitled to rely on hearsay. But expert witnesses cannot "merely act[] as a transmitter for testimonial hearsay." *Erhart v. Bofl Holding, Inc.*, 445 F. Supp. 3d 831, 839 (S.D. Cal. 2020). Rule 703 only allows an expert to rely on hearsay if "experts in th[at] particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject," and even so "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." As explained in Lilly's motion to exclude certain testimony of Dr. Mostaghimi, Nektar's expert [redacted]. ECF No. 204-1 at § I.B. The Court should disallow Nektar from "plac[ing] [inadmissible hearsay] before the jury" through an expert by "taking advantage of Rule 703's relaxed personal knowledge and hearsay requirements." *Erhart*, 445 F. Supp. 3d at 841.

Even if Nektar could surmise a relevant, non-hearsay purpose to introduce this evidence, any such relevance would be outweighed by undue prejudice to Lilly under Rule 403. First, if Nektar wanted to introduce this testimony it should have disclosed them as witnesses or identified them in their disclosures. Because Nektar did not, Lilly cannot cross-examine them, and "[t]he jury [would have] no way of determining whether the opinions were credible or worthy of belief." *Jensen v. EXC, Inc.*, 82 F.4th 835, 849 (9th Cir. 2023). Second, evidence of these physicians' post-hoc impressions and statements on a re-analysis Nektar performed after the collaboration will confuse the jury about the proper standard for liability: under the parties' contract, this evidence has nothing to do with Lilly's efforts, expertise or resources during the collaboration. That some doctors later find the data compelling is not relevant under the "inward facing" CRE provision. *See Russell v. Zimmer*, 82 F.4th 564, 569-70 (7th Cir. 2023).

**CONCLUSION**

Lilly respectfully requests that the Court grant Lilly's Motion *in Limine* Number Four.

DATED: July 23, 2026

Respectfully submitted,

*/s/ Ryan J. Moorman, P.C.*

Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
Patrick Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.hurst@kirkland.com
Email: gbalassa@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: patrick.weeks@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Suong Nguyen (Bar No. 237577)
suongnguyen@quinnemanuel.com
Kyle Batter (Bar No. 301803)
kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

David M. Elihu (Bar No. 303043)
davidelihu@quinnemanuel.com
Jimmy Bieber (Bar No. 301639)
jimmybieber@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

Attorneys for Plaintiff Nektar Therapeutics

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>Plaintiff,<br><br>vs.<br><br>ELI LILLY & CO.,<br><br>Defendant. | CASE NO. 3:23-cv-03943-JD<br><br>**PLAINTIFF NEKTAR THERAPEUTICS' OPPOSITION TO DEFENDANT ELI LILLY & CO.'S MOTION IN LIMINE NO. 4**<br><br>Hon. James Donato<br>Hearing Date: August 6, 2026<br>Hearing Time: 1:30 p.m. |

## INTRODUCTION

Lilly's Motion in Limine No. 4 ("Motion") seeks to bar Nektar from introducing evidence showing that the [redacted] reviewed results from Rezpeg's Phase 2 lupus trial and unanimously agreed [redacted]. This highly relevant evidence materially undermines several of Lilly's defenses, including its claim that Rezpeg's Phase 2 lupus trial was a complete failure. Lilly's argument that the [redacted] is hearsay is incorrect and ignores that this evidence is admissible for non-hearsay purposes. Lilly also fails to identify any prejudice supporting its request for exclusion. Lilly's Motion should be denied.

## ARGUMENT

It is undisputed that Rezpeg surpassed the "high" critical success factor Lilly set for it on the most important endpoint in its Phase 2 lupus trial. Dkt. 228-2, Ex. 6; Dkt. 228-3, Ex. 55 at -183. This result outperformed the most efficacious lupus drug on the market. *Id.* Nevertheless, Lilly summarily terminated Rezpeg's lupus development hours after receiving results from Rezpeg's Phase 2 lupus trial, and even [redacted]. Dkt. 228-3, Exs. 59, 60.

After Lilly terminated the License Agreement, Nektar received raw data from Rezpeg's Phase 2 lupus trial. Declaration of Jimmy Bieber ISO MIL Opps. ("Bieber Dec."), Ex. 13, Tr. 114:12-115:14, 115:19-116:7. Nektar analyzed the data (which Lilly should have done) and identified a clear flaw in the trial design—[redacted]. *Id.*, Tr. 114:12-115:14, 115:19-117:18. Nektar then reanalyzed the data for patients who [redacted]. *Id.*, Ex. 14 at -180 to -185. Nektar presented this data to the [redacted], which is comprised of renowned lupus experts and Key Opinion Leaders ("KOLs") on lupus treatments. The [redacted]. *Id.*, Ex. 15 at -282.

