QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000

Jimmy Bieber (Bar No. 301639)
jimmybieber@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Plaintiff*
*Nektar Therapeutics*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NEKTAR THERAPEUTICS,

Plaintiff,

vs.

ELI LILLY & CO.,

Defendant.

CASE NO. 3:23-cv-03943-JD

**PLAINTIFF NEKTAR THERAPEUTICS' OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF SPOLIATION REMEDY**

Hon. James Donato
Trial Date: September 8, 2026
Location: Courtroom 11

Lilly's administrative motion for leave to seek reconsideration offers no new controlling law or evidence. Instead, it opens with a brazen false assertion that Nektar somehow "misled" the Court into imposing its sanctions order at the August 6 Pretrial Conference. *See* Administrative Motion (Dkt. 394). This desperate and inappropriate accusation is flatly contradicted by the record: the Court ***itself*** suggested the July 2023 date limitation based on when litigation became reasonably foreseeable and has already *rejected Lilly's request to broaden it*. (*See* 8/6/26 Hearing Tr. at 13:5-6 (excluding chats "for the period up to February of 2025, *when Nektar was defaulting on its obligation to preserve its own chats*"); 14:6-10 ("THE COURT: Just answer my question first. When is it you filed the lawsuit? MS. DOOLITTLE: August of 2023. THE COURT: All right. So any chats that were not preserved from July 2023 to February 2025 is the time period."); *id.* at 15:6-9 (then in response to Lilly's request for an earlier start date: "THE COURT: Well, we're going to do July….*That's as far back as I'm going to go. All right?*").

Before issuing its order, the Court read and considered ***eight*** different briefs and heard ***three*** rounds of oral argument, following six weeks of supplemental discovery targeted entirely on Nektar's preservation efforts. (Dkts. 141, 151, 184, 187, 343, 357 at 28-32; 3/27/25 Hearing Tr. at 5:11-12:24; 12/11/25 Hearing Tr. at 9:17-11:25; 8/6/26 Hearing Tr. at 7:14-15:10). After consideration of this record, the Court ordered the exclusion of *all* Lilly chats from July 2023 to February 2025 (more than one hundred), the period it found that Nektar's chats were not preserved and litigation was reasonably foreseeable, and made clear that it would not impose "any adverse instructions or anything else. That's it. I think those would be disproportionate in this case." (8/6/26 Hearing Tr. at 13:8-10.)

In its motion, Lilly re-hashes its demand for the same sanctions the Court considered and rejected: it seeks an adverse inference jury instruction and, even more severe, to bar Nektar from introducing the most powerful breach evidence in the case. Lilly knows that the evidence it has repeatedly asked the Court to exclude—its own chats created *during* the parties' performance of the License Agreement years *before* litigation became reasonably foreseeable and years *before* the alleged spoliation—contain damning evidence of its misconduct. They include highly probative, contemporaneous messages showing Lilly's plan to put Rezpeg on "[redacted]" for "[redacted]" and then "[redacted]" with a development plan that didn't "[redacted]

[redacted]" but would "[redacted]" Rezpeg for [redacted] because "[redacted]." Exs. 1-3. Excluding these chats would be the ultimate sanction, allowing Lilly to suppress nearly all the evidence of its bad faith efforts to orchestrate and conceal a years-long delay in Rezpeg's development. There is no basis for further exclusion, as the Court already rejected Lilly's proposal and the law does not support sanctions that "would potentially preclude testimony and other evidence wholly unaffected by the spoliation." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 69 (S.D.N.Y. 2020) (cited in Lilly's MIL) ("The broader preclusion order that [movant] requests is overly harsh, in that it would…penalize the [non-movants] beyond the degree needed to cure the prejudice flowing from that misconduct.").

This is also Lilly's third filing in eleven days in which Lilly has violated either the Local Rules or this Court's express orders, as it filed this administrative motion (Dkt. 394) without confirming Nektar's opposition or providing a stipulation, in violation of Local Rule 7-11(a)).[1] Lilly's motion should be denied, and the Court should henceforth require Lilly to receive express approval before filing any more pretrial motions.

