Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
Patrick Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.hurst@kirkland.com
Email: gbalassa@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: patrick.weeks@kirkland.com

*Counsel for Defendant Eli Lilly and Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEKTAR THERAPEUTICS,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY & CO.,<br><br>Defendant. | CASE NO. 3:23-CV-03943-JD<br><br>**DEFENDANT ELI LILLY AND COMPANY'S OPPOSITION TO NEKTAR'S MOTION FOR RECONSIDERATION OF LILLY'S SECOND MOTION IN LIMINE**<br><br>Judge: Hon. James Donato |

Nektar seeks reconsideration of the Court's grant of Lilly's second motion in limine because Nektar wants to taint the jury by displaying inadmissible evidence during Nektar's opening statement. Mot.1. The Court should deny that improper demand. The Court's prior order fully granted Lilly's motion "to exclude evidence of improper comparator products." ECF 342; ECF 388 at 4; Pretrial Tr. at 6. Rightly so. The REZPEG license agreement restricts Nektar to comparing Lilly's efforts to develop REZPEG to Lilly's efforts to develop other products "[c]ontrolled by" Lilly "of similar market potential at a similar stage of development." ECF 33-2 at 3-4. As Lilly previously explained, and this Court agreed, because REZPEG never reached Phase 3, Nektar cannot invoke "Lilly's work on other products in Phase 3." ECF 342 at 3. That exclusion squarely applies to assets like "lebrikizumab," which was developed by another company (Dermira) through Phase 1 and 2, and only developed by Lilly starting at Phase 3. *Id.*

Yet ***every single one*** of the documents Nektar seeks to show the jury during opening statements invokes lebrikizumab or other improper medicines—including medicines not even owned by Lilly (Rinvoq) and Phase 3 medicines that Nektar unsuccessfully raised in opposing Lilly's motion in limine (baricitinib). *E.g.*, ECF 342 at 8. These documents thus do exactly what this Court forbade: improperly invite the jury to examine Lilly's Phase 3 assets and the assets of different companies. That is improper, as this Court already recognized in rejecting Nektar's argument that "[t]he jury should be free to evaluate any evidence Nektar offers regarding Phase 3 drugs and give that evidence whatever weight it sees fit." *Id.* A straightforward review of all six documents confirms the problem.

**Nektar Exhibit C (Tr.Ex.1213):** This document expressly invokes "***Lebri*** and CD200 data." (Emphasis added).

**Nektar Exhibit D (Tr.Ex.747):** This document addresses "the ***Lebri*** data disclosure" from Phase 3 trials (Emphasis added).

**Nektar Exhibit E (Tr.Ex.590):** This document discusses "the ongoing ***Lebri*** phase 3 trial." (Emphasis added).

**Nektar Exhibit F (Tr.Ex.1419):** This document involves a "forecast based on ***Lebri***" and makes dozens of references to lebrikizumab. (Emphasis added).

**Nektar Exhibit G (Tr.Ex.1410):** This document discusses ***two*** different Phase 3 medicines: "bari[citinib]" and "Rinvoq." Nektar's effort to introduce this document is especially egregious because

Rinvoq is owned by a ***different*** company (AbbVie).

**<u>Nektar Exhibit H (Tr.Ex.251)</u>**: This document not only discusses "Lebri," but Lebri's development by "Dermira"—yet another third-party company.

Given that all these documents squarely fall within the Court's order, Nektar's motion merely rehashes arguments that this Court has already rejected. This approach fails for several independent reasons.

<u>First</u>, this approach is improper under L.R.7-9: Nektar has not sought leave to file a motion for reconsideration, and is just relitigating already decided issues. Nektar's recycling of arguments is clear. Unable to deny that each document invokes prohibited comparator products, it claims that these documents might be "offered for at least three independent purposes": "Lilly's motive and intent," Lilly's approach to assessing "clinical results," and responding to Lilly's purported "evidence" of extraneous comparators. Mot.5. Yet Nektar made the ***same*** arguments when opposing Lilly's motion in limine as too "sweeping" and "broad," claiming that this evidence could "be introduced for [other] purposes" on other "potential grounds" such as Lilly's purported lack of "good faith," "assessment of "injection site reactions," "willingness to develop and commercialize" products, "development practices," and purported invocation of extraneous comparator "drugs." ECF 342 at 7-9.[1] These do-over arguments come nowhere close to satisfying Nektar's burden on a motion for reconsideration (which Nektar has not even sought leave to file). *See* L.R.7-9.

