QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

David M. Elihu (Bar No. 303043)
davidelihu@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

*Attorneys for Plaintiff Nektar Therapeutics*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NEKTAR THERAPEUTICS,

Plaintiff,

v.

ELI LILLY & CO.,

Defendant.

CASE NO. 3:23-CV-03943-JD

**NEKTAR'S SUBMISSION OF ADDITIONAL PROPOSED FINAL JURY INSTRUCTION**

Judge: Hon. James Donato

Nektar respectfully submits the additional proposed jury instruction set forth below to instruct the jury, in accordance with New York law, that damages are measured at the time of breach.[1] Lilly's recent arguments at trial have made the requested instruction necessary, specifically to reduce the prejudice and intentional jury confusion that likely has been caused by Lilly's damages presentation thus far at trial.

Specifically, since Nektar filed the parties' stipulated instructions, Lilly has attempted to persuade the jury to reduce any award of damages on legally impermissible grounds. Lilly's trial presentation has focused heavily on Nektar's current financial condition, through which Lilly has argued that Nektar should not receive substantial damages because it is "better off" as a result of Lilly's breaches. 9/8/26 Trial Tr. at 105, 133. Lilly's counsel argued in its opening statement to the jury that Nektar is "doing great" (*id.* at 135) and that Nektar has not "suffered a loss" (*id*. at 105) because it projects to earn future revenues from Rezpeg (*id.* at 104, 133-134). In support of this argument, Lilly has sought to elicit testimony from Nektar's CEO Mr. Robin about Nektar's financial condition as of 2026 (9/9/26 Trial Tr. at 215-228, 242-45; *see also* 9/10/26 Trial Tr. at 445-446), and has sought to undercut the testimony of Nektar's damages expert Dr. Rao by inquiring about Nektar's post-breach development of Rezpeg and its financial condition in 2024-2026 (9/10/26 Trial Tr. at 600, 606-17). What is more, Lilly has endeavored to confuse the jury by seeking to elicit testimony to support its "argument" that "Nektar has the financial wherewithal to finish up the development of Rezpeg without getting a development partner" *now*, at the time of trial (9/9/26 Trial Tr. at 203; *see also id*. at 206-207, 242-244), even though the "relevant question for [Dr. Rao's] analysis" is "whether Nektar needed a partner to develop with *at the time of the breaches*" (9/10/26 Trial Tr. at 624). *See, e.g.*, 9/9/26 Trial Tr. at 206-207, 213; 9/10/26 Trial Tr. at 612.

As detailed in Nektar's position statement below, these arguments are legally barred for multiple reasons under controlling New York law. Lilly's arguments, which it will surely reprise in its closing, depend on improper hindsight bias, and urge the jury to commit legal error in assessing

[1] Pursuant to the Court's August 4, 2026 order (Dkt. 379), Nektar previously submitted a set of stipulated proposed final jury instructions (Dkt. 382). Lilly separately submitted a set of disputed instructions (Dkt. 383), to which Nektar continues to object (*see* Dkt. 389).

Nektar's damages. Nektar submits this brief proposed instruction to ensure that the jury does not commit such error. *See BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1242 (9th Cir. 2021) (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009)) (party entitled to proposed instruction because it "is supported by law and has foundation in the evidence.").

**DISPUTED INSTRUCTION NO. 16.1**

**RE TIME FOR ASSESSMENT OF DAMAGES**

**PROPOSED BY NEKTAR**

Damages are measured as of the time of the breach. This is because damages are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed.

You therefore should neither increase nor decrease an award of damages based on Nektar's actual economic condition or performance after the termination of the parties' contract.

Source: Adapted from N.Y. Pattern Civil Jury Instructions, § 4:20, Comment.

**NEKTAR'S POSITION**

As discussed (*supra*, at 1), this proposed instruction has been made necessary by Lilly's strategy of using hindsight bias to argue to the jury that Nektar is "better off" at present than it was at the time of Lilly's breaches. *See, e.g.*, 9/8/26 Trial Tr. at 104-05, 133-134; 9/9/26 Trial Tr. at 215-227; 9/10/26 Trial Tr. at 242-245, 445-446, 600, 602, 607-17; Dkt. 433. That persistent argument—Lilly's major trial theme—flies in the face of the "fundamental proposition" of New York law "that the loss caused by a breach is determined as of the time of breach." *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 156 (2d Cir. 2026) (quotation marks omitted); *see, e.g.*, *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 86 (2d Cir. 2021) ("New York courts reject damages awards calculated with the benefit of hindsight."); *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) (same principle). Under this settled rule, the jury could not properly award damages based on Nektar's "actual economic conditions and performance" following the breaches, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002), because such an award "would involve the application of hindsight, contrary to New York law," *Kaminsky v. Herrick, Feinstein LLP*, 59 A.D.3d 1, 11 (1st Dep't 2008).

This Court itself has rightly questioned the relevance of Nektar's 2026 financial condition to a case in which damages must be assessed as of the breach dates. 9/9/26 Trial Tr. at 206-207 ("THE COURT: [Evidence about Q1 2026] doesn't prove anything about what [Nektar] did back in [2021] . . . . What does this have to do with this? . . . So in 2026, they had a lot of cash. Big deal. What's the problem? . . . *In 2026*, they could afford to move forward. MR. HURST: That's right. THE COURT: *Not at the time of the breach*.") (emphases added). And numerous precedents reaffirm and apply this foundational principle of New York law. *See, e.g.*, *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007) ("The district court's inquiry into [an asset's] performance and market conditions in the months following the acquisition was improper because events subsequent to the breach, viewed in hindsight, may neither offset nor enhance Allegheny's general damages."); *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 262 (1998) ("The proper measure of damages is … the cost to repair or replace the defective [assets] as of" the breach date, and not "as of the date of trial"); *iGo Mktg. & Ent., LLC v.*

*Hartbeat Prods., LLC*, 217 A.D.3d 753, 754-55 (2d Dep't 2023) (agreeing that "the valuation date of the non-cash component of compensation should have been … the date of the defendants' breach"); *Cole v. Macklowe*, 64 A.D.3d 480, 481 (1st Dep't 2009) (plaintiff's damages were "the value of his interests as of the date of breach, which will include the value of the distributions that plaintiff should have received since the date of breach, including distributions that have not yet been made"); *Aroneck v. Atkin*, 90 A.D.2d 966, 966-67 (4th Dep't 1982) ("In fixing the market value of the shares in June, 1978, the [trial] court correctly rejected the valuation theories advanced by defendants' experts to the effect that the value should be based on the actual economic conditions and performance of the shredder business in 1979 and 1980 rather than on what knowledgeable investors anticipated the future conditions and performance would be at the time of the breach").

Lilly's fixation on Nektar's actual post-breach financial condition creates a significant risk that the jury will be confused about this long-settled and directly applicable legal rule, or that it will improperly determine Nektar's damages based on hindsight analysis that is impermissible under New York law. Such a result would constitute reversible error. *See, e.g.*, *Merrill Lynch*, 500 F.3d at 185 (reversing as "improper" damages determination based on "events subsequent to the breach, viewed in hindsight"). To avoid such confusion or outright error, Nektar respectfully submits that the jury should be instructed on the correct and applicable rule of contract damages under New York law. Nektar's proposed instruction correctly and clearly states the law; it is adapted from relevant portions of the authoritative commentary to the New York Pattern Jury Instruction that forms the basis for the stipulated Proposed Instruction No. 16. *See* Dkt. 382 at 17.

The record supports this proposed instruction because Nektar's damages theory is appropriately directed to ascertaining the diminution in Rezpeg's net present value "as of the date[s] of the breach[es]." 9/10/26 Trial Tr. at 620-621; *see, e.g.*, *id.* at 624.

DATED: September 14, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*s/ Yury Kapgan*

Yury Kapgan

*Counsel for Plaintiff Nektar Therapeutics*