Desperate to prevent the jury from learning the [redacted] conclusion, which contradicts Lilly's claim that Rezpeg's Phase 2 lupus trial results somehow did not justify further evaluation of Rezpeg as a lupus drug, Lilly argues this evidence must be excluded as "paradigmatic hearsay." Mot. at 2. Lilly further argues that there is no non-hearsay purpose for the [redacted] conclusion and that admitting it will be unfairly prejudicial. Lilly is wrong on all accounts.

"[T]o exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds." *U.S. v. Johnny Ray Wolfenbarger*, 2021 WL 3212833, at *1 (N.D. Cal. July 29, 2021); *see also Perry v. City of New York*, 552 F. Supp. 3d 433, 444 (S.D.N.Y. 2021) (similar). Lilly cannot meet this standard.

***First***, the minutes from Nektar's meeting with the [redacted] are admissible as non-hearsay under Rule 803(6). Specifically, the minutes were memorialized at or near in time by someone with knowledge, and they were kept and made in the course of regularly conducted business activity. Fed. R. Evid. 803(6). Nektar will establish all elements of the Rule 803(6) exception with the testimony of a custodian or other qualified witness. *United States v. Pirk*, 2018 WL 1521781, at *1 (W.D.N.Y. Mar. 28, 2018) (admitting meeting minutes under Rule 803(6)).

Further, there is no "hearsay within hearsay" issue—Nektar does not seek to introduce statements from KOLs contained in those minutes. Rather, Nektar will introduce the Lupus Board's unanimous decision that Rezpeg's lupus development should continue. This feedback is admissible for non-hearsay purposes, including impact on the listener. Specifically, Nektar has [redacted], which is relevant to mitigation.

***Second***, even if hearsay, the [redacted] conclusion can be disclosed to the jury by Nektar's experts or to cross-examine Lilly's experts so long as its "probative value in helping the jury evaluate the opinion substantially outweighs" its prejudicial effect. Fed. R. Evid. 703. That is undoubtedly true here. [redacted] is highly probative, including because it is inconsistent with Lilly's claim that Rezpeg should not have proceeded to Phase 3 in lupus. Dkt. 209-2, Ex. B ¶¶ 61-68.

*Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 157 (4th Cir. 1995) (permitting cross-examination on hearsay opinion the testifying expert disagreed with).

Citing *Jensen v. EXC, Inc.*, 82 F.4th 835, 850 (9th Cir. 2023), Lilly argues that admitting the [redacted] decision is prejudicial because Lilly cannot cross-examine Lupus Board members. Mot. at 3. But in *Jensen*, the Ninth Circuit found prejudice in allowing an expert to be cross-examined on an opinion of a non-testifying expert because there was no foundation in the record to establish the trustworthiness of the non-testifying expert's opinion. *Jensen*, 82 F. 4th at 850-51. The Ninth Circuit emphasized there was no evidence establishing the non-testifying expert's qualifications and that his opinion relied "uncritically" on unverified hearsay statements. *Id.*

Here, in contrast, there will be (and is) foundation establishing the qualifications of the [redacted]. Bieber Dec., Ex. 16 at -251. Further, there is no question about what the [redacted] relied upon in [redacted]. *See id.*, Ex. 14 at -180 to -185. [redacted] conclusion also bears "indicia of reliability and trustworthiness," *Jensen*, 82. F. 4th at 850, including because it was memorialized in meeting minutes under the requirements of Rule 803(6).

Further, Lilly's argument that the [redacted] conclusion will "confuse the jury" because it "has nothing to do with Lilly's efforts, expertise or resources during the collaboration" makes no sense. Mot. at 3. Lilly possessed all the data necessary to conduct a [redacted], and its failure to do so and decision to terminate a drug with market-leading efficacy—even before receiving the results of the trial—clearly bears on Lilly's efforts and expertise.

**CONCLUSION**

For the foregoing reasons, the Court should deny Lilly's Motion in Limine No. 4.

DATED: July 23, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Yury Kapgan*
Yury Kapgan

*Attorney for Plaintiff Nektar Therapeutics*