## I. <u>Lilly's Motion Does Not Present Any Basis for Reconsideration</u>

Motions for reconsideration "should not be granted, absent highly unusual circumstances." *See In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1163 (N.D. Cal. 2019) (internal quotation omitted). Those do not exist here: Lilly cannot point to, as required, any "newly discovered evidence," "clear error," or "an intervening change in the controlling law." *Id.*; *see also Tarlson v. Foster*, 2015 WL 150734, at *1 (N.D. Cal. Jan. 9, 2015) (Donato, J.) (denying motion for reconsideration). With no grounds to revisit the Court's sanction order, Lilly resorts to inventing some, falsely accusing Nektar's counsel of "misleading the Court" at the pretrial conference. Mot. at 1, 3. No such thing occurred. Tellingly, Lilly does not back up its baseless accusation with a single citation to the record. The "new information in this motion" that Lilly touts, Mot. at 3, is nothing but

[1] Lilly also filed a unilateral set of "custom" jury instructions that intentionally removed Nektar's opposition statements (Dkt. 383), violating the Court's August 4 prohibition on the same, Dkt. 379; and it filed a reply brief in support of its previous administrative motion seeking leave to file a second Rule 702 motion (Dkt. 374), violating Local Rule 7-11(c). Should Lilly do the same here and file a reply in support of this administrative motion, Nektar respectfully requests the Court disregard it.

Lilly's opinion that the Court's sanction is insufficiently punitive. Lilly asks the Court for two different sanctions the Court expressly rejected: an expanded scope of preclusion and an adverse inference instruction. *See supra* at 1. But motions for reconsideration are not "to be used to ask the Court to rethink what it has already thought." *Gray v. Golden Gate Nat. Recreational Area*, 866 F. Supp. 2d 1129, 1132 (N.D. Cal. 2011).

Nor may a motion for reconsideration "repeat any oral or written argument made by the applying party." Civ. L.R. 7-9(c). "A party who violates this restriction shall be subject to appropriate sanctions." *Id*. Lilly does little else, repackaging the same language about "level[ing] the playing field," and "reward[ing] Nektar," that it raised in its motion *in limine*. *Compare* Mot. at 3 ("Preclusion 'level[s] the playing field'") *with* Dkt. 343 at 1 ("The Court should 'level [the] playing field' at trial"), *and* Mot at 3 (declining to preclude all Lilly chats "rewards Nektar for its spoliation") *with* Dkt. 343 at 1 ("Lilly respectfully asks that Nektar not be rewarded for its misconduct").

Finally, motions for reconsideration "are not the place for parties to make new arguments not raised in their original briefs." *Johnston v. Uber Techs., Inc.*, 2019 WL 6050906, at *1 (N.D. Cal. Nov. 15, 2019). As an example, Lilly proposes for the first time a different adverse instruction to "inform the jury" about alleged spoliation, Mot. at 3, but it had every opportunity to request that in prior briefing. Lilly now leans heavily on its desire for a "punitive" effect, *id.*, but the factual record is unchanged from what the Court considered last week (to say nothing of the Court's express finding that the record "warrants the imposition of proportionate -- and that's the key word -- proportionate sanctions." 8/6/26 Hearing Tr. at 12:4-5.).

## II. <u>The Court's Sanction Is Not "Toothless"</u>

Lilly derides the Court's sanction as "toothless," a "non-remedy," and "illusory" (insulting both the Court's intelligence and Nektar's counsel by stating, falsely, that Nektar gulled the Court into its decision). Mot. at 1-3. Lilly's characterizations are incorrect. The Order precludes Nektar from introducing many damning Lilly chats from July 2023 to February 2025, including Lilly's [redacted], Lilly's employees admitting they [redacted], and Lilly's [redacted], a comparator drug

Lilly pitted against Rezpeg and ultimately favored. *See* Exs. 5-7. Indeed, Teams chats comprise more than half of Lilly's lone supplemental production of post-suit documents about this clinical trial. *See* Dkt. 309 at 2. That Nektar has culled some of Lilly's more than 100 post-suit chats from its exhibit list as it streamlines its case for trial does not render the Court's order "illusory."

**III. <u>Lilly's Proposed Sanctions are Wholly Unsupported by the Law</u>**

The chats Lilly seeks to hide from the jury are the most probative and damning evidence of the entire case: express admissions that Lilly's leaders foisted a development plan on Rezpeg that Lilly knew didn't "[redacted]," that eczema experts "[redacted]," and that rendered Lilly's study lead "[redacted]"; that it did so to "[redacted]" Rezpeg' by "[redacted]," effectively putting a competitor drug on "[redacted]" to "[redacted]"; and that Lilly tried to conceal its scheme by "[redacted]" and counting on Nektar "[redacted]" that Lilly's real goal was to accomplish this sabotage while "[redacted]" *See* Exs. 1-4.

Lilly's case-gutting proposal is inappropriate: sanctions that "would potentially preclude testimony and other evidence wholly unaffected by the spoliation" would go well "beyond the degree needed to cure the prejudice." *Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 69. In five briefs, Lilly *still* has not identified a case imposing the sanction Lilly wants: *Alvarez v. U.S.*, its lone new offering, precluded a party that had spoliated some of ***its*** video evidence from using the rest of ***its** own video evidence*—that is, evidence related to the spoliation. 165 Fed. Cl. 385, 395 (2023) ("The Government is therefore precluded from introducing…video footage from Institution cameras.").

Further, to secure the imposition of the severe sanctions set out in Rule 37(e)(2) that Lilly wants, a movant must meet a "demanding standard." *Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2024). That is precisely what Lilly requests—an adverse inference, set out directly in 37(e)(2), and an even more severe sanction in the form of a wildly overbroad preclusion order for all Lilly chats from a nearly four year period (August 2021-February 2025) based on Lilly's assumption that "at least some of" Nektar's post-suit chats "were certainly adverse to Nektar." Dkt. 343 at 3.

But after careful consideration, the Court concluded that the sanction it imposed was "proportional—and that's the key word, proportional," under Rule 37(e)(1), which permits remedies

"no greater than necessary to cure the prejudice." (8/6/26 Hearing Tr. at 3-15.) Lilly is not entitled to more. Yet Lilly's two requested sanctions are as harsh and harsher than the Court imposed in *Google,* when the Court has already found this case shows "a big difference from *Google*." (3/27/25 Hearing Tr. at 9:10.) As Lilly's prior briefing acknowledges, upon filing suit, Nektar instructed employees not to use Teams chats to discuss Lilly or the Lilly/Nektar relationship, but neglected to alter its longstanding 24-hour chat preservation protocol, ultimately disabling it shortly after Lilly flagged the issue near the end of fact discovery. Dkt. 185-2 at 1-2. And discovery confirmed that Nektar's employees followed their General Counsel's instruction. Dkt. 187 at 2 & n.10. Lilly's cases establish that its disproportionate asks are inappropriate under these facts. *See Porter v. City & Cnty. of San Francisco*, 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018) (adverse inference unwarranted where non-movant "erased the call pursuant to its 2-year ESI retention policy."); *cf. Praecipio Consulting, LLC v. Howser*, 2026 WL 2280769, at *8 (N.D. Cal. July 30, 2026) (Rule 37(e)(2) sanctions appropriate because spoliation "was not…pursuant to an institutional file retention policy.").

Lilly tries to salvage this obvious legal deficiency by extolling the importance of Nektar's "***post-***suit documents" to its case—which only reinforces how disproportionate and improper its proposed sanctions are, as it seeks to exclude its own Teams chat messages sent years earlier, contemporaneously with the relevant events of the litigation. Mot. at 2. Lilly *has* more than 17,000 Nektar post-suit documents and communications at its disposal, including emails, pdfs, PowerPoints, Excel spreadsheets, Word files, and more than 400 Teams chats that Nektar produced after disabling its 24-hour protocol. And Lilly's newfound fixation on post-suit documents is a remarkable about-face: it was *Lilly* who originally proposed that the general discovery cut-off should be ***the date Nektar filed suit in August 2023***, Ex. 8, and argued forcefully during discovery that the "six-year period" of the License Agreement, from 2017-2023, "is what's relevant." Dkt. 76 at 2; *id.* (requests for documents outside this time period "are irrelevant, burdensome, and inappropriate"). Lilly's words are also belied by its actions. Lilly's exhibit list includes *zero* of the more than 400 post-suit Nektar chats that Lilly claims are crucial enough to its case to warrant cutting the heart out of Nektar's.

DATED: August 18, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By: */s/ Yury Kapgan*
Yury Kapgan

*Attorneys for Plaintiff Nektar Therapeutics*