<u>Second</u>, these arguments continue to confirm that Nektar's real goal is to wave the red flag of improper comparisons before the jury and prime it with improper documents at the very beginning of the case in Nektar's "opening statement"—where the risks that led the Court to grant Lilly's motion are the highest. Mot.1. Although Nektar again pays lip service to ostensibly proper purposes, *e.g.* Mot. 1, 5, it repeatedly betrays that it really just wants to wholesale show the jury documents that (at minimum) invite improper comparisons and that (in reality) Nektar will use to make inappropriate arguments—just as Nektar and its experts have repeatedly done—consistent with Nektar's recurring view that "[t]he jury

---

[1] These arguments are also substantively defective, confirming Nektar's improper purposes. For example, given the plain, narrow terms of ***this*** commercially reasonable efforts clause, the proper question is a yes-or-no inquiry whether Lilly made suitable efforts given Lilly's efforts on comparable products, and not a mudslinging competition about Lilly's purported intent.

should be free to evaluate ***any*** evidence Nektar offers regarding Phase 3 drugs and give that evidence ***whatever*** weight it sees fit." ECF 342 at 8 (emphases added); *see also id.* at 3-4 (collecting examples of improper arguments). Indeed, Nektar's motion cannot keep up the charade for even five pages, arguing that "Lilly's development of Rezpeg deviated from Lilly's normal practices or ***development decisions with worse drugs***" (*i.e.*, improper comparators), and invoking "Lilly's commercialized drugs" (*i.e.*, medicines that passed Phase 3). Mot.2-4.

Finally, and at an absolute minimum, Nektar cannot deploy this evidence in its ***opening*** statement before the jury has heard any testimony or context, before any hypothetical foundation has been laid, and when the risks of improper usage, confusion, and prejudice are highest. Courts in this circuit routinely forbid parties from "show[ing] exhibits to the jury during opening statements unless there has been a stipulation that the exhibits be admitted or the parties have otherwise agreed that they can be shown them to the jury during opening statements." *Hilborn v. Metro. Grp. Prop. & Cas. Ins. Co.*, 2014 WL 4073224, at *3 (D. Idaho Aug. 15, 2014); *see also W. Coast Acquisitions, Inc. v. HCI Steel Building Sys., Inc.*, 2013 WL 12116406, at *8 (W.D. Wash. Apr. 24, 2013) ("The court GRANTS Defendants' motion to prohibit counsel from mentioning in voir dire or opening statements exhibits or documents which detail potentially inadmissible evidence."); *Sekuk Glob. Enters. v. Apollo Grp. Inc.*, 2007 WL 5517257, at *1 (D. Ariz. Nov. 5, 2007) ("Exhibits to be shown to the jury in opening statements must have been previously admitted into evidence."). Nektar's demand for broad license to use improper documents "in [its] opening statement"—especially given Nektar's repeated threats to use these documents for plainly improper purposes—is a nonstarter. Mot.1.

The Court should deny Nektar's motion.

DATED: September 1, 2026

Respectfully submitted,

*s/ Ryan Moorman*

Emma Scott (SBN 352078)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: emma.scott@kirkland.com

James F. Hurst, P.C. (admitted *pro hac vice*)
Gabor Balassa, P.C. (admitted *pro hac vice*)
Diana M. Watral, P.C. (admitted *pro hac vice*)
Ryan J. Moorman, P.C. (admitted *pro hac vice*)
Patrick Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.hurst@kirkland.com
Email: gbalassa@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: patrick.weeks@kirkland.com

*Counsel for Defendant Eli Lilly and